IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN
DETROIT DIVISION

| | |
|---|---|
| JOHN CHAMBERLAIN, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>v.<br><br>REDDY ICE HOLDINGS, INC., *et al.*,<br><br>   Defendants. | § <br>§ <br>§ <br>§ <br>§ Civil Action No.<br>§ 2:08-CV-13451-PDB-SDP<br>§ <br>§ **CLASS ACTION**<br>§ <br>§ <br>§ <br>§ |

**BRIEF IN SUPPORT OF DEFENDANT JIMMY C. WEAVER'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

### BRIEF IN SUPPORT OF DEFENDANT JIMMY C. WEAVER'S MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT

Defendant Jimmy C. Weaver ("Weaver") respectfully submits this brief in support of his motion to dismiss the Consolidated Class Action Complaint dated November 2, 2009 (the "Complaint"), pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). In support of his motion, Weaver states as follows:

### I.   PRELIMINARY STATEMENT

As referenced in Weaver's Motion to Dismiss, he adopts by specific incorporation, word and design the Motion to Dismiss the Complaint filed by Reddy Ice Holdings, Inc. ("Reddy"), William P. Brick ("Brick"), and Steven J. Janusek ("Janusek"). Consistent with doing so and also for the purpose of judicial economy, Weaver adopts by incorporation, word and design the brief supporting Reddy's, Brick's and Janusek's Motion to Dismiss. Weaver looks to those arguments and authorities not in abdication to Reddy but rather because Weaver believes the arguments and authorities raised are correct.

### II.   STATEMENT OF FACTS AS TO WEAVER

There are allegations in the Complaint which are particular as to Weaver and which might be viewed as unique to Weaver. Weaver believes that it would be helpful to address on the basis of the allegations made the distinctions of import and examine them in relation to the requirements that Plaintiffs plead facts sufficient to create a "strong inference" of scienter.

The Complaint alleges the class period falls between August 10, 2005 and September 15, 2008. See Compl. at ¶1. Weaver is alleged to have been Reddy's

President and CEO from May 17, 2007 until December, 2007. See Compl. at ¶1 and ¶31. (Weaver's resignation was actually announced on November 30, 2007 effective December 1, 2007; see Compl. ¶122). The Complaint does not reveal Weaver's role, if any, with Reddy prior to May 17, 2007 nor does it suggest any role whatsoever after December 1, 2007.

Other than grouping Weaver with the other individual Defendants by name or under the presumption of "Individual Defendants" Weaver is mentioned one time by attribution to an unidentified confidential informant who attended a meeting in February 2006 or February of 2007 (outside of the period alleged where Weaver served as President and CEO), and implied that Weaver mentioned "the unlawful agreement with Arctic Glacier" at a manager's meeting at a Dallas hotel. Compl. ¶51. The term "unlawful agreement" is not defined and is a conclusion not bound to any fact or at best perhaps associated with a non-competition agreement part of a purchase or sale agreement. In one other instance, it is alleged that the same unidentified confidential informant alleges that in some other undescribed manner he learned that Weaver and others knew of an unlawful allocation agreement and that Weaver was one of the executives that negotiated the acquisition. Compl. ¶52 and ¶59. The allegations as to the "unlawful agreement" are again not described and in the context of the specificity required in securities fraud cases that term is meaningless.

The balance of the Complaint alleges Weaver made four sales of Reddy shares before he became President and CEO of Reddy (Compl. ¶170) and states Weaver's compensation and compares it with that of other officers of Reddy Ice. Compl. ¶172 and

¶176.   The compensation information appears to be contained in public filings, three of which were signed by Weaver and joined in by other company officials during his six and a half month tenure as President and CEO or in a document acknowledging a share sale in a secondary offering. 10-K of March 16, 2005 (Compl. ¶80); Secondary Offering of May 5, 2006 (Compl. ¶23); 10-K of March 16, 2007 (Compl. ¶107); Report of third quarter earnings of October 25, 2007 (Compl. ¶118).

There are no allegations that state with particularity facts to give rise to a strong inference that Weaver acted with scienter that is a mental state embracing intent to defraud.  Knowledge of an acquisition, even if accompanied by a non-compete agreement does not imply knowledge of any illegality.

In fact, it might be more reasonable to imply that one's discussion of an acquisition and/or a non-compete agreement at an open manager's meeting would just as likely, or perhaps even more likely, imply the sponsor of the discussion would not have known of any illegal import of the information announced.

There is nothing in the context of Weaver's signing 10-Ks or a quarterly report during his tenure as President that would imply knowledge of any misstatements or intent to deceive and the disclosure of historical sales of stock by Weaver before he became President and CEO likewise is not in any manner indicative of scienter.

These benign acts, as alleged do not present a strong inference that Weaver acted with the requisite state of mind, namely scienter.  Even the sales of stock are not tied to any suspicious motive or act.

With this added discussion of the allegations in the Complaint specific as to Weaver,

Weaver adopts and incorporates by reference the authority and argument of Reddy, Brick and Janusek which demonstrate the allegations in the Complaint as to Weaver are inadequate.

## II.   CONCLUSION

For these reasons, Weaver prays that the Court enter an order dismissing with prejudice Plaintiffs' Consolidated Class Action Complaint and awarding such other relief to which Weaver may show himself justly entitled.

Dated December 17th, 2009.

Respectfully submitted,

/s/ Timothy A. Duffy
Michael P. Gibson
State Bar No. 07871500
Timothy A. Duffy
State Bar No. 06170500
Burleson, Pate & Gibson, L.L.P.
900 Jackson Street, Suite 330
Dallas, TX 75202
(214) 871-4900
(214) 871-7543 (fax)
tduffy@bp-g.com

Thomas G. McNeill
Dickinson Wright, PLLC
500 Woodward Avenue, Suite 4000
Detroit, MI   48226-3425
Tel:   (313) 223-3500

ATTORNEYS FOR
JIMMY C. WEAVER

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above document has, on this 17th day of December, 2009, has been sent by electronic filing to the following attorneys of record.

**Via Electronic Filing**
Debra J. Wyman
Coughlin Stoia Geller Rudman & Robbins, LLP
655 W. Broadway, Suite 1900
San Diego, CA 92101

**Via Electronic Filing**
Thomas C. Michaud
VanOverbeke, Michaud
79 Alfred Street
Detroit, MI 48201

**Via Electronic Filing**
Mark J. Zausmer
Mischa Boardman
Karyn A. Thwaites
Zausmer Kaufman
31700 Middlebelt Road, Suite 150
Farmington Hills, MI 48334-2374

**Via Electronic Filing**
Shaun-Lee M. Goddard
The Shea Law Firm
24901 Northwestern Highway, Suite 715
Southfield, MI 48075

**Via Electronic Filing**
David A. Ettinger
Raymond W. Henney
Honigman, Miller, Schwartz & Cohn, LLP
660 Woodward Avenue, Suite 2290
Detroit, MI 48226-3506

**Via Electronic Filing**
James R. Nelson
DLA Piper US, LLP
1717 Main Street, Suite 4600
Dallas, Texas 75201-4629

**Via Electronic Filing**
Samuel B. Isaacson
DLA Piper US, LLP
203 N. LaSalle, Suite 1900
Chicago, IL 60601-1293

**Via Electronic Filing**
Gregory Castaldo
Lauren Wagner Pederson
Mark S. Danek
Barroway Topaz Kessler Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087

/s/ Timothy A. Duffy
Timothy A. Duffy