# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### DETROIT DIVISION

| | | |
|---|---|---|
| JOHN CHAMBERLAIN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 2:08-cv-13451-PDB-SDP |
| Plaintiff, | ) ) | <u>CLASS ACTION</u> |
| vs. | ) ) | |
| REDDY ICE HOLDINGS, INC., *et al.*, | ) ) | |
| Defendants. | ) ) ) | |
| | ) | |

## MOTION TO DISMISS PLAINTIFFS'
## <u>CONSOLIDATED CLASS ACTION COMPLAINT</u>

Defendants Reddy Ice Holdings, Inc. ("Reddy"), William P. Brick ("Brick") and Steven

J. Janusek ("Janusek") respectfully submit this Motion to Dismiss Plaintiffs' Consolidated Class

Action Complaint (the "Complaint") pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of

Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA").   In

support of their Motion, Defendants state as follows:

1.    As a matter of law, the Complaint should be dismissed because Plaintiffs have not

pled facts with particularity that show a violation of securities laws.

2.    First, Plaintiffs have not pled any actionable misstatement by Defendants because

they have not shown that Reddy's fully-disclosed transaction with Mountain Water Ice (or any

other alleged conduct) was unlawful, and they have not pled facts showing that Defendants had a

duty to disclose the legal risks of their conduct to the market.  *See Indiana State Dist. Council Of*

*Laborers And Hod Carriers Pension And Welfare Fund v. Omnicare, Inc.,* 583 F.3d 935, 947

(6th Cir. 2009).   Defendants did not owe a duty to disclose because, among other things,

Plaintiffs cannot show that Defendants' statements of legal compliance were known to be false at the time they were made. *Id.*

3.    Second, Plaintiffs have not pled facts sufficient to create an "strong inference" of scienter that is "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 (2007). Again, the Complaint does not plead facts showing that any of Defendants knew their conduct to be illegal at the time the challenged public statements were made to investors. *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 684 (6th Cir. 2004). Plaintiffs cannot show scienter through evidence of motive and opportunity because they do not allege that the Individual Defendants stock sales were "unusual or suspicious," or that the Individual Defendants exhibited any other indicia of scienter recognized by courts in this Circuit. *Grillo v. Tempur-Pedic Intern., Inc.*, 553 F. Supp.2d 809, 820-21 (E.D. Ky. 2008).

4.    Third, Plaintiffs have not linked any stock drop to a revelation that Reddy had made false and misleading statements, and thus, they have failed to plead loss causation. Although Plaintiffs allege that Reddy's stock price fell after investigations were revealed to the market, the investigations have not resulted in a finding of misconduct, and Defendants' prior statements have not otherwise been revealed to be inaccurate. As a matter of law, the mere disclosure of investigations is insufficient to support a showing of loss causation. *See In re Avista Corp. Sec. Litig.*, 415 F. Supp. 2d 1214, 1221 (E.D. Wash. 2005).

5.    Pursuant to Local Rule 7.1, counsel for Defendants attempted to confer with counsel for Plaintiffs on December 17, 2009 regarding the relief requested in this motion. Counsel for Defendants was told that the three attorneys identified as lead counsel for Plaintiffs were all unavailable. Counsel for Defendants left a message, and did not receive a return

telephone call prior to the filing of this Motion. Accordingly, Defendants presume that this motion is opposed.

Wherefore, Defendants pray that the Court enter an order dismissing with prejudice Plaintiffs' Consolidated Class Action Complaint, and awarding such other relief to which they may show themselves entitled.

Dated December 17, 2009.

                                   /s/ James R. Nelson
                                JAMES R. NELSON
                                **DLA PIPER LLP (US)**
                                1717 Main Street, Suite 4600
                                Dallas, TX 75201
                                Telephone:  214/743-4500
                                214/743-4545 (fax)
                                jr.nelson@dlapiper.com

                                SAMUEL B. ISAACSON
                                **DLA PIPER LLP (US)**
                                203 North LaSalle Street, Suite 1900
                                Chicago, IL 60601
                                Telephone: 312/368-4000
                                312/236-7516 (fax)
                                samuel.isaacson@dlapiper.com

                                RAYMOND W. HENNEY
                                **HONIGMAN MILLER SCHWARTZ AND COHN LLP**
                                660 Woodward Avenue
                                2290 First National Building
                                Detroit, MI  48226-3506
                                Telephone:  313/465-7410
                                313/465-7411 (fax)
                                rhenney@honigman.com

                                *Counsel for Defendants Reddy Ice Holdings, Inc., William P. Brick and Steven J. Janusek*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### DETROIT DIVISION

| | | |
|---|---|---|
| JOHN CHAMBERLAIN, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 2:08-cv-13451-PDB-SDP |
| Plaintiff, | ) | <u>CLASS ACTION</u> |
| vs. | ) ) | |
| REDDY ICE HOLDINGS, INC., *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   STATEMENT OF FACTS ..................................................................... 2

III.  ARGUMENT AND AUTHORITIES ............................................................. 4

    A.    Plaintiffs' Complaint must be dismissed because it does not, and cannot, allege a false and misleading statement to investors ............................................. 5

        i.    Plaintiffs have not pled any allegedly unlawful conduct with particularity ............................................................... 5

        ii.   Defendants had no duty to make predictions about the legal consequences of any conduct ...................................... 7

        iii.  Defendants' public filings and statements were not false or misleading ................................................................ 9

    B.    Plaintiffs have not alleged a "strong inference" of scienter ................................ 11

        i.    The Complaint does not establish the individual Defendants knew the non-compete agreement was unlawful or engaged in deliberate wrongdoing ............................................................... 12

        ii.   The allegations of the Complaint do not establish that Defendants had a motive to engage in wrongdoing. ................................... 15

        iii.  The existence of an investigation does not show scienter ...................... 17

    C.    Plaintiffs have not alleged loss causation under *Dura* ....................................... 17

    D.    Plaintiffs' claims for "control person" liability must be dismissed .................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Acito v. IMCERA Group, Inc.,*
    47 F.3d 47 (2d Cir. 1995) ...........................................................................................17

*Andropolis v. Red Robin Gourmet Burgers, Inc.,*
    505 F. Supp.2d 662 (D. Colo. 2007)............................................................................10

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988)......................................................................................................7

*Bovee v. Coopers & Lybrand C.P.A.,*
    272 F.3d 356 (6th Cir. 2001) ........................................................................................2

*Business Electronics Corp. v. Sharp Electronics Corp.,*
    485 U.S. 717 (1988)......................................................................................................5

*Central Laborers' Pens. Fund v. Integrated Electrical Servs., Inc.,*
    497 F.3d 546 (5th Cir. 2007) ......................................................................................14

*City of Austin Police Ret. Sys. v. ITT Educational Servs., Inc.,*
    388 F. Supp.2d 932 (S.D. Ind. 2005) .........................................................................16

*Dura Pharmaceuticals, Inc. v. Broudo,*
    544 U.S. 336 (2005)..............................................................................................18, 19

*Frank v. Dana Corp.,*
    2009 WL 2782670 (N.D. Ohio Aug. 28, 2009) .........................................................16

*Glaser v. Enzo Biochem, Inc.,*
    464 F.3d 474 (4th Cir. 2006) ......................................................................................18

*Granberry v. Baptist Memorial Hosp.,*
    No. 97-5543, 1998 WL 279377 (6th Cir. 1998) ....................................................9, 15

*Grillo v. Tempur-Pedic Intern., Inc.,*
    553 F. Supp.2d 809 (E.D. Ky. 2008) ..........................................................................15

*In re Avista Corp. Sec. Litig.,*
    415 F. Supp.2d 1214 (E.D. Wash. 2005)....................................................................19

*In re Bath & Kitchen Fixtures Antitrust Litig.,*
    No. 05-cv-00510, 2006 WL 2038605 (E.D. Pa. July 19, 2006) .................................17

*In re Diebold Securities Litigation,*
  No. 5:05-cv-2873, 2008 WL 3927467 (N.D. Ohio Aug. 22, 2008)..........................6, 7, 13, 17

*In re Graphics Processing Units Antitrust Litig.,*
  527 F. Supp.2d 1011 (N.D. Cal. 2007) .................................................................................17

*In re Hansen Natural Corp. Sec. Litig.,*
  527 F. Supp.2d 1142 (C.D. Cal. 2007) ................................................................................19

*In re Huffy Corp. Securities Litigation,*
  577 F. Supp.2d 968 (S.D. Ohio 2008) .................................................................................14

*In re IAC/InterActiveCorp Sec. Litig.,*
  478 F. Supp.2d 574 (S.D.N.Y. 2007).................................................................................16

*In re Keithley Instruments, Inc. Sec. Litig.,*
  268 F .Supp.2d 887 (N.D. Ohio 2002).................................................................................15

*In re Metawave Comm. Corp. Sec. Litig.,*
  298 F. Supp.2d 1056 (W.D. Wash. 2003)....................................................................6, 13, 15

*In re Mirant Corp. Securities Litig.,*
  No. 1:02-CV-1467, 2009 WL 48188 (N.D. Ga. Jan. 07, 2009)........................................5, 6, 7

*In re Omnicom Group, Inc. Sec. Litig.,*
  541 F. Supp.2d 546 (S.D.N.Y. 2008)..................................................................................19

*In re Party City Sec. Litig.,*
  147 F. Supp.2d 282 (D.N.J. 2001) .....................................................................................15

*In re PDI Sec. Litig.,*
  No. Civ. A. 02-211, 2006 WL 3350461 (D.N.J. Nov. 2, 2006)...........................................13

*In re Sofamor Danek Group, Inc.,*
  123 F.3d 394 (6th Cir. 1997) ...............................................................................................5

*In re Travel Agent Comm'n Antitrust Litig.,*
  583 F.3d 896 (6th Cir. 2009) ...............................................................................................7

*In re United American Healthcare Corp. Sec. Litig.,*
  No. 2:05-CV-72112, 2007 WL 313491 (E.D. Mich. Jan. 30, 2007) ......................................14

*Indiana State Dist. Council Of Laborers And Hod Carriers Pension And Welfare Fund v.*
  *Omnicare, Inc.,* 583 F.3d 935 (6th Cir. 2009) ................................................................. *passim*

*Ley v. Visteon Corp.,*
  543 F.3d 801 (6th Cir. 2008) ...............................................................................................10

*Morse v. McWhorter*,
 200 F. Supp.2d 853 (M.D. Tenn. 1998) ................................................................. 14

*Perceptron, Inc. v. Sensor Adaptive Machines, Inc. (SAMI)*,
 221 F.3d 913 (6th Cir. 2000) ..................................................................... 5, 9

*Phillips v. LCI Int'l, Inc.*,
 190 F.3d 609 (4th Cir. 1999) ......................................................................... 10

*PR Diamonds, Inc. v. Chandler*,
 364 F.3d 671 (6th Cir. 2004) ........................................................... *passim*

*Rudolph v. UTStarcom*,
 560 F. Supp.2d 880 (N.D. Cal. April 14, 2008) ................................................. 18, 19

*Sanderson v. HCA-The Healthcare Co.*,
 447 F.3d 873 (6th Cir. 2006) .................................................................... 4, 5, 7

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
 531 F.3d 190 (2d Cir. 2008) ............................................................................ 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007) .......................................................................... 2, 4, 11, 14

*Weiner v. Klais and Co., Inc.*,
 108 F.3d 86 (6th Cir. 1997) ............................................................................. 2

*Zaluski v. United American Healthcare Corp.*,
 527 F.3d 564 (6th Cir. 2008) ...................................................................... 7, 8

## Rules, Statutes and Regulations

15 U.S.C. § 78j(b) ............................................................................................. 4

15 U.S.C. § 78u-4(b) ............................................................................... 4, 5, 11

15 U.S.C. § 78t(a) ............................................................................................ 20

17 C.F.R. § 240.10b-5 ....................................................................................... 4

Fed. R. Civ. P. 9(b) .............................................................................. *passim*

Fed. R. Civ. P. 12(b)(6) .......................................................................... 1, 5

Statement of Issues Presented

1. In light of the Sixth Circuit's recent holding in *Indiana State Dist. Council Of Laborers And Hod Carriers Pension And Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935 (6th Cir. 2009), have Plaintiffs pled a material misrepresentation with particularity based on a non-existent duty to disclose legal risk, where the government has never charged Defendants with any illegal conduct, let alone convicted them?

2. Have Plaintiffs pled a "strong inference" of scienter, where they have failed to allege facts, as opposed to conclusory hearsay statements purportedly made by confidential witnesses, establishing that: (i) Reddy's competitive practices were "unlawful," (ii) Defendants knew Reddy's competitive practices were "unlawful," and (iii) in light of such knowledge, Defendants knowingly or recklessly made false and misleading statements to investors?

3. Have Plaintiffs alleged sufficient facts to establish loss causation, where none of the disclosures identified in the Complaint have been shown to be untrue, and none of the disclosures constituted a "revelation of fraud" but only announcements about the status of government and internal investigations?

<u>Most Significant Authorities</u>

1. *Indiana State Dist. Council Of Laborers And Hod Carriers Pension And Welfare Fund v. Omnicare, Inc.,* 583 F.3d 935 (6th Cir. 2009)

2. *Zaluski v. United American Healthcare Corp*., 527 F.3d 564 (6th Cir. 2008)

3. *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671 (6th Cir. 2004)

4. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005)

Defendants Reddy Ice Holdings, Inc. ("Reddy"), William P. Brick ("Brick") and Steven J. Janusek ("Janusek") respectfully submit this Brief in Support of their Motion to Dismiss the Consolidated Class Action Complaint (the "Complaint") pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and state as follows:

## I.    PRELIMINARY STATEMENT

Comparing the few, supposed "factual" allegations in the Complaint with the incontrovertible details of Reddy's conduct as presented in public filings reveals that the Complaint falls far short of adequately pleading securities fraud.  First, the crux of the Complaint is an assertion that Defendants should have characterized Reddy's asset sale and covenant not to compete with another ice manufacturer as "unlawful," but the Sixth Circuit's recent holding in *Omnicare* confirms that Defendants owed no duty under the securities laws to make legal assessments or predictions for investors.  Critically, the Complaint makes no showing that the subject agreement was illegal, none of the Defendants named in this case have been charged with anticompetitive conduct, and these Defendants are not implicated in the Home City and Arctic Glacier plea agreements.  Second, Plaintiffs have failed to plead a compelling inference of scienter in that they have not alleged that any Defendant: (i) knew the covenant not to compete, which was ancillary to a substantial, publicly-disclosed transaction, was "unlawful," or (ii) knowingly or recklessly failed to disclose such purported knowledge to the market.  Third, Plaintiffs have not linked any stock drop to a revelation that Reddy had made false and misleading statements, and thus have failed to plead loss causation.  For these reasons, the Complaint should be dismissed.

## II.    STATEMENT OF FACTS

The cornerstone of the Plaintiffs' claims appears to be the "written covenant not to compete" that Reddy entered into with Mountain Water Ice in 2001.  *See* Compl. at ¶ 55. Plaintiffs denominate the agreement as unlawful, and then bootstrap themselves to an assertion that Reddy's statements as to its competitive strengths and its compliance with governing laws were rendered false and misleading by the failure to disclose the legal risks that allegedly accompanied the agreement.  *See* Compl. at ¶ 81-83, 90, 98.  In striving to state a viable claim, Plaintiffs rely on conclusory statements and hearsay, and distort or utterly ignore facts in Reddy's securities filings and public statements.[1]

Both before and during the class period, Reddy made consistent factual disclosures pertaining to the competitive landscape of the packaged ice industry, including that:

> The traditional packaged ice industry is highly competitive and highly fragmented. In the United States, **the traditional packaged ice industry is led by us and three smaller, regional, multi-facility suppliers. Although these suppliers generally do not serve customers in our primary markets, we do compete with numerous smaller local and regional companies** of varying sizes and competitive resources. Most ice manufacturers have annual revenues of less than $1 million… From time to time, new competitors emerge to compete with us in various areas, including the technology and distribution methods included in The Ice Factory. Historically, such competitors have not had a significant impact on our business

Ex. B at p. 8 (emphasis added); *see also* Ex. C at p. 80 (same).

One of these three regional suppliers was Mountain Water Ice.  On November 30, 2001, Reddy issued a press release disclosing that it had "entered into a definitive agreement with

---

[1]    In evaluating a motion to dismiss, the court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360-361 (6th Cir. 2001) (noting the court "may consider the full text of the SEC filings, prospectus, analysts' reports and statements integral to the complaint, even if not attached").  In addition, the Court may consider the challenged non-compete agreement because it is "referred to in the Plaintiff's complaint and [is] central to [their] claim." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (taking judicial notice of ERISA plan).

California-based Mountain Water Ice Companies to sell certain traditional ice assets in California and Nevada and to purchase certain traditional ice assets in Arizona and Nevada." *See* Ex. D.  As part of the sale agreement, Reddy and the Mountain Water Ice Companies executed covenants not to compete. *See* Ex. F at 21-23.  Reddy's 2001 annual report described these transactions and informed investors that the company enters into covenants not to compete in connection with "substantially all acquisitions."  *See* Ex. G at 5-6.  Reddy had previously disclosed to investors that its California operations were among its weakest, and were substantially affecting the company's margins.  Ex. E at pp. 5, 19, 23, 25.

On or about May 9, 2006, more than four years after the transaction between Reddy and Mountain Water Ice, Arctic Glacier announced that it had acquired the Mountain Water Ice Companies for approximately $190,000,000.  *See* Ex. H.

In its 2006 Annual Report, Reddy updated its disclosures pertaining to competition in the packaged ice industry to address Arctic Glacier's acquisition of Mountain Water Ice, stating that there were **two** other significant multi-state packaged ice manufacturers, and that these manufacturers "generally do not serve customers in our primary markets." Ex. I at 8.  Reddy subsequently elaborated that Reddy and the two other large "regional players" (Arctic Glacier and Home City) account for approximately two-thirds of ice manufacturing in the United States (excluding in-house manufacturing) and that the rest of the industry consists of "several hundred small players with revenues varying from $0.1 million to $10 million." Ex. J at 6.  Reddy stated that it had "limited overlap with [the] two regional players."  Ex. J at 13.  Reddy also included a "large colored map" identifying the markets in which Reddy, Arctic Glacier and Home City each conducted business.  *See* Compl. at ¶ 66; *see also* Compl. at Ex. A; Ex. J at 5.

On March 6 and 7, 2008, Reddy issued press releases disclosing that: (a) it had been served with a search warrant in connection with an investigation of the packaged ice industry

being conducted by the Antitrust Division of the Department of Justice, and (b) it had formed a special committee of independent directors to conduct an internal investigation. *See* Compl. at ¶ 126-27. Plaintiffs have not alleged any facts showing that the DOJ investigation is in any way connected to the 2001 California/Arizona transactions, or to any other conduct alleged in their Complaint. The Defendants have not been charged with or convicted of any violations of law, and the special committee has not found that any illegal conduct occurred. *See* Ex. L.

### III.    ARGUMENT AND AUTHORITIES

Plaintiffs assert claims under Section 10(b) of the Exchange Act and Rule 10b-5, which prohibit "fraudulent, material misstatements or omissions in connection with the sale or purchase of a security." 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. To properly state such claims, a Plaintiff must allege: (1) a material misrepresentation or omission by the Defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *See Indiana State Dist. Council Of Laborers And Hod Carriers Pension And Welfare Fund v. Omnicare, Inc.,* 583 F.3d 935, 942 (6th Cir. 2009).

As with any claim alleging fraud, a Plaintiff alleging securities fraud under the Exchange Act must satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). *See id.* at 942-43. Simply put, a Plaintiff must "specify the who, what, when, where, and how of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006). Congress imposed additional pleading burdens through the Private Securities Litigation Reform Act ("PSLRA") in an effort "to curb perceived abuses of the § 10(b) private action" such as "nuisance filings, targeting of deep-pocket Defendants, vexatious discovery requests and manipulation by class action lawyers." *Tellabs*, 551 U.S. at 320. The PSLRA requires Plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the

statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief… all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Plaintiffs must also state with particularity facts giving rise to a "**strong inference"** that the Defendant acted with scienter.  15 U.S.C. § 78u-4(b)(2) (emphasis added).

When a Defendant files a motion to dismiss under Federal Rule 12(b)(6), the complaint is construed in the light most favorable to Plaintiff, and well-pleaded facts are accepted as true. However, the trial court should not "accept as true legal conclusions or unwarranted factual inferences."  *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997).

**A.    Plaintiffs' Complaint must be dismissed because it does not, and cannot, allege a false and misleading statement to investors**.

> **i.    Plaintiffs have not pled any allegedly unlawful conduct with particularity**.

As a threshold matter, the Complaint should be dismissed because it consists entirely of vague, self-serving speculation pertaining to an alleged "illicit" agreement with Arctic Glacier and Home City that is purportedly evidenced by the California/Arizona transaction.  *See, e.g,* Compl. at ¶ 53.  Plaintiffs' allegations fail to meet the heightened "particularity" standard of Rule 9(b) and the PSLRA because they do not "detail the who, what, where, when, why and how" of any alleged unlawful agreement. *Sanderson*, 447 F.3d at 877; 15 U.S.C. § 78u-4(b)(1).

In circumstances where a securities fraud claim is pled based upon allegations of illegal conduct, "the basis for the illegality must be pled with particularity."  *In re Mirant Corp. Securities Litig.*, 2009 WL 48188, *17 (N.D. Ga. Jan. 07, 2009).  Non-compete agreements of the sort executed by Reddy are generally permissible in the context of a sale of business assets. *See, e.g., Perceptron, Inc. v. Sensor Adaptive Machines, Inc. (SAMI)*, 221 F.3d 913, 918-919 (6th Cir. 2000); *Business Electronics Corp. v. Sharp Electronics Corp.*, 485 U.S. 717, 730 n.3 (1988) (an appropriate covenant not to compete "merely enhances the value of the contract, or permits

the enjoyment of [its] fruits."). Reddy's transaction with Mountain Water Ice was disclosed, and Plaintiffs have pled no facts showing that the ancillary non-compete agreement was unlawful.

In a vain effort to substantiate their claims, Plaintiffs submit statements of confidential witnesses who attempt to convert the California non-compete agreement into an unlawful conspiracy merely by labeling it as such. *See, e.g.* Compl. at ¶ 49 ("As told to CW2 by other Reddy employees… Defendant Brick entered into the on-going unlawful agreement with Arctic Glacier."). Labels are not enough to make an otherwise lawful agreement unlawful. In addition, as discussed more fully below, the witnesses' statements should not be considered because they are based on admitted "hearsay, rumor or speculation," rather than personal knowledge. *In re Diebold Securities Litigation*, 2008 WL 3927467, *6 (N.D. Ohio Aug. 22, 2008); *In re Metawave Comm. Corp. Sec. Litig.*, 298 F. Supp.2d 1056, 1068 (W.D. Wash. 2003) ("The Court must be able to tell whether a confidential witness is speaking from personal knowledge, or "merely regurgitating gossip and innuendo.").

Plaintiffs also allege, again without any factual support, that Reddy participated in an unlawful conspiracy in other parts of the country. *See, e.g,* Compl. at ¶ 42. Here Plaintiffs do not even attempt to identify the date, duration, participants or other particulars of any anticompetitive agreement, and they have failed to identify any customers, cities, or markets to which the agreement allegedly applied. These are precisely the kind of self-serving conclusory allegations prohibited by the PSLRA. *See Mirant*, 2009 WL 48188, at *17.

Instead of pleading particularized facts, Plaintiffs attempt to outsource their burden under Rule 9(b) and the PSLRA by referring to unrelated lawsuits filed by Reddy customers and Martin McNulty. Compl. at ¶ 17, 44-45. Plaintiffs baldly state that the complaint in the antitrust lawsuit "demonstrate[s] that Reddy engaged in illegal anticompetitive conduct." Compl. at ¶ 17. As the Court is well aware, allegations in a lawsuit are just that – allegations; they are not facts.

The referenced allegations are further irrelevant because, as discussed in more detail in Reddy's motion to dismiss the antitrust complaint, those allegations do not adequately state a violation of antitrust laws under the pleading standard applicable to claims under the Sherman Act. *See* Mot. to Dismiss (Docket No. 202), *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952 (E.D. Mich. Oct. 30, 2009); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 908 (6th Cir. 2009).

Plaintiffs' reliance on allegations from the McNulty complaint is equally unavailing. The excerpts cited from that complaint, *see, e.g.*, Compl. at ¶ 44-45, in addition to being nothing more than allegations, are hearsay within hearsay and, thus, cannot be credited for evaluating the sufficiency of the Complaint. *Diebold*, 2008 WL 3927467, *6. Additionally, Mr. McNulty's allegations pertain to an alleged conspiracy to deny him employment. His ancillary allusions to anticompetitive conduct would not be probative in this action, even if they were based on his personal knowledge, because he does not identify any anticompetitive conduct with particularity. *Mirant*, 2009 WL 48188, at *17.

### ii.    Defendants had no duty to make predictions about the legal consequences of any conduct.

Plaintiffs' claims rest on assertions of non-disclosure of purported legal risk relating to the covenant not to compete. *See, e.g.* Compl. ¶ 20, 55. However, it is not securities fraud for a public company to fail to characterize a disclosed transaction as "unlawful" simply because plaintiffs have characterized the transaction that way. *See Sanderson*, 447 F.3d at 878 (plaintiffs do not have a "license to base claims of fraud on speculation and conclusory allegations"). Plaintiffs cannot state a claim based upon fraud by omission because they have not pled facts showing Defendants withheld material information and thereby violated a duty to disclose. *Zaluski v. United American Healthcare Corp.*, 527 F.3d 564, 572 (6th Cir. 2008); *see also Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988) ("[s]ilence without a duty to disclose, is not misleading under Rule 10b-5").

Plaintiffs' allegations challenging the non-compete are virtually identical to the allegations rejected by the Sixth Circuit in its recent *Omnicare* opinion. In that case, a class of shareholders sued a pharmaceutical company after disclosure of a government investigation pertaining to illegal drug recycling and drug substitution. *See Omnicare,* 583 F.3d at 941. The shareholders alleged that the company committed securities fraud by failing to disclose the illegal acts. *See id.* The Sixth Circuit affirmed dismissal of the complaint, explaining that a Defendant has no duty to opine about the legal consequences of conduct when the opinion would derive "solely from predictions regarding the actions of third parties, particularly whether fines or other sanctions would be brought based on findings of regulatory violations." *Id.* at 947. These sorts of hypothetical consequences are "soft information" that cannot substantiate a claim for securities fraud. *Id.* The Court reaffirmed its earlier holding in *Zaluski*, 527 F.3d at 572, where it had upheld dismissal of a claim against a defendant who had failed to disclose the uncertain consequences of its illegal payments to a legislator. *Omnicare,* 583 F.3d at 947.

As described above, Reddy disclosed the California transaction in late 2001 and early 2002, and further disclosed that it entered into covenants not to compete in connection with "substantially all" of its acquisitions. *See* Ex. D; Ex. G at 5-6. Reddy also made multiple disclosures regarding the geographic footprints in which it, Arctic Glacier and Home City conducted business. *See* Compl. at Ex. A; Compl. at ¶ 83; Ex. J. None of these disclosures are alleged to be untrue. Plaintiffs' claim rests solely upon an assertion that Defendants allegedly "exposed the Company to risks of criminal and civil liability and penalties…" Compl. at ¶ 20(3). These purported "risks" are precisely the type of "soft information" that cannot form the basis of a claim for securities fraud. *Omnicare,* 583 F.3d at 947; *Zaluski*, 527 F.3d at 572.

### iii.    Defendants' public filings and statements were not false or misleading.

A Defendant generally has no duty to speak, even regarding unlawful conduct.  *Id.*; *Omnicare,* 583 F.3d at 947.  A Defendant only assumes a duty to disclose if it makes public statements that would be rendered false or misleading by its omission of other facts.  *Id.*

Plaintiffs devote more than 30 pages of their complaint to identifying statements that they allege are false or misleading, Compl. at ¶ 66-149.  These statements fall into three general categories: (a) statements of compliance with applicable laws and company policies, (b) general statements pertaining to competition in the ice industry, and (c) statements of Reddy's financial performance, which are alleged to be misleading by their inclusion of sums Reddy purportedly received from purportedly unlawful acts.  None of these statements are actionable.

For Plaintiffs to state a claim based on Defendants' assurances of legal compliance, they must plead facts showing that Defendants "**actually knew** that the legal compliance statements were false when made."  *Omnicare,* 583 F.3d at 947 (emphasis added).  In other words, they must show that Defendants knew they had entered into an agreement that violated the antitrust laws based upon a detailed "rule of reason" analysis. *See, e.g., Perceptron,*, 221 F.3d at 918-919.  Plaintiffs fall far short of this burden.

For instance, in an attempt to show that Brick made statements of legal compliance he knew to be false, Plaintiffs rely heavily upon a confidential witness who asserts that the California/Arizona transaction occurred in "2003 or 2004," and that "Brick knew that the consortium of companies that acquired Reddy's manufacturing and distribution facilities in California was in fact a straw man set up by agreement between Reddy and Arctic Glacier..." *See* Compl. at ¶ 53, 55.  The witnesses' statements are not credible because he or she has no basis for knowing the contents of another person's mind.  *Granberry v. Baptist Memorial Hosp.*, 1998 WL 279377, *5 (6th Cir. 1998).  Moreover, the statements are not probative because they

are directly contradicted by the following facts in the public record: (1) Reddy entered into the transaction with Mountain Water Ice in 2001, (2) Mountain Water Ice was incorporated in 1985,[2] and was regularly identified as one of the nation's leading regional, multi-facility ice manufacturers, and (3) Arctic Glacier did not acquire the assets of Mountain Water Ice until 2006, more than four years after the challenged transaction. *See* Ex. D; Ex. H; Ex. K at 6; *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 615 (4th Cir. 1999) (the court should disregard allegations based on "mischaracterizations of the public record.").[3]

Nor have Plaintiffs alleged facts showing that any Defendants' general statements about competition in the ice industry were known to be false at the time they were made. Plaintiffs cite to statements that Reddy has "many competitors," and that its business is "highly competitive." Compl. at ¶ 70, 75. However, the Court must also examine the context in which these statements were made, including Reddy's disclosure that Arctic Glacier and Home City "generally do not serve customers in our primary markets," and Reddy's disclosure of a map comparing the places in which the three major manufacturers conduct business. *See* Compl. at ¶ 83; Compl. at Ex. A; Ex. I at 8. *Ley v. Visteon Corp.*, 543 F.3d 801, 811 (6th Cir. 2008) (public statements may not be taken out of context). The Complaint does not include a single factual allegation showing these statements were misleading.

---

[2]  *See* California Secretary of State, California Business Portal, at http://kepler.ss.ca.gov/corpdata/ShowAllList?QueryCorpNumber=C1358682

[3]  Similarly, Plaintiffs cannot show that Defendants misled investors by professing their compliance with the Reddy Code of Ethics. Compl. at ¶ 86-88. A code of ethics is "essentially mandatory" under SEC regulations, and it is "inherently aspirational." *Andropolis v. Red Robin Gourmet Burgers, Inc.*, 505 F. Supp.2d 662, 685-86 (D. Colo. 2007) (citing 17 C.F.R. § 229.406(a)-(b)). As a matter of law, the mere existence of a code of ethics does not permit a Plaintiff to allege a violation of securities laws any time an act contrary to the code occurs. *See id.*

The final category of statements that Plaintiffs allege to be false or misleading are those pertaining to Reddy's revenues and financial performance. *See, e.g.,* Compl. at ¶ 79. Plaintiffs fail to allege how, why, or to what degree the reported revenues differed from Reddy's actual revenues. *See* 15 U.S.C. § 78u-4(b)(1) (requiring Plaintiffs to specify "all facts" on which a belief is formed.). In addition, financial statements will only support a claim for securities fraud if the disclosures are revealed to the market to be inaccurate. *Omnicare, Inc.,* 583 F.3d at 945. Plaintiffs have not – and cannot – show that Reddy's financial statements were ever restated or otherwise revealed to be inaccurate. *Id.* (When a Defendant "has not restated its financial reporting, allegations of securities fraud are substantially undercut."). Having failed to plead any particularized facts showing Defendants had a duty to disclose, much less made inaccurate disclosures, Plaintiffs cannot state a claim for securities fraud. *See Omnicare,* 583 F.3d at 947.

**B.    Plaintiffs have not alleged a "strong inference" of scienter**.

Plaintiffs' Complaint must also be dismissed because they have failed to satisfy their burden to "state with particularity facts giving rise to a **strong inference"** that the Defendant acted with scienter in making statements in the public filings that are alleged to be misleading. 15 U.S.C. § 78u-4(b)(2) (emphasis added). The Supreme Court explains that a plaintiff's scienter allegation "must be more than merely 'reasonable' or 'permissible' -it must be cogent and compelling, thus strong in light of other explanations." *Tellabs*, 551 U.S. at 320. Accordingly, a complaint should be dismissed unless a "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

Plaintiffs have not made a case, much less a compelling case, that any individual Defendant acted with actual knowledge or recklessness, the latter of which is defined as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *See*

*PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 681 (6th Cir. 2004). Because Plaintiffs cannot show that any employee of Reddy acted with scienter, they cannot show scienter on the part of Reddy itself. *See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 197 (2d Cir. 2008) (proof of corporate scienter requires a "strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter").

> **i.    The Complaint does not establish the individual Defendants knew the non-compete agreement was unlawful or engaged in deliberate wrongdoing**.

As alluded to above, Plaintiffs have not made any credible allegations of fact showing that any individual Defendant deliberately engaged in illegal behavior. At most, the Complaint alleges that the individual Defendants knew of the non-compete agreements connected with the California/Arizona transaction, a fact that is undisputed. *See* Compl. at ¶ 49, 51; *see also* Compl. at ¶ 46 (according to former employees, the California/Arizona agreement was "generally known among employees at Reddy"). A strong inference of scienter, however, does not arise from mere knowledge of the non-compete. *See PR Diamonds,* 364 F.3d at 686-86 (courts "look for multiple, obvious red flags before drawing an inference that a Defendant acted intentionally or recklessly" by failing to question his employer's conduct).

Recognizing that knowledge of the non-compete is a far cry from knowledge that the non-compete was unlawful, Plaintiffs resort to characterizing the agreement as "unlawful" whenever referring to Defendants' knowledge of it. For example, Plaintiffs allege that a confidential witness was told by "other Reddy Ice employees" that "Defendant Brick entered into the on-going unlawful agreement." Compl. at ¶ 49; *see also* Compl. at ¶ 177 ("As confirmed by confidential witnesses, each of the Individual Defendants had actual knowledge that Reddy Ice entered into illegal anticompetitive agreements..."). Merely calling conduct illegal does not make it so. Plaintiffs' labeling of the agreement as "illegal" and "unlawful" constitutes conclusory pleading that must be disregarded for purposes of evaluating the sufficiency of the

complaint. *See PR Diamonds,* 364 F.3d at 692.

Moreover, the statements by Plaintiffs' confidential witnesses are non-probative under Rule 9(b) and the PSLRA because they are bare hearsay.  For instance, Plaintiffs purport to rely on CW2's statement that he was told by coworkers about Reddy's plan to drive competitors from the Arizona packaged ice industry by undercutting their prices.  Plaintiffs have not identified facts showing this conduct is unlawful (as opposed to legitimate competition), and even if they had done so, CW2 admits to no personal knowledge concerning Reddy's alleged plans. Compl. at ¶ 58-60.  Rather, CW2 suggests that he or she heard about the plans from an assistant area controller and an Area Vice President.  The Sixth Circuit recognizes that generally, statements attributed to confidential witnesses "must be steeply discounted."  *Omnicare*, 583 F.3d at 946. Statements should be completely disregarded when, as here, they are based on admitted "hearsay, rumor or speculation." *Diebold*, 2008 WL 3927467, *6.  Plaintiffs cannot meet their burden to show these witnesses are not "merely regurgitating gossip and innuendo."  *Metawave*, 298 F. Supp.2d at 1068.  Accordingly, the statements are no more reliable than a game of "broken telephone."  *See In re PDI Sec. Litig.*, 2006 WL 3350461, *27 (D.N.J. Nov. 2, 2006).

Additionally, because the Complaint does not allege facts showing any Defendant was aware of the alleged improper conduct, much less the illegality of such conduct, it cannot support any inference of scienter against the individual Defendants.  *See PR Diamonds*, 364 F.3d at 684 (a plaintiff must plead specific facts which "persuade us that the most plausible conclusion to draw is that the Individual Defendants must or should have known about the problems and nevertheless knowingly or recklessly made the allegedly misleading public statements.").

In a last ditch effort to adequately plead scienter, Plaintiffs make generic allegations against Defendants collectively.  *See, e.g.*, Compl. at ¶ 33 ("Because of their positions and access to material non-public information available to them, each of these Defendants knew that the

adverse facts specified herein had not been disclosed...").  Courts in this Circuit have rejected the so-called "group pleading doctrine" as "antithetical to the pleading requirement for scienter set forth in § 21D(b) of the PSLRA."  *In re Huffy Corp. Securities Litigation*, 577 F. Supp.2d 968, 986 (S.D. Ohio 2008).  When a Plaintiff alleges securities fraud by multiple Defendants, "the alleged fraudulent conduct of each Defendant must be set forth separately or otherwise the complaint is legally deficient…."  *Morse v. McWhorter*, 200 F. Supp.2d 853, 884 (M.D. Tenn. 1998); *In re United American Healthcare Corp. Sec. Litig.*, 2007 WL 313491, at *16 (E.D. Mich. Jan. 30, 2007) ("scienter must be pled separately as to each Defendant.").

Fraudulent intent "cannot be inferred merely from the Individual Defendants' positions in the Company and alleged access to information.."  *PR Diamonds, Inc*., 364 F.3d at 688.  Nor can fraudulent intent be inferred merely from the fact that a Defendant signed a public filing.  *See Central Laborers' Pens. Fund v. Integrated Electrical Servs., Inc.*, 497 F.3d 546, 555 (5th Cir. 2007) (if scienter could be shown by the mere act of signing public filings, "scienter would be established in every case where there was an accounting error or auditing mistake made by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA.").  For each Defendant, Plaintiffs must identify specific facts sufficient to create a strong inference that they acted intentionally or recklessly.  *Tellabs*, 551 U.S. at 320.  This they have failed to do.

Of the few stray statements in the Complaint that even purport to be based on a witness's personal knowledge, none advance Plaintiffs' efforts to show scienter.  Specifically, in paragraph 53, Plaintiffs allege that "according to CW2, …Defendant Brick knew that the consortium of companies that acquired Reddy's . . . facilities in California was in fact a straw man … through which Arctic Glacier would subsequently acquire the packaged facilities in California."  This sort of allegation cannot be considered because it is conclusory, and because the confidential

witness has no basis for reporting what Defendant Brick knew or did not know. *See Granberry,* 1998 WL 279377, *\*5*. These sorts of statements by confidential witnesses cannot contribute toward an inference of scienter because they are not "accompanied by enough particularized detail to support a reasonable conviction in the informant's basis of knowledge." *Metawave,* 298 F. Supp.2d at 1068.

> ii. **The allegations of the Complaint do not establish that Defendants had a motive to engage in wrongdoing**.

Lacking allegations of specific knowledge of wrongdoing by any Defendant, Plaintiffs contend Defendants were motivated to engage in fraud in order to profit from insider sales and to enhance their compensation based on the "company's pay for performance compensation philosophy." *See, e.g., Compl.* at ¶ 168-176, 185. These generalized allegations also are insufficient to establish a strong inference of scienter.

To show scienter based on a director's sale of stock, Plaintiffs bear the "burden at the pleading stage of explaining why the stock sales were unusual or suspicious." *Grillo v. Tempur-Pedic Intern., Inc.*, 553 F. Supp.2d 809, 820-21 (E.D. Ky. 2008); *In re Party City Sec. Litig.*, 147 F. Supp.2d 282, 312 (D.N.J. 2001) ("Trading following public announcements simply evidences compliance with the securities laws."). Courts generally determine whether transactions are unusual or suspicious based on three factors: "(1) whether the alleged trades were 'normal or routine' for that particular insider; (2) whether the profits reaped were substantial enough in relation to the insider's compensation level so as to produce a suspicion that the insider might have had an incentive to commit fraud; and (3) whether in light of the insider's total stock holdings, the sales were unusual or suspicious." *Id.* Insider stock transactions show scienter only when the "stock trades were in amounts dramatically out of line with prior trading practices, at times calculated to maximize personal benefit from undisclosed inside information." *In re Keithley Instruments, Inc. Sec. Litig.*, 268 F. Supp.2d 887, 902 (N.D. Ohio 2002).

The Complaint merely recites the names, dates and amounts of trades involving the individual Defendants, without even attempting to show that the timing of the trades was out of the ordinary, that the proceeds obtained were unusually large, or that the sales were unusual or suspicious in light of any Defendant's total holdings. Compl. at ¶ 166-170. As a matter of law, these allegations do not create even a weak inference of scienter. *Grillo*, 553 F. Supp.2d at 820-21. In fact, Reddy's public disclosures reveal that many or all of the trades conducted by Brick, Weaver and Janusek were made pursuant to an express trading plan promulgated under Rule 10b5-1. *See* Ex. J at 99.2. Because these stock sales were part of a periodic divestment plan under Rule 10b5-1, the timing and amount of the sales suggest that they were not made with ill intent. *See In re IAC/InterActiveCorp Sec. Litig.*, 478 F. Supp.2d 574, 604 (S.D.N.Y. 2007).

Plaintiffs' allegations regarding the individual Defendants' interests in maintaining employment, receiving performance-based compensation, or consummating the company's IPO and Secondary Offering on favorable terms are also insufficient to show scienter. Compl. at ¶¶ 168-176, 185. The Sixth Circuit recognizes that all corporate managers "share a desire for their companies to appear successful," and that desire "does not comprise a motive for fraud." *PR Diamonds*, 364 F.3d at 690. To create an inference of scienter based on motive and opportunity, Plaintiffs must do "more than describe the ordinary motives of corporate executives to perform their jobs well and be rewarded accordingly." *Frank v. Dana Corp.,* 2009 WL 2782670, *8 (N.D. Ohio Aug. 28, 2009). "[N]early all for-profit corporations compensate executives for successful financial performance as measured in the stock market, so this fact does not support a strong inference of scienter." *City of Austin Police Ret. Sys. v. ITT Educational Servs., Inc.*, 388 F. Supp.2d 932, 950 (S.D. Ind. 2005). If Plaintiffs were permitted to plead scienter based solely upon Defendants' incentive-based compensation, "virtually every company in the United States that experiences a downturn in stock price could be forced to

defend securities fraud actions" *Acito v. IMCERA Group, Inc*., 47 F.3d 47, 54 (2d Cir. 1995).

> ### iii.    The existence of an investigation does not show scienter.

Finally, although Plaintiffs reference the government investigations of the packaged ice industry, Compl. at ¶ 10, 18, the mere existence of the investigations is not evidence of any misconduct.  *See In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp.2d 1011, 1024 (N.D. Cal. 2007) (the existence of an investigation "carries no weight in pleading an antitrust conspiracy claim."); *In re Bath & Kitchen Fixtures Antitrust Litig*., 2006 WL 2038605, at *7-8 (E.D. Pa. July 19, 2006).  Courts in this Circuit have held that a government investigation that "has not resulted in charges or any finding of wrongdoing cannot support an inference of scienter." *Diebold Sec. Litig.*, 2008 WL 3927467, at *10.  Although Arctic Glacier and Home City have entered plea agreements in connection with the DOJ investigation, the plea agreements are not probative of scienter here because, as Plaintiffs admit, they "did not implicate" Reddy. *See* Compl. at ¶ 62.

### C.    Plaintiffs have not alleged loss causation under *Dura*

Plaintiffs' claims should also be dismissed because they have failed to satisfy their burden to plead loss causation.  Plaintiffs attempt to show loss causation by citing to Reddy's press releases and other news articles that disclosed: (1) Reddy was served with a search warrant and was participating in the Department of Justice's investigation of the packaged ice industry, (2) Reddy initiated an internal investigation, and thereafter suspended its Executive Vice President, disclosing that he had "likely violated Company policies and is associated with matters that are under investigation," but that "no conclusions have been reached that any illegal

conduct occurred;"[4] and (3) Reddy received notice that the SEC had initiated an inquiry into the company.  *See* Compl. at ¶ 126, 144, 151, 154.

The mere fact that a disclosure has a negative effect on a company's share price is insufficient to plead loss causation; rather, the price decline must result from a disclosure to the market that reveals the falsity of the Defendants' prior disclosures. *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005); *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 479 (4th Cir. 2006).  To plead loss causation based on the press releases and statements cited in the Complaint, Plaintiffs "must show that an economic loss occurred **after** the truth behind [a prior] misrepresentation or omission became known to the market" *Omnicare, Inc.,* 583 F.3d at 944 (emphasis added). Once again, Plaintiffs cannot do so.

Reddy's March 5 and 6, 2008 press releases did not reveal a prior disclosure to be false; in fact, they did nothing more than announce an investigation.  Similarly, the press release announcing that Reddy placed Mr. Key on a paid leave of absence stated that the independent committee's investigation is ongoing and that "no conclusions have been reached that any illegal conduct occurred."  Ex. L at 99.3.  As a matter of law, these announcements are insufficient to support loss causation. *See Rudolph v. UTStarcom*, 560 F. Supp.2d 880, 888 (N.D. Cal. April 14, 2008) (The court "agrees with the other courts that have reached this question that the

---

[4]    Plaintiffs mischaracterize Reddy's September 15, 2008 press release pertaining to the suspension of Ben Key.  *See* Compl. at ¶ 151.  The press release states in relevant part that "Ben D. Key, the Company's Executive Vice President - Sales & Marketing, has been placed on a paid leave of absence and relieved of his duties at the direction of the Special Committee of the Company's Board of Directors (the "Committee").  The Committee found that Mr. Key has likely violated Company policies and is associated with matters that are under investigation.  The **Committee's investigation** is ongoing and no conclusions have been reached that any illegal conduct occurred." Ex. L at 99.3 (emphasis added).  Plaintiffs incorrectly state that Mr. Key was suspended in connection with matters that are under investigation by the "Antitrust Division of the United States Department of Justice."

announcement of an internal investigation cannot support an allegation of loss causation"); *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp.2d 1142, 1162 (C.D. Cal. 2007); *In re Avista Corp. Sec. Litig.*, 415 F. Supp.2d 1214, 1221 (E.D. Wash. 2005) (announcement of government investigation insufficient to support loss causation because it did not contain "factual information showing Avista illegally manipulated the energy market or made factual misrepresentations.").

Disclosures pertaining to internal or external investigations do not become an actionable basis for loss causation until they reveal that a prior statement was actually false. *See Rudolph*, 560 F. Supp.2d at 888 (distinguishing announcement stating "no conclusions have been reached" from subsequent announcement that, as a result of the investigation, the company would "restate approximately $28 million of non-cash compensation expenses"). Plaintiffs' Complaint does not show that any of Defendants' statements have been revealed to be false. Plaintiffs do not allege that Reddy has been charged with wrongdoing by any government agency, and they do not allege that the special committee has made an adverse determination. The Complaint simply alleges that Reddy's stock price fell after investors became aware of the investigations.

Critically, Plaintiffs fail to acknowledge the overwhelming likelihood that the declines in Reddy's stock price were due to ongoing disclosures of bad news unrelated to any allegations of wrongdoing. For instance, on September 15, 2009, the same day that Reddy announced Key's leave of absence, the company also announced that that its "board of directors had amended the Company's dividend policy and suspended the Company's quarterly cash dividend effective immediately," and that "[n]o cash dividend will be declared for the period from July 1, 2008 to September 30, 2008." Ex. L at 99.2. To plead loss causation, Plaintiffs must "distinguish the alleged fraud from the tangle of other factors that affect a stock's price." *In re Omnicom Group, Inc. Sec. Litig.*, 541 F. Supp.2d 546, 553 (S.D.N.Y. 2008) (citing *Dura*, 544 U.S. at 343). This requires that they "ascribe some rough proportion of the whole loss to the alleged

misstatements." Because Plaintiffs are unable to apportion their alleged loss to any of the disclosures alleged in the Complaint, the Complaint must be dismissed. *Id.*

**D.**    **Plaintiffs' claims for "control person" liability must be dismissed**.

Finally, the Court must dismiss Plaintiffs' claims against the individual Defendants under Section 20 of the Exchange Act, 15 U.S.C. § 78t(a). This statute imposes joint and several liability on "controlling persons" of reporting companies. An individual Defendant's liability under Section 20 is predicated upon an underlying violation of Section 10(b) or Rule 10b-5. Therefore, a claim under Section 20 cannot survive dismissal unless a Plaintiff pleads an underlying claim of securities fraud. *See PR Diamonds*, 364 F.3d at 681; *Omnicare, Inc.,* 583 F.3d at 947. Defendants have shown that Plaintiffs' claims for securities fraud should be dismissed, and accordingly, their claims under Section 20 are deficient as a matter of law. *Id.*

<u>CONCLUSION</u>

For these reasons, Defendants pray that the Court enter an order dismissing with prejudice Plaintiffs' Consolidated Class Action Complaint, and awarding such other relief to which they may show themselves entitled.

Dated December 17, 2009.

  /s/ James R. Nelson
JAMES R. NELSON
**DLA PIPER LLP (US)**
1717 Main Street, Suite 4600
Dallas, TX 75201
Telephone:  214/743-4500
214/743-4545 (fax)
jr.nelson@dlapiper.com

RAYMOND W. HENNEY
**HONIGMAN    MILLER    SCHWARTZ
AND COHN LLP**
660 Woodward Avenue
2290 First National Building
Detroit, MI  48226-3506
Telephone:  313/465-7410
313/465-7411 (fax)
rhenney@honigman.com

SAMUEL B. ISAACSON
**DLA PIPER LLP (US)**
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
Telephone: 312/368-4000
312/236-7516 (fax)
samuel.isaacson@dlapiper.com

*Counsel for Defendants Reddy Ice Holdings,
Inc., William P. Brick and Steven J. Janusek*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and correct copies of Defendants' Motion to Dismiss and Brief in Support have been served on all parties of record via the Court's electronic case filing (ECF) system on this 17th day of December, 2009.

_/s/ James R. Nelson_____
JAMES R. NELSON
**DLA PIPER LLP (US)**
1717 Main Street, Suite 4600
Dallas, TX 75201
Telephone:  214/743-4500
214/743-4545 (fax)
jr.nelson@dlapiper.com