# EXHIBIT F

## ASSET PURCHASE AGREEMENT

      **This Asset Purchase Agreement** (this "*Agreement*") is entered into as of November 16, 2001 by and among **Desert Mountain Ice, LLC**, a California limited liability company (hereinafter "*DMI*"), **Mountain Water Ice Company**, a California corporation (hereinafter "*MWI*"), **Glacier Valley Ice Company, L.P.**, a California limited partnership (hereinafter "*GVIC*"), **South Bay Ice, LLC**, a California limited liability company (hereinafter "*SBI*" and, together with DMI, MWI and GVIC, the "*MWI Companies*"), **Reddy Ice Corporation**, a Nevada corporation (hereinafter "*Reddy*"), and **Packaged Ice, Inc.**, a Texas corporation which owns all of the outstanding capital stock of Reddy (hereinafter "*PI*" and, together with Reddy, the "*Reddy Companies*").

## PRELIMINARY STATEMENTS

      The Reddy Companies are engaged in the manufacture and sale of traditional packaged ice products in the MWI Territory (such business activity being referred to herein as the "*Reddy Business*" and for the purposes hereof, the term "Reddy Business" does not include the Ice Factories, hereinafter defined);

      In addition, the Reddy Companies own and operate ice making and bagging systems in the Reno, Nevada market and in the States of California and Hawaii, which manufacture, bag and merchandise packaged ice (such machines hereinafter being referred to as "*Ice Factories*" and each an "*Ice Factory*");

      The MWI Companies are engaged in the manufacture and sale of packaged ice products in the Reddy Territory (such business activity being referred to herein as the "*MWI Business*");

      The Reddy Companies are desirous of selling to the MWI Companies, and the MWI Companies are desirous of purchasing from the Reddy Companies, certain assets of the Reddy Business, other than the Ice Factories, upon the terms and conditions hereafter set forth;

      As a material inducement to entering into this Agreement and consummating the transactions contemplated hereby, the MWI Companies have agreed to supervise, direct and control the management of certain Ice Factories in the Reno, Nevada market, and the States of California and Hawaii as more fully described herein; and

      The MWI Companies are desirous of selling to the Reddy Companies, and the Reddy Companies are desirous of purchasing from the MWI Companies, certain assets of the MWI Business, upon the terms and conditions hereafter set forth.

      **NOW THEREFORE**, in consideration of the premises and the mutual agreements, covenants, representations and warranties hereafter set forth, the parties hereby agree as follows:

NB1:540590.8

# ARTICLE I
# DEFINITIONS

Unless the context otherwise requires, capitalized terms used herein that are not otherwise defined herein will have the meanings set forth in **Exhibit A**. The terms defined in **Exhibit A** shall have the meanings specified therein for all purposes of this Agreement, applicable to both the singular and plural forms of any of the terms herein defined.

# ARTICLE II
# PURCHASE AND SALE

## 2.1 Purchase and Sale of the Reddy Assets

(a)    **Purchase and Sale.**  Subject to the terms and conditions of this Agreement, the Reddy Companies agree to sell, convey, assign, transfer and deliver to the MWI Companies, and the MWI Companies agree to purchase, at the Closing, all of the personal property, contracts and rights of the Reddy Companies related to the Reddy Business in the MWI Territory (save and except the Excluded Reddy Assets), including, but not limited to, the personal property, contracts and rights described on **Schedule 2.1(a)** attached hereto and incorporated herein by reference, and all of the goodwill of the Reddy Business associated therewith (collectively, the "*Reddy Assets*").

(b)    **Purchase Price.**  The purchase price of the Reddy Assets shall be Six Million Eight Hundred Thousand and No/100 Dollars ($6,800,000) in cash, which shall be paid to the Reddy Companies in the form of a bank cashier's check or wire transfer (the "*MWI Purchase Price*") at the Closing.

(c)    **Excluded Reddy Assets.**  The Reddy Assets shall not include and the MWI Companies shall not acquire the assets, properties, contracts and rights described in **Schedule 2.1(c)** attached hereto (the "*Excluded Reddy Assets*").

(d)    **Assumption of Obligations.**  It is hereby agreed and understood that the MWI Companies are assuming no liabilities or obligations whatsoever of the Reddy Companies other than the obligations under the customer contracts identified on **Schedule 2.1(d)** attached hereto (the *"Reddy Customer Contracts"*), and it is further agreed and understood that the MWI Companies shall enter into the Reddy Assumption Agreement with respect to the assignment and assumption of the Reddy Customer Contracts.

## 2.2 Purchase and Sale of the MWI Assets

(a)    **Purchase and Sale.**  Subject to the terms and conditions of this Agreement, the MWI Companies agree to sell, convey, assign, transfer and deliver to the Reddy Companies, and the Reddy Companies agree to purchase, at the Closing, all of the personal property, contracts and rights of the MWI Companies related to the MWI Business in the Reddy Territory (save and except the Excluded MWI Assets), including, but not limited to, the personal

062723.0168 SAN ANTONIO 235878 v5

NBI:540590.8

property, contracts and rights described on **Schedule 2.2(a)** attached hereto and incorporated herein by reference, and all of the goodwill of the MWI Business associated therewith (collectively, the "*MWI Assets*").

        (b)      **Purchase Price.** The purchase price of the MWI Assets shall be Five Hundred Thousand and No/100 Dollars ($500,000) in cash which shall be paid to the MWI Companies in the form of a bank cashier's check or wire transfer (the "*Reddy Purchase Price*") at the Closing, or in lieu thereof such amount may be offset against the MWI Purchase Price at Closing.

        (c)      **Excluded Reddy Assets.** The MWI Assets shall not include and the Reddy Companies shall not acquire the assets, properties, contracts and rights described in **Schedule 2.2(c)** attached hereto (the "*Excluded MWI Assets*").

        (d)      **Assumption of Obligations.** It is hereby agreed and understood that the Reddy Companies are assuming no liabilities or obligations whatsoever of the MWI Companies other than the obligations under the customer contracts identified on **Schedule 2.2(d)** attached hereto (the "*MWI Customer Contracts*"), and it is further agreed and understood that the Reddy Companies shall enter into the MWI Assumption Agreement with respect to the assignment and assumption of the MWI Customer Contracts.

    **2.3 <u>Allocation</u>**. The parties agree to allocate the MWI Purchase Price paid for the Reddy Assets and the Reddy Purchase price paid for the MWI Assets in accordance with **Schedule 2.3**. The parties further agree to file all Tax Returns or reports including, without limitation, IRS Form 8594, regarding the allocation of the MWI Purchase Price paid for the Reddy Assets and the Reddy Purchase Price paid for the MWI Assets.

    **2.4 <u>Right of First Refusal for the Reddy Assets in Imperial County</u>**. In addition to the sale of the Reddy Assets to the MWI Companies, the Reddy Companies shall grant to the MWI Companies a right of first refusal as follows:

        (a)      If at any time prior to December 31, 2006, the Reddy Companies receive a bona fide offer (the "*Offer*") from a potential buyer (a "*Potential Buyer*") to sell all or substantially all of the assets owned, held or used by the Reddy Companies in connection with the business of the Reddy Companies in the Imperial County, California area (except for the sale of inventory in the ordinary course of business and assets used in the El Centro, California plant) (a "*Transaction*"), the Reddy Companies must first deliver to the MWI Companies, within ten days after receiving the Offer, a notice of the Offer (the "*Offer Notice*"). The Offer Notice shall be in writing and shall describe the material terms and conditions of the Offer in reasonable detail. If the Offer is in writing, the Reddy Companies shall also provide a copy of the Offer with the Offer Notice.

        (b)      Within thirty days after the MWI Companies receive the Offer Notice, the MWI Companies or their designee may elect to engage in the Transaction, in lieu of the Potential

3

Buyer, by delivering to the Reddy Companies written notice of the intent of the MWI Companies to engage in the Transaction.

        (c)      If the MWI Companies or their designee timely elects to engage in the Transaction:

        (1)      The purchase price and other terms will be the price and terms set forth in the Offer Notice except that if all or any portion of the purchase price in the Offer is to be paid in consideration other than cash, the MWI Companies may pay the entire purchase price in cash. In such event, the MWI Companies and the Reddy Companies shall reasonably determine the fair market value of such non-cash consideration.

        (2)      The closing will take place on the date selected by the MWI Companies or their designee, but not later than ninety days after the date on which the MWI Companies have received the Offer Notice.

        (d)      If the MWI Companies or their designee do not respond in writing to the Reddy Companies within thirty days after the date on which the MWI Companies have received the Offer Notice, the MWI Companies will be deemed not to have elected to exercise their rights under this Section 2.4 with respect to such Offer Notice.

        (e)      In the event that the MWI Companies elect not to exercise their rights or are deemed not to have elected to exercise their rights under this Section 2.4, the Reddy Companies may proceed with and consummate the Transaction with the Potential Buyer and on the material terms (including the purchase price) no more favorable to the Potential Buyer than those terms set forth in the Offer Notice; provided, however, that in the event the Reddy Companies do not consummate the Transaction with the Potential Buyer within ninety days following expiration of the rights of the MWI Companies hereunder, the right of first refusal of the MWI Companies pursuant to this Section 2.4 will continue to be applicable to any subsequent Transaction by the Reddy Companies.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF THE REDDY COMPANIES

Except as otherwise disclosed in Reddy's Disclosure Memorandum, the Reddy Companies, jointly and severally, represent and warrant to the MWI Companies as follows:

**3.1 Organization.** Reddy is a corporation duly organized, validly existing and in good standing under the laws of the State of Nevada. PI is a corporation duly organized, validly existing and in good standing under the laws of the State of Texas. Each of the Reddy Companies is duly qualified or licensed to do business as a foreign corporation in the State of California. Each of the Reddy Companies has all requisite power and authority to own, lease and operate the Reddy Business as presently conducted and to enter into this Agreement and to perform its obligations hereunder.

4

**3.2 <u>Execution, Delivery and Performance of Agreement</u>.**  The execution, delivery and performance by each Reddy Company of this Agreement and the consummation by it of the transactions contemplated hereby have been duly authorized by all necessary action.  This Agreement has been duly executed and delivered by each Reddy Company and constitutes the valid and binding obligation of each Reddy Company, enforceable against such Reddy Company in accordance with its terms except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws and equitable principles relating to or limiting creditors' rights generally.  The execution, delivery and performance of this Agreement by the Reddy Companies will not, with or without the giving of notice, the passage of time, or both, violate, conflict with, result in a default, breach or loss of rights under, or result in the creation of any lien, claim or Encumbrance pursuant to any lien, Encumbrance, instrument, agreement, or understanding, or any law, regulation, rule, order, judgment or decree, to which any Reddy Company is a party or by which any Reddy Company is bound or affected.

**3.3 <u>Statement of Revenues.</u>**  The Reddy Companies generated approximately $10,794,403 of gross revenues with respect to the business and operation of the Reddy Business for the trailing twelve months ended October 31, 2001.  In addition, the Reddy Companies generated approximately $5,622,269 in gross revenues with respect to the business and operation of the Ice Factories for the trailing twelve months ended October 31, 2001.

**3.4 <u>Customers and Suppliers</u>.**  No material customer or supplier of the Reddy Companies has communicated to any Reddy Company in any manner its intention to cease to do business with or trade with the Reddy Companies, or materially alter, modify or amend the terms with which it has conducted business with the Reddy Companies, whether as a result of, or in contemplation of, the consummation of the transactions contemplated by this Agreement.

**3.5 <u>Business Operations and Condition of the Reddy Assets</u>.**  The Reddy Companies acknowledge that the MWI Companies are purchasing the Reddy Assets for the express purpose of operating a packaged ice manufacturing and distribution business. All items comprising the Reddy Assets are held by the Reddy Companies and have been continuously used by the Reddy Companies in the Reddy Business and are now in serviceable condition.

**3.6 <u>Title to Personal Property.</u>**  Other than as described in Reddy's Disclosure Memorandum, the Reddy Companies have good, legal and marketable title to all of the personal property comprising the Reddy Assets; at the Closing, the Reddy Companies will deliver to the MWI Companies good, legal and marketable title to the Reddy Assets free from all liens or other Encumbrances. The Reddy Companies have all right, power and authority to sell, convey, assign, transfer and deliver the Reddy Assets to the MWI Companies in accordance with the terms of this Agreement.

**3.7 <u>Litigation</u>.**  There is no claim, action, suit, proceeding or investigation (judicial, governmental or otherwise), nor any order, decree or judgment (collectively, a "*Proceeding*") in effect, pending or, to the knowledge of any of the Reddy Companies, threatened, against or relating to the Reddy Companies, the Reddy Assets, the ability of the Reddy Companies to perform this Agreement or the transactions contemplated by this Agreement, and to the

5

knowledge of any of the Reddy Companies, there is no basis for the commencement of any Proceeding.

3.8 **Compliance with Laws**.  To the best knowledge of the Reddy Companies, the Reddy Companies have complied with all laws, rules, regulations, ordinances, orders, judgments and decrees relating to the Reddy Assets or the conduct of the Reddy Business. The ownership and use of the Reddy Assets and the conduct of the Reddy Business as it specifically relates to the Reddy Assets do not conflict with the rights of any other Person.

3.9 **Taxes**.  The Reddy Companies have filed, in accordance with applicable law, all Tax Returns required to have been filed on or before the date hereof. As of the date hereof, no Tax liabilities have been assessed or proposed that remain unpaid, and the Reddy Companies have not signed any extension agreement with the Internal Revenue Service or any state or local taxing authority. The Reddy Companies have paid all Taxes that have become due pursuant to the Tax Returns and has paid all installments of estimated Taxes due. All Taxes and other assessments and levies that the Reddy Companies are required by law to withhold or collect have been duly withheld and collected, and have been paid over to the proper governmental authorities to the extent due and payable. From the end of its most recent fiscal year to the date hereof, the Reddy Companies have not made any payment of or on account of any federal, state, or local income, franchise, or any real or personal property Taxes, except as set forth in Reddy's Disclosure Memorandum. Neither Reddy nor PI is aware of any basis upon which any assessment for a material amount of additional Taxes could be made. The information shown on the Tax Returns of the Reddy Companies heretofore delivered to the MWI Companies are accurate, and complete and fairly presents the information purported to be shown.

All Tax Returns, including estimated Tax Returns, required to be filed after the Closing Date by or with respect to the Reddy Companies in relation to Taxes, that, if unpaid, might result in a lien upon any of the Reddy Assets, will be duly filed and will be true, correct and complete, and all Taxes payable pursuant thereto will be paid, except such Taxes, if any, as may be contested in good faith. No deficiency or adjustment in respect to any Taxes that have been assessed against or with respect to the Reddy Companies that if unpaid, might result in a lien upon any of the Reddy Assets, remains unpaid.

3.10 **Health, Safety, and Environmental.**  To the best knowledge of the Reddy Companies, the Reddy Companies have complied in all material respects with all laws (including rules, regulations, codes, plans, injunctions, judgments, orders, decrees, rulings, and charges thereunder) of federal, state, local, and foreign governments (and all agencies thereof) which have jurisdiction over the Reddy Companies and their respective subsidiaries concerning pollution or protection of the environment, public health and safety, or employee health and safety, including laws relating to the good manufacturing practices for food products, occupational health and safety, emissions, discharges, releases, or threatened releases of pollutants, contaminants, or chemical, industrial, hazardous, or toxic materials or wastes into ambient air, surface water, ground water, or lands or otherwise relating to the manufacture, processing, distribution, use, treatment, storage, disposal, transport, or handling of pollutants,

6

contaminants, or chemical, industrial, hazardous, or toxic materials or wastes, and no action, suit, proceeding, hearing, investigation, charge, complaint, claim, demand, or notice has been filed or commenced against any of the Reddy Companies alleging any failure to so comply.

Without limiting the generality of the preceding sentence, the Reddy Companies have obtained and been in material compliance with all of the terms and conditions of all permits, licenses, and other authorizations which are required under, and has materially complied, in all respects, with all other limitations, restrictions, conditions, standards, prohibitions, requirements, obligations, schedules, and timetables which are contained in, such laws.

**3.11**   **Consents**.  Other than as described in Reddy's Disclosure Memorandum, no consent or approval of any public body or authority and no consents or waivers from other parties to material licenses, franchises, permits, agreements or other instruments are required to be obtained by the Reddy Companies as a result of the transfer of the Reddy Assets contemplated by this Agreement so as (i) to avoid the loss of or default in any such material license, franchise, permit, agreement or other instrument or the creation of any lien or other claim on any Reddy Asset pursuant to the terms of any law, regulation, order, agreement or other legal requirement binding upon the Reddy Companies relating to the Reddy Business or to which any such Reddy Asset may be subject, or (ii) to enable the MWI Companies to continue the operation of the Reddy Business substantially as conducted prior to the Closing.

**3.12**   **Contracts**.  No Reddy Company is a party to any contracts relating to the Reddy Business or the Reddy Assets that are not terminable at will, other than those contracts of the Reddy Companies relating to the Reddy Business listed and described in Reddy's Disclosure Memorandum.  Each Reddy Customer Contract is valid and subsisting and, upon assignment pursuant to this Agreement, will be enforceable by the MWI Companies, except as enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws and equitable principles relating to or limiting creditors' rights generally; there is no litigation pending or, to the best knowledge of the Reddy Companies, threatened by any party with respect to any Reddy Customer Contract; the Reddy Companies have duly performed all their material obligations under each Reddy Customer Contract to the extent that such obligations to perform have accrued; and no breach or default, alleged breach or default, or event which would (with notice or passage of time, or both) constitute a breach or default under any Reddy Customer Contract by the Reddy Companies (or, to the best knowledge of the Reddy Companies, any other party or obligor with respect thereto), has occurred or as a result of this Agreement or its performance will occur (assuming receipt of all required consents and approvals). Consummation of the transactions contemplated by this Agreement will not (and will not given any Person a right to) terminate or modify any rights of, or accelerate or augment any obligations of, the Reddy Companies under any of the Reddy Customer Contracts.

**3.13**   **Employee Benefits**.  The Reddy Companies shall be solely liable for all contributions, benefits and other obligations with respect to all employee benefit plans of which any Reddy Company is or ever has been a party or by which such Reddy Company is or ever has been bound in connection with the Reddy Business, including, without limitation, (i) any profit-

062723.0168 SAN ANTONIO 235878 v5

NB1:540590.8

sharing, deferred compensation, bonus, stock option, stock purchase, pension, retainer, consulting, retirement, severance, welfare or incentive plan, agreement or arrangement (including, without limitation, all employee benefit plans which are intended to be qualified under Section 401(a) of the United States Internal Revenue Code of 1986, as amended (including any "multiemployer" plans within the meaning of Section 3(37) of ERISA)), (ii) any plan, agreement or arrangement providing for "fringe benefits" or perquisites to employees, officers, directors or agents, including, but not limited to, benefits relating to automobiles, clubs, vacation, child care, parenting, sabbatical, sick leave, medical, dental, hospitalization, life insurance and other types of insurance of the Reddy Business, (iii) any employment agreement, or (iv) any other "employee benefit plan" within the meaning of Section 3(3) of ERISA. The MWI Companies shall have no liability or obligations (as a successor or otherwise) with respect to any such employee benefit plans.

3.14   **Labor Matters.**  The Reddy Companies have complied and are presently complying in all material respects with all laws respecting employment and employment practices, terms and conditions of employment, and wages and hours and is not engaged in any unfair labor practice or unlawful employment practice relating to the Reddy Business. There is no unfair labor practice charge or other complaint against the Reddy Companies pending or threatened before the National Labor Relations Board, the Equal Employment Opportunity Commission, Department of Labor or any similar state or local agency nor is there any grievance or any arbitration proceeding arising out of or under any collective bargaining agreement. There is no labor strike, slowdown or work stoppage pending or threatened against the Reddy Companies. All employees of the Reddy Business are either United States citizens or resident aliens specifically authorized to engage in employment in the United States in accordance with all applicable laws. All liabilities or obligations to any employee of the Reddy Companies resulting from termination of such employee's employment with the Reddy Companies will be and remain the sole responsibility and liability of the Reddy Companies.

3.15   **Insurance.**  The Reddy Companies have maintained insurance through the Closing Date with financially sound and reputable insurers unaffiliated with the Reddy Companies in such amounts and against such risks as are adequate to protect the Reddy Assets and the Reddy Business. The Reddy Companies have not received any notice or other indication from any insurer or agent of any intent to cancel or not renew any of such insurance policies.

### ARTICLE IV
### REPRESENTATIONS AND WARRANTIES OF THE MWI COMPANIES

The MWI Companies, jointly and severally, represent and warrant to the Reddy Companies as follows:

4.1 **Organization.**  MWI is a corporation duly organized, validly existing and in good standing under the laws of the State of California. DMI is a limited liability company duly organized, validly existing and in good standing under the laws of the State of California. GVIC is a limited partnership formed under the laws of the State of California. SBI is a limited liability

8

company duly organized, validly existing and in good standing under the laws of the State of California. DMI is duly qualified or licensed to do business as a foreign corporation in the State of Arizona. The MWI Companies have all requisite power and authority to own, lease and operate the MWI Business as presently conducted and to enter into this Agreement and to perform its obligations hereunder.

   **4.2 Execution, Delivery and Performance of Agreement.**  The execution, delivery and performance by each MWI Company of this Agreement and the consummation by such MWI Company of the transactions contemplated hereby have been duly authorized by all necessary action. This Agreement has been duly executed and delivered by each MWI Company and constitutes the valid and binding obligation of each MWI Company, enforceable against such MWI Company in accordance with its terms except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws and equitable principles relating to or limiting creditors' rights generally. The execution, delivery and performance of this Agreement by the MWI Companies will not, with or without the giving of notice, the passage of time, or both, violate, conflict with, result in a default, breach or loss of rights under, or result in the creation of any lien, claim or Encumbrance pursuant to any lien, Encumbrance, instrument, agreement, or understanding, or any law, regulation, rule, order, judgment or decree, to which any MWI Company is a party or by which any MWI Company is bound or affected.

   **4.3 Statement of Revenues.**  The MWI Companies generated approximately $3,126,446 of gross revenues with respect to the MWI Business for the trailing twelve months ended October 31, 2001.

   **4.4 Customers and Suppliers.**  No material customer or supplier of the MWI Companies has communicated to any MWI Company in any manner its intention to cease to do business with or trade with the MWI Companies, or materially alter, modify or amend the terms with which it has conducted business with the MWI Companies, whether as a result of, or in contemplation of, the consummation of the transactions contemplated by this Agreement.

   **4.5 Business Operations and Condition of the MWI Assets**. The MWI Companies acknowledge that the Reddy Companies are purchasing the MWI Assets for the express purpose of operating a packaged ice manufacturing and distribution business. All items comprising the MWI Assets are held by the MWI Companies and have been continuously used by the MWI Companies in the MWI Business and are now in serviceable condition.

   **4.6 Title to Personal Property.**  The MWI Companies have good, legal and marketable title to all of the personal property comprising the MWI Assets; at the Closing, the MWI Companies will deliver to the Reddy Companies good, legal and marketable title to the MWI Assets free from all liens or other Encumbrances. The MWI Companies have all right, power and authority to sell, convey, assign, transfer and deliver the MWI Assets to the Reddy Companies in accordance with the terms of this Agreement.

062723.0168 SAN ANTONIO 235878 v5

NB1:540590.8

**4.7 Litigation.**  There is no Proceeding in effect, pending or, to the knowledge of the MWI Companies, threatened, against or relating to the MWI Companies, the MWI Assets, the ability of the MWI Companies to perform this Agreement or the transactions contemplated by this Agreement, and to the knowledge of the MWI Companies, there is no basis for the commencement of any Proceeding.

**4.8 Compliance with Laws.**  To the best knowledge of the MWI Companies, the MWI Companies have complied with all laws, rules, regulations, ordinances, orders, judgments and decrees relating to the MWI Assets or the conduct of the MWI Business.  The ownership and use of the MWI Assets and the conduct of the MWI Business as it specifically relates to the MWI Assets does not conflict with the rights of any other Person.

**4.9 Taxes.**  The MWI Companies have filed, in accordance with applicable law, all Tax Returns required to have been filed on or before the date hereof.  As of the date hereof, no Tax liabilities have been assessed or proposed that remain unpaid, and the MWI Companies have not signed any extension agreement with the Internal Revenue Service or any state or local taxing authority.  The MWI Companies have paid all Taxes that have become due pursuant to the Tax Returns and have paid all installments of estimated Taxes due.  All Taxes and other assessments and levies that the MWI Companies are required by law to withhold or collect have been duly withheld and collected, and have been paid over to the proper governmental authorities to the extent due and payable.  From the end of its most recent fiscal year to the date hereof, the MWI Companies have not made any payment of or on account of any federal, state, or local income, franchise, or any real or personal property Taxes.  None of the MWI Companies are aware of any basis upon which any assessment for a material amount of additional Taxes could be made.  The information shown on the Tax Returns of the MWI Companies heretofore delivered to the Reddy Companies is accurate, and complete and fairly presents the information purported to be shown.

All Tax Returns, including estimated Tax Returns, required to be filed after the Closing Date by or with respect to the MWI Companies in relation to Taxes, that, if unpaid, might result in a lien upon any of the MWI Assets, will be duly filed and will be true, correct and complete, and all Taxes payable pursuant thereto will be paid, except such Taxes, if any, as may be contested in good faith. No deficiency or adjustment in respect to any Taxes that have been assessed against or with respect to the MWI Companies that if unpaid, might result in a lien upon any of the MWI Assets, remains unpaid.

**4.10   Health, Safety, and Environmental.**  To the best knowledge of the MWI Companies, the MWI Companies have complied in all material respects with all laws (including rules, regulations, codes, plans, injunctions, judgments, orders, decrees, rulings, and charges thereunder) of federal, state, local, and foreign governments (and all agencies thereof) which have jurisdiction over the MWI Companies and their respective subsidiaries concerning pollution or protection of the environment, public health and safety, or employee health and safety, including laws relating to the good manufacturing practices for food products, occupational health and safety, emissions, discharges, releases, or threatened releases of pollutants, contaminants, or chemical, industrial, hazardous, or toxic materials or wastes into ambient air,

10

surface water, ground water, or lands or otherwise relating to the manufacture, processing, distribution, use, treatment, storage, disposal, transport, or handling of pollutants, contaminants, or chemical, industrial, hazardous, or toxic materials or wastes, and no action, suit, proceeding, hearing, investigation, charge, complaint, claim, demand, or notice has been filed or commenced against the MWI Companies alleging any failure to so comply.

Without limiting the generality of the preceding sentence, the MWI Companies have obtained and been in material compliance with all of the terms and conditions of all permits, licenses, and other authorizations which are required under, and has materially complied, in all respects, with all other limitations, restrictions, conditions, standards, prohibitions, requirements, obligations, schedules, and timetables which are contained in, such laws.

4.11    **Consents**. Other than as described in MWI's Disclosure Memorandum, no consent or approval of any public body or authority and no consents or waivers from other parties to material licenses, franchises, permits, agreements or other instruments are required to be obtained by the MWI Companies as a result of the transfer of the MWI Assets contemplated by this Agreement so as (i) to avoid the loss of or default in any such material license, franchise, permit, agreement or other instrument or the creation of any lien or other claim on any MWI Asset pursuant to the terms of any law, regulation, order, agreement or other legal requirement binding upon any MWI Company relating to the MWI Business or to which any such MWI Asset may be subject, or (ii) to enable the Reddy Companies to continue the operation of the MWI Business substantially as conducted prior to the Closing.

4.12    **Contracts**. No MWI Company is a party to any contracts relating to the MWI Business or the MWI Assets that are not terminable at will, other than those contracts of MWI relating to the MWI Business listed and described in MWI's Disclosure Memorandum. Each MWI Customer Contract is valid and subsisting and, upon assignment pursuant to this Agreement, will be enforceable by the Reddy Companies, except as enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws and equitable principles relating to or limiting creditors' rights generally; there is no litigation pending or, to the best knowledge of the MWI Companies, threatened by any party with respect to any MWI Customer Contract; The MWI Companies have duly performed all their material obligations under each MWI Customer Contract to the extent that such obligations to perform have accrued; and no breach or default, alleged breach or default, or event which would (with notice or passage of time, or both) constitute a breach or default under any MWI Customer Contract by the MWI Companies (or, to the best knowledge of the MWI Companies, any other party or obligor with respect thereto), has occurred or as a result of this Agreement or its performance will occur (assuming receipt of all required consents and approvals). Consummation of the transactions contemplated by this Agreement will not (and will not given any Person a right to) terminate or modify any rights of, or accelerate or augment any obligations of, the MWI Companies under any of the MWI Customer Contracts.

4.13    **Employee Benefits**. The MWI Companies shall be solely liable for all contributions, benefits and other obligations with respect to all employee benefit plans of which

11

any MWI Company is or ever has been a party or by which such MWI Company is or ever has been bound in connection with the MWI Business, including, without limitation, (i) any profit-sharing, deferred compensation, bonus, stock option, stock purchase, pension, retainer, consulting, retirement, severance, welfare or incentive plan, agreement or arrangement (including, without limitation, all employee benefit plans which are intended to be qualified under Section 401(a) of the United States Internal Revenue Code of 1986, as amended (including any "multiemployer" plans within the meaning of Section 3(37) of ERISA)), (ii) any plan, agreement or arrangement providing for "fringe benefits" or perquisites to employees, officers, directors or agents, including, but not limited to, benefits relating to automobiles, clubs, vacation, child care, parenting, sabbatical, sick leave, medical, dental, hospitalization, life insurance and other types of insurance of the Reddy Business, (iii) any employment agreement, or (iv) any other "employee benefit plan" within the meaning of Section 3(3) of ERISA. The Reddy Companies shall have no liability or obligations (as a successor or otherwise) with respect to any such employee benefit plans.

**4.14 Labor Matters.** The MWI Companies have complied and are presently complying in all material respects with all laws respecting employment and employment practices, terms and conditions of employment, and wages and hours and is not engaged in any unfair labor practice or unlawful employment practice. There is no unfair labor practice charge or other complaint against any MWI Company pending or threatened before the National Labor Relations Board, the Equal Employment Opportunity Commission, the Department of Labor or any similar state or local agency nor is there any grievance or any arbitration proceeding arising out of or under any collective bargaining agreement. There is no labor strike, slowdown or work stoppage pending or threatened against the MWI Companies. All employees of the MWI Business are either United States citizens or resident aliens specifically authorized to engage in employment in the United States in accordance with all applicable laws. All liabilities or obligations to any employee of the MWI Companies resulting from the termination of such employee's employment with the MWI Companies will be and remain the sole responsibility and liability of the MWI Companies.

**4.15 Insurance.** The MWI Companies have maintained insurance through the Closing Date with financially sound and reputable insurers unaffiliated with the MWI Companies in such amounts and against such risks as are adequate to protect the MWI Assets and the MWI Business. The MWI Companies have not received any notice or other indication from any insurer or agent of any intent to cancel or not renew any of such insurance policies.

## ARTICLE V
## PRE-CLOSING COVENANTS OF THE REDDY COMPANIES

The Reddy Companies hereby covenant and agree as follows:

**5.1 Conduct of the Reddy Business.** Between the date hereof, up to and including the Closing Date, the Reddy Companies shall:

12

      (a)     operate the Reddy Business in the ordinary course and in substantially the same manner as currently conducted and shall continue normal capital expenditures and maintenance in connection with the Reddy Assets and the Reddy Business prior to the Closing Date to preserve intact its present business organization and maintain the Reddy Assets in good operating condition and repair, except (i) as may be permitted by this Agreement or (ii) as necessary to consummate the transactions contemplated hereby; and

      (b)     not enter into or permit any material amendment, supplement, waiver or other modification in respect of any Customer Contract.

    5.2 [Intentionally Omitted].

    5.3 <u>Closing Conditions</u>.  The Reddy Companies will use their best efforts to cause the conditions set forth in <u>Section 9.1</u> to be satisfied by the Closing Date.

    5.4 <u>No Shopping</u>.  The Reddy Companies shall not solicit, initiate or participate, directly or indirectly, or cause any other person to solicit, initiate or participate, directly or indirectly, in discussions or negotiations with, or provide any information to, any other Person (other than the MWI Companies) concerning, or enter into any agreement providing for (other than in the ordinary course of business), the acquisition of the Reddy Assets or any part thereof (whether by merger, purchase of stock or assets or other similar transaction), other than the acquisition contemplated by this Agreement.

    5.5 <u>Insurance</u>.  The Reddy Companies shall maintain insurance through the Closing Date with financially sound and reputable insurers unaffiliated with the Reddy Companies in such amounts and against such risks as are adequate to protect the Reddy Assets and the Reddy Business.

    5.6 <u>Employee Matters</u>.  The Reddy Companies shall satisfy and discharge any severance and/or contractual or other obligations owed to any employee of the Reddy Companies terminated prior to, on or after the Closing. The MWI Companies shall have the right at any time after the date hereof to interview any such terminated employees of the Reddy Companies and, in its absolute discretion, to hire any such employees for the continued conduct of the Reddy Business by the MWI Companies after the Closing. The Reddy Companies shall provide reasonable cooperation to facilitate contact by the MWI Companies with and interviewing of any such employees of the Reddy Companies. The Reddy Companies will not take any action, directly or indirectly, to prevent or discourage any such employee from being employed by the MWI Companies.

## ARTICLE VI
## PRE-CLOSING COVENANTS OF THE MWI COMPANIES

The MWI Companies hereby covenant and agree as follows:

13

6.1 <u>Conduct of the MWI Business</u>.   Between the date hereof, up to and including the Closing Date, the MWI Companies shall:

(a)      operate the MWI Business in the ordinary course and in substantially the same manner as currently conducted and shall continue normal capital expenditures and maintenance in connection with the MWI Assets and the MWI Business prior to the Closing Date to preserve intact its present business organization and maintain the MWI Assets in good operating condition and repair, except (i) as may be permitted by this Agreement or (ii) as necessary to consummate the transactions contemplated hereby; and

(b)      not enter into or permit any material amendment, supplement, waiver or other modification in respect of any MWI Customer Contract.

6.2 [Intentionally Omitted].

6.3 <u>Closing Conditions</u>.   The MWI Companies will use their best efforts to cause the conditions set forth in <u>Section 9.2</u> to be satisfied by the Closing Date.

6.4 <u>No Shopping</u>.   The MWI Companies will not solicit, initiate or participate, directly or indirectly, or cause any other person to solicit, initiate or participate, directly or indirectly, in discussions or negotiations with, or provide any information to, any other Person (other than the Reddy Companies) concerning, or enter into any agreement providing for (other than in the ordinary course of business), the acquisition of the MWI Assets or any part thereof (whether by merger, purchase of stock or assets or other similar transaction), other than the acquisition contemplated by this Agreement.

6.5 <u>Insurance</u>.   The MWI Companies will maintain insurance through the Closing Date with financially sound and reputable insurers unaffiliated with the MWI Companies in such amounts and against such risks as are adequate to protect the MWI Assets and the MWI Business.

6.6 <u>Employee Matters</u>.   The MWI Companies shall satisfy and discharge any severance and/or contractual or other obligations owed to any employee of the MWI Companies terminated prior to, on or after the Closing.   The Reddy Companies shall have the right at any time after the date hereof to interview any such terminated employees of the MWI Companies and, in their absolute discretion, to hire any such employees for the continued conduct of the MWI Business by the Reddy Companies after the Closing.   The MWI Companies shall provide reasonable cooperation to facilitate contact by the Reddy Companies with and interviewing of any such employees of the MWI Companies.   The MWI Companies will not take any action, directly or indirectly, to prevent or discourage any such employee from being employed by the Reddy Companies.

062723 0168 SAN ANTONIO 235878 v5

NB1:540590.8

## ARTICLE VII
## ADDITIONAL CONTINUING COVENANTS

7.1 [Intentionally Omitted].

7.2 **Public Announcement**. The Reddy Companies and the MWI Companies will cooperate in the public announcement of the transactions contemplated by this Agreement, and, other than as may be required by applicable law, no such announcement will be made by either party without the consent of the other party, which consent shall not be unreasonably withheld.

7.3 **Circle K Agreement**. After the Closing, the MWI Companies shall have the right to contact Tosco Corporation ("*Circle K*") to discuss and negotiate removing the MWI Territory from the Reddy Companies' master agreement with Circle K and entering into a new, separate agreement with Circle K; provided, however, that no such agreement shall cause any price increase, term change or other material modification to the Reddy Companies' agreement with Circle K. The Reddy Companies agree to provide reasonable cooperation to the MWI Companies to facilitate the negotiation by the MWI Companies of a separate agreement with Circle K.

7.4 **Discharge of Debts**.

(a) **Discharge by the Reddy Companies**. The Reddy Companies hereby agree and acknowledge that the MWI Companies are not assuming any debts of the Reddy Companies and, to the extent any such debts were not released or discharged prior to the Closing Date, the Reddy Companies remain responsible for and will discharge all such debts that relate to the Reddy Business and were incurred by the Reddy Companies prior to the Closing in accordance with the respective terms thereof.

(b) **Discharge by the MWI Companies**. The MWI Companies hereby agree and acknowledge that the Reddy Companies are not assuming any debts of the MWI Companies and, to the extent any such debts were not released or discharged prior to the Closing Date, the MWI Companies remain responsible for and will discharge all such debts that relate to the MWI Business and were incurred by the MWI Companies prior to the Closing in accordance with the respective terms thereof.

7.5 **Confidentiality**. From and after the date hereof, the Reddy Companies and the MWI Companies will, and will cause their respective officers, employees, representatives, consultants and advisors to, hold in confidence all confidential information in the possession of such Person and such Person's Affiliates or financial advisors concerning the Reddy Assets, the Reddy Business, the MWI Assets or the MWI Business or the transactions contemplated by or the discussions and negotiations preceding this Agreement. The Reddy Companies and the MWI Companies agree not to release or disclose any such information to any Person other than the parties hereto and their authorized representatives. Notwithstanding the foregoing, the confidentiality obligations of this Section 7.5 shall not apply to information:

15

      (a)     which the Reddy Companies or the MWI Companies are compelled to disclose by judicial or administrative process, or, in the reasonable opinion of counsel, by other mandatory requirements of law;

      (b)     which can be shown to have been generally available to the public other than as a result of a breach of this Section 7.5; or

      (c)     which can be shown to have been provided to the Reddy Companies or the MWI Companies by a third party who obtained such information other than as a result of a breach of a confidential relationship.

    7.6 [Intentionally Omitted].

    7.7 **Litigation Cooperation**. After the Closing, the MWI Companies and the Reddy Companies shall provide reasonable cooperation to each other in connection with the other party's defense of any Proceeding (including, without limitation, any product liability or employment related claims) for which such party's cooperation is reasonably necessary. Any information obtained pursuant to this Section 7.7 or pursuant to any other Section hereof providing for the sharing of information or the review of documents relating to a party's defense of any Proceeding shall be subject to Section 7.5.

    7.8 **Compliance with WARN**. Each party agrees that following the Closing, such party will not take or cause to be taken, or omit to take, any action that would cause the other party hereto to be in violation or default under, or otherwise trigger any liability under the Worker Adjustment and Retraining Notification Act.

    7.9 **Further Assurances**. Each party will use its best efforts to perform and fulfill all obligations on its part to be performed and fulfilled under this Agreement, to the end that the transactions contemplated by this Agreement shall be effected substantially in accordance with its terms as soon as reasonably practicable. The parties shall cooperate with each other in such actions and in securing requisite consents, permits or approvals. Each party shall execute and deliver after the Closing such further certificates, agreements and other documents and take such other actions as the other parties may reasonably request to consummate or implement the transactions contemplated hereby or to evidence such events or matters.

**ARTICLE VIII**
**CLOSING**

    8.1 **Time and Place.** The parties shall execute and deliver to Akin, Gump, Strauss, Hauer & Feld, L.L.P., counsel for the Reddy Companies, to be held in escrow, all documents and other items to be delivered at Closing as hereinafter set forth, on December 13, 2001 (the "*Escrow Closing*"), save and except the Reddy Purchase Price and the MWI Purchase Price. The actual Closing will take place at the offices of O'Melveny & Myers LLP, 610 Newport Center Drive, Newport Beach, California 92660, or such other location or in such other manner agreed upon by the parties (including by telephone and the facsimile exchange of signature page

16

counterparts that have been signed by the appropriate parties thereto), at 10:00 a.m. (Pacific time) on January 3, 2002, provided that the Closing will be deemed to be effective as of December 31, 2001. Akin, Gump, Strauss, Hauer & Feld, L.L.P. will not release the closing document until it has confirmed that the Reddy Companies have received the MWI Purchase Price and the MWI Companies have received the Reddy Purchase Price.

    **8.2 Reddy Companies' Obligations at Closing.**   At the Closing, the Reddy Companies shall deliver to the MWI Companies:

        (a)    the Reddy Purchase Price;

        (b)    copies of all licenses, permits, authorizations, and approvals required by law and issued by all governmental authorities having jurisdiction, if any, and the original of each bill for current personal property taxes, together with proof of payment thereof (if any of the same have been paid);

        (c)    the executed Reddy Bill of Sale;

        (d)    executed counterparts of the Reddy Assumption Agreement;

        (e)    an opinion of counsel for the Reddy Companies in the form of **Exhibit H**;

        (f)    an opinion from an appraiser to be mutually agreed upon by the Reddy Companies and the MWI Companies to the effect that the Reddy Purchase Price for the Reddy Assets to be sold, transferred and delivered to the MWI Companies hereunder represents a reasonably equivalent value for such assets;

        (g)    such other instruments of transfer necessary or appropriate to transfer and vest in the MWI Companies all right, title and interest of the Reddy Companies in and to the Reddy Assets;

        (h)    a current list of all customers of the Reddy Business and a telephone number or other method of contact for each such customer;

        (i)    evidence of the receipt of duly executed written consents to the assignment to the MWI Companies of each Reddy Customer Contract, to the extent that such consent is required to be obtained from a party or parties other than the MWI Companies or the Reddy Companies in connection with such assignment; and

        (j)    a Certificate of Compliance, in form and substance satisfactory to the MWI Companies, from the Reddy Companies indicating that the Reddy Companies have materially complied with their obligations contained in this Agreement, that the representations and warranties contained in this Agreement or in any certificate required to be delivered in connection with this Agreement shall be true in all material respects at and as of the Closing with the same force and effect as though made at the Closing, and no material adverse change in the condition (financial or otherwise), prospects or results of operations of the Reddy Business or the

17

character or condition of the Reddy Assets has occurred or is continuing between the date hereof and the Closing.

Simultaneously with the deliveries referred to in this Section 8.2, the Reddy Companies shall take or cause to be taken all such actions as may reasonably be required to put the MWI Companies in actual possession and operating control of the Reddy Assets.

8.3 **MWI Companies' Obligations at Closing**.   At the Closing, the MWI Companies shall deliver to the Reddy Companies:

(a)     the MWI Purchase Price;

(b)     copies of all licenses, permits, authorizations, and approvals required by law and issued by all governmental authorities having jurisdiction, if any, and the original of each bill for current personal property taxes, together with proof of payment thereof (if any of the same have been paid);

(c)     the executed MWI Bill of Sale;

(d)     executed counterparts of the MWI Assumption Agreement;

(e)     such other instruments of transfer necessary or appropriate to transfer and vest in the Reddy Companies all right, title and interest of the MWI Companies in and to the MWI Assets;

(f)     a current list of all customers of the MWI Business and a telephone number or other method of contact for each such customer;

(g)     evidence of the receipt of duly executed written consents to the assignment to the Reddy Companies of each MWI Customer Contract, to the extent that such consent is required to be obtained from a party or parties other than the MWI Companies or the Reddy Companies in connection with such assignment; and

(h)     a Certificate of Compliance, in form and substance satisfactory to the Reddy Companies, from the MWI Companies indicating that the MWI Companies materially complied with its obligations contained in this Agreement, that the representations and warranties contained in this Agreement or in any certificate required to be delivered in connection with this Agreement shall be true in all material respects at and as of the Closing with the same force and effect as though made at the Closing, and no material adverse change in the condition (financial or otherwise), prospects or results of operations of the MWI Business or the character or condition of the MWI Assets has occurred or is continuing between the date hereof and the Closing.

18

Simultaneously with the deliveries referred to in this <u>Section 8.3</u>, the MWI Companies shall take or cause to be taken all such actions as may reasonably be required to put the Reddy Companies in actual possession and operating control of the MWI Assets.

**ARTICLE IX**
**CONDITIONS TO CLOSING**

**9.1 <u>Conditions to Obligations of the MWI Companies</u>.**  The obligations of the MWI Companies to complete the transactions contemplated at the Closing shall be subject to the satisfaction on or prior to the Closing Date of the following conditions except to the extent waived in writing by the MWI Companies:

(a)     **Performance.**  Each agreement and obligation of the Reddy Companies to be performed on or before the Closing Date shall have been duly performed in all material respects.

(b)     **Representations and Warranties True; No Material Adverse Change.** The representations and warranties of the Reddy Companies contained herein shall be true in all material respects at and as of the Closing with the same force and effect as though made at the Closing and since the date hereof there shall not have occurred or be continuing any material adverse change in the condition (financial or otherwise), prospects or results of operations of the Reddy Business or the character or condition of the Reddy Assets, and the MWI Companies shall have received from the Reddy Companies a certificate, dated as of the Closing, to such effect.

(c)     **Injunction, Litigations, etc.**  No Proceeding by any governmental authority or any other Person shall have been instituted or threatened for the purpose of enjoining or preventing, or which question the validity or legality of, the transactions contemplated hereby and which could reasonably be expected to damage the MWI Companies materially if the transactions contemplated hereby are consummated.

(d)     **Third Party Creditors.**  All third party creditors of the Reddy Business will be paid in full, and all third party creditors shall have released all liens or claims against the Reddy Assets, and the Reddy Companies shall provide, or cause to be provided, to the MWI Companies UCC-3 termination statements or other documentation from all third party creditors indicating that the third party creditors have released their liens against the Reddy Assets and consented to the conveyance of the Reddy Assets by the Reddy Companies to the MWI Companies free and clear of all liens or other Encumbrances.

(e)     **Consents and Approvals.** The Reddy Companies shall have (i) obtained all consents, permits or approvals, if any, necessary to sell, convey, assign and transfer to the MWI Companies all of the Reddy Assets and delivered to the MWI Companies appropriate written evidence thereof, and (ii) delivered to the MWI Companies all documents and instruments necessary to effect the sale, conveyance, assignment and transfer of the Reddy Assets pursuant to this Agreement.

19

(f)     **Document Deliveries**.  The Reddy Companies shall have delivered all documents, each duly executed, as required by Section 8.2 hereof.

**9.2 Conditions to Obligations of the Reddy Companies**.  The obligation of the Reddy Companies to complete the transactions contemplated at the Closing shall be subject to the satisfaction on or prior to the Closing Date of the following conditions except to the extent waived in writing by the Reddy Companies:

(a)     **Performance**.  Each agreement and obligation of the MWI Companies to be performed on or before the Closing Date shall have been duly performed in all material respects.

(b)     **Representations and Warranties True; No Material Adverse Change**.  The representations and warranties of the MWI Companies contained herein shall be true in all material respects at and as of the Closing with the same force and effect as though made at the Closing and, since the date hereof, there shall not have occurred or be continuing any material adverse change in the condition (financial or otherwise), prospects or results of operations of the MWI Business or the character or condition of the MWI Assets, and the Reddy Companies shall have received from the MWI Companies a certificate, dated as of the Closing, to such effect.

(c)     **Injunction, Litigations, etc.**  No Proceeding by any governmental authority or any other Person shall have been instituted or threatened for the purpose of enjoining or preventing, or which question the validity or legality of, the transactions contemplated hereby and which could reasonably be expected to damage the Reddy Companies materially if the transactions contemplated hereby are consummated.

(d)     **Third Party Creditors**.  All third party creditors of the MWI Business will be paid in full, and all third party creditors shall have released all liens or claims against the MWI Assets, and the MWI Companies shall provide, or cause to be provided, to the Reddy Companies UCC-3 termination statements or other documentation from all third party creditors indicating that the third party creditors have released their liens against the MWI Assets and consented to the conveyance by the MWI Companies of the MWI Assets to the Reddy Companies free and clear of all liens or other Encumbrances.

(e)     **Consents and Approvals**.  The MWI Companies shall have (i) obtained all consents, permits or approvals, if any, necessary to sell, convey, assign and transfer to the Reddy Companies all of the MWI Assets and delivered to the Reddy Companies appropriate written evidence thereof, and (ii) delivered to the Reddy Companies all documents and instruments necessary to effect the sale, conveyance, assignment and transfer of the MWI Assets pursuant to this Agreement.

(f)     **Document Deliveries**.  The MWI Companies shall have delivered all documents, each duly executed, as required by Section 8.3 hereof.

20

## ARTICLE X
## NONCOMPETITION BY THE REDDY COMPANIES

**10.1**    <u>Restrictions on Competitive Activities</u>. The Reddy Companies (for themselves and all other subsidiaries of PI and for the purposes of this <u>Article X</u>, the defined term the "Reddy Companies" shall mean the Reddy Companies and all subsidiaries of PI) each agrees that, after the Closing, the MWI Companies will be entitled to the goodwill and going concern value of the Reddy Business and to protect and preserve the same to the maximum extent permitted by all applicable law. The Reddy Companies each acknowledges that the customer goodwill the Reddy Companies have built up in the MWI Territory and the ability of the MWI Companies and their Affiliates to expand their operations in the MWI Territory comprises a substantial portion of the value of the Reddy Assets and the Reddy Business. The Reddy Companies further acknowledge that the MWI Companies would not be purchasing the Reddy Assets pursuant to the terms of this Agreement but for such goodwill and ability to expand. Therefore, as an inducement for the MWI Companies to purchase the Reddy Assets pursuant to this Agreement, and as part of the consideration paid to the Reddy Companies for such assets, the Reddy Companies each agrees that, for a period of five years from the Closing Date, such Reddy Company, will not, directly or indirectly, either for itself or any other Person, without the express written consent of the MWI Companies, which consent may be withheld in their sole discretion, (a) own, operate or be engaged in any way with a competing business of the Reddy Business within the MWI Territory, including, without limitation, the manufacture, sale or distribution of ice, (b) induce or attempt to induce any employee of the MWI Companies to leave the employ of the MWI Companies, (c) in any way interfere with the relationship between the MWI Companies and any employee of the MWI Companies, (d) employ or otherwise engage, or offer to employ or otherwise engage, any Person who is then (or was at any time within one year before the time of such employment, engagement or offer thereof) an employee, sales representative or agent of any of the Reddy Companies in connection with the Reddy Business (or of the MWI Companies, as successor to the Reddy Business) in any part of the MWI Territory, (e) induce or attempt to induce any customer, supplier, licensee or business relation of the MWI Companies to cease its relationship with the MWI Companies, (f) enter into any agreement or understanding (whether oral or written) with any Person other than the MWI Companies with respect to the sale or other transfer of Ice Factories in the MWI Territory, (g) sell, lease, sublease, assign or license any of its owned or leased real property in the MWI Territory to any Person for the purpose of manufacturing, selling or distributing ice in the MWI Territory, and if the Reddy Companies sell any of such owned real property they shall restrict such use through the recordation of a deed restriction in the real property records of the county in which such property is located, and (h) sell any of their ice manufacturing equipment within the MWI Territory. The Reddy Companies agree that the covenants contained in this <u>Section 10.1</u> are reasonable with respect to their duration, geographical area, and scope.

**10.2**    <u>Acknowledgements by the Reddy Companies</u>. The Reddy Companies each understands, acknowledges and agrees that (a) the MWI Companies have required that the Reddy Companies make the covenants set forth in this <u>Article X</u> as a condition to the purchase by the MWI Companies of the Reddy Assets pursuant to this Agreement; (b) the provisions of this <u>Article X</u> are reasonable and do not impose a greater restraint on the Reddy Companies than is necessary to

062723.0168 SAN ANTONIO 235878 v5

NBI:540590.8

protect the goodwill or other business interest of the MWI Companies; (c) the provisions set forth in this Article X are not oppressive to the Reddy Companies nor injurious to the public; and (d) the MWI Companies would be irreparably damaged if the Reddy Companies were to breach the covenants set forth in this Article X.

10.3   **Special Remedies and Enforcement**.  The Reddy Companies recognize and agree that a breach by any of the Reddy Companies of any of the covenants set forth in this Article X could cause irreparable harm to the MWI Companies, that the remedies of the MWI Companies at law in the event of such breach would be inadequate, and that, accordingly, in the event of such breach a restraining order or injunction or both may be issued against the Reddy Companies, in addition to any other rights and remedies which are available to the MWI Companies.  If this Article X is more restrictive than permitted by the laws of any jurisdiction in which the MWI Companies seek enforcement hereof, this Article X will be limited to the extent required to permit enforcement under such laws.  In particular, the parties intend that the covenants contained in the preceding portions of this Article X will be construed as a series of separate covenants, one for each county and city specified.  Except for geographic coverage, each such separate covenant will be deemed identical in terms.  If, in any judicial proceeding, a court refuses to enforce any of the separate covenants deemed included in this Article X, then such unenforceable covenant will be deemed eliminated from these provisions for the purpose of those proceedings to the extent necessary to permit the remaining separate covenants to be enforced.

**ARTICLE XI**
**NONCOMPETITION BY THE MWI COMPANIES**

11.1   **Restrictions on Competitive Activities**.  The MWI Companies, Steven Gabriel, Alan Hines and John Nicholson (collectively, the "*MWI Parties*") each agrees that, after the Closing, the Reddy Companies will be entitled to the goodwill and going concern value of the MWI Business and to protect and preserve the same to the maximum extent permitted by all applicable law.  The MWI Parties each acknowledges that the customer goodwill the MWI Parties have built up in the Reddy Territory and the ability of the Reddy Companies and their Affiliates to expand their operations in the Reddy Territory comprises a substantial portion of the value of the MWI Assets and the MWI Business.  The MWI Parties further acknowledge that the Reddy Companies would not be purchasing the MWI Assets pursuant to the terms of this Agreement but for such goodwill and ability to expand.  Therefore, as an inducement for the Reddy Companies to purchase the MWI Assets pursuant to this Agreement, and as part of the consideration paid to the MWI Companies for such assets, the MWI Parties each agrees that, for a period of five years from the Closing Date, such MWI Party will not, directly or indirectly, either for itself or any other Person, without the express written consent of the Reddy Companies, which consent may be withheld in their sole discretion, (a) own, operate or be engaged in any way with a competing business of the MWI Business within the Reddy Territory, including, without limitation, the manufacture, sale or distribution of ice, (b) induce or attempt to induce any employee of the Reddy Companies to leave the employ of the Reddy Companies, (c) in any way interfere with the relationship between the Reddy Companies and any employee of the Reddy Companies, (d) employ or otherwise engage, or offer to employ or otherwise engage, any Person who is then (or

22

was at any time within one year before the time of such employment, engagement or offer thereof) an employee, sales representative or agent of any of the MWI Parties in connection with the MWI Business (or of the Reddy Companies, as successor to the MWI Business) in any part of the Reddy Territory, (e) induce or attempt to induce any customer, supplier, licensee or business relation of the Reddy Companies to cease its relationship with the Reddy Companies, (f) sell, lease, sublease, assign or license any of its owned or leased real property in the Reddy Territory to any Person for the purpose of manufacturing, selling or distributing ice in the Reddy Territory, and if the MWI Companies sell any of such owned real property they shall restrict such use through the recordation of a deed restriction in the real property records of the county in which such property is located, and (g) sell any of their ice manufacturing equipment within the Reddy Territory. The MWI Parties agree that the covenants contained in this Section 11.1 are reasonable with respect to their duration, geographical area, and scope.

   11.2   **Acknowledgements by the MWI Parties**.  The MWI Parties each understands, acknowledges and agrees that (a) the Reddy Companies have required that the MWI Parties make the covenants set forth in this Article XI as a condition to the purchase by the Reddy Companies of the MWI Assets pursuant to this Agreement, (b) the provisions of this Article XI are reasonable and do not impose a greater restraint on the MWI Parties than is necessary to protect the goodwill or other business interest of the Reddy Companies, (c) the provisions set forth in this Article XI are not oppressive to the MWI Parties, and (d) the Reddy Companies would be irreparably damaged if the MWI Parties were to breach the covenants set forth in this Article XI.

   11.3   **Special Remedies and Enforcement**.  The MWI Parties recognize and agree that a breach by the MWI Parties of any of the covenants set forth in this Article XI could cause irreparable harm to the Reddy Companies, that the remedies of the Reddy Companies at law in the event of such breach would be inadequate, and that, accordingly, in the event of such breach a restraining order or injunction or both may be issued against the MWI Parties, in addition to any other rights and remedies which are available to the Reddy Companies. If this Article XI is more restrictive than permitted by the laws of any jurisdiction in which the Reddy Companies seek enforcement hereof, this Article XI will be limited to the extent required to permit enforcement under such laws.  In particular, the parties intend that the covenants contained in the preceding portions of this Article XI will be construed as a series of separate covenants, one for each county and city specified.  Except for geographic coverage, each such separate covenant will be deemed identical in terms.  If, in any judicial proceeding, a court refuses to enforce any of the separate covenants deemed included in this Article XI, then such unenforceable covenant will be deemed eliminated from these provisions for the purpose of those proceedings to the extent necessary to permit the remaining separate covenants to be enforced.

## ARTICLE XII
## MANAGEMENT OF ICE FACTORIES

   12.1   **Appointment of Manager**.

   (a)   **Appointment**.  The Reddy Companies hereby appoint and engage the MWI Companies as the exclusive manager to supervise, direct and control the management of

23

062723 0168 SAN ANTONIO 235878 v5

NB1:540590.8

certain Ice Factories of the Reddy Companies in the Reno, Nevada market and the States of California and Hawaii, the locations of which are identified on **Schedule 12.1(a)** attached hereto and incorporated herein (the "*Managed Ice Factories*").

       (b)    **Term**. Except as otherwise provided herein, the provisions of this <u>Article XII</u> shall commence on the Closing Date and shall continue in effect for a period of seven years (the "*Initial Term*") and shall be automatically renewed for additional periods of one year each (each additional one year period a "*Renewal Period*"), unless either party gives notice to the other of its intention to terminate the provisions of this <u>Article XII</u> at least ninety days prior to the expiration of the Initial Term or any Renewal Period.

       (c)    **Nature of Relationship**. The MWI Companies are independent contractors of the Reddy Companies under the provisions of this <u>Article XII</u> and shall not have the right to assume or create any obligations of any kind, either express or implied, on behalf of the Reddy Companies, except as expressly provided for in this <u>Article XII</u>. Nothing in this <u>Article XII</u> shall be deemed to establish or otherwise create a relationship of principal and agent, employer and employee, or otherwise between the Reddy Companies and the MWI Companies.

**12.2**    <u>**Services of Manager**</u>.

       (a)    **General Supervision and Management**. The MWI Companies shall supervise, direct and control the ordinary and usual business and operations of the Managed Ice Factories on behalf of the Reddy Companies in accordance with the provisions of this <u>Article XII</u>, including, but not limited to, the following:

       (1)    operate, maintain and repair the Managed Ice Factories consistent with the past practices of the Reddy Companies, purchase plastic bags used in the Managed Ice Factories from the Reddy Companies (at cost plus freight) or from another supplier approved by the Reddy Companies, which approval may not be unreasonably withheld, and sell plastic bags to customers;

       (2)    comply in all material respects with the customer contracts listed on **Schedule 12.2(a)** hereto as such contracts relate to the Managed Ice Factories and as such contracts may be renegotiated, amended or revised from time to time (the "*Ice Factory Contracts*");

       (3)    use customary procedures to bill and collect all amounts owing under the Ice Factory Contracts consistent with the manner in which the MWI Companies bill and collect their own claims and accounts receivable; <u>provided, however</u>, that if a customer requests to be invoiced from the Reddy Companies, the MWI Companies and the Reddy Companies shall mutually agree upon and determine the process for such invoicing;

       (4)    keep all books of account, vouchers, statements, receipts, bills and invoices and all other records covering all billings, collections, disbursements and other

062723.0168 SAN ANTONIO 235878 v5

NB1:540590.8

data in connection with the operation of the Managed Ice Factories in accordance with Section 12.5(c);

(5)    retain and/or coordinate the services necessary or appropriate to operate the Managed Ice Factories.

(b)    **Personnel.** The MWI Companies will extend an offer of employment to all current employees of the Reddy Companies who are utilized in the operation and maintenance of the Managed Ice Factories. The Reddy Companies will not take any action, directly or indirectly, to prevent or discourage any such employee from being employed by the MWI Companies. Any liabilities or obligations to any of the Reddy Companies' employees resulting from (i) such employee's employment with the Reddy Companies, including, but not limited to, the offer of health coverage under the Consolidated Omnibus Budget Reconciliation Act, or (ii) the Reddy Companies' termination of such employee's employment with the Reddy Companies will be, and will remain, the sole responsibility of the Reddy Companies. The Reddy Companies acknowledge that following each such employee's acceptance of employment with the MWI Companies, such employee will be employed by the MWI Companies in accordance with the MWI Companies' internal policies and procedures relating to employment.

(c)    **Removal of Managed Ice Factories.** The MWI Companies shall have the right to remove Managed Ice Factories not under contract with a customer and replace them with traditional merchandisers.

(d)    **Operating Expenses.** All operating costs and expenses (other than costs and expenses relating to Taxes, other than Taxes derived from earnings or income, and required permits) incurred in connection with the management and operation of the Managed Ice Factories pursuant to this Article XII shall be paid by the MWI Companies.

**12.3    Reddy's Duties.**

(a)    **Lease Payments.** During the Initial Term and any Renewal Period, the Reddy Companies shall be responsible for owning the Ice Factories and paying all lease payments of leased Ice Factories.

(b)    **Operating Permits and Licenses.** The Reddy Companies will use all commercially reasonable efforts to obtain and maintain all licenses and permits necessary and appropriate to maintain, operate and service the Ice Factories. All costs relating to such licenses and permits shall be paid by the Reddy Companies. The MWI Companies will furnish to the Reddy Companies upon request any information required to prepare such licenses and permits. However, if for any reason, any MWI Company pays or is found liable for the payment of such permits or licenses, the Reddy Companies shall reimburse such MWI Company within thirty days.

(c)    **Taxes.** All Taxes relating to the Managed Ice Factories (other than Taxes derived from the earnings or income of the Managed Ice Factories) shall be paid by the Reddy

25

Companies and all Tax Returns required to be prepared or filed with respect to such Taxes shall be prepared by the Reddy Companies.  The MWI Companies will furnish the Reddy Companies upon request any information required to prepare Tax Returns with respect to such Taxes. However, if for any reason any MWI Company pays or is found to be liable for the payment of such Taxes, the Reddy Companies shall reimburse such MWI Company within thirty days.

      (d)    **Technical Information**.  The Reddy Companies will provide and deliver to the MWI Companies all service manuals, handbooks, guidelines, past maintenance and operating logs and records or other instructions relating to the Managed Ice Factories and all service and technical advisory bulletins or updates to such manuals, handbooks or guidelines promptly after publication.

      (e)    **Negotiation of Ice Factory Contracts**.  During the Initial Term and any Renewal Period, the Reddy Companies and the MWI Companies shall jointly be responsible for negotiating any additional terms and any renewal terms under the Ice Factory Contracts.

      (f)    **Additional Ice Factories**.  During the Initial Term, if any Ice Factory Contract requires the Reddy Companies to install additional Ice Factories (the "*Additional Ice Factories*") at a customer's stores or if there is any amendment, modification or change in the terms of any Ice Factory Contract pursuant to Section 12.3(e) above that requires the installation of Additional Ice Factories, and a customer having such right requires the installation of Additional Ice Factories, the Reddy Companies shall provide, at its expense, the Additional Ice Factories and provide installation of the Additional Ice Factories, as required, in accordance with applicable instructions, manuals, local, state and federal laws or other guidelines and information relating to the installation of Ice Factories.  The Reddy Companies agree to notify the MWI Companies promptly following the installation of any Additional Ice Factories.  Immediately following the installation of such Additional Ice Factories, such Additional Ice Factories shall be deemed Managed Ice Factories and, except as otherwise provided herein, the rights and obligations of the MWI Companies and the Reddy Companies with respect to such Additional Ice Factories shall be identical to the rights and obligations of the Reddy Companies and the MWI Companies with respect to Managed Ice Factories.

      (g)    **Relocation of Ice Factories**.  If a customer requires that an Ice Factory be relocated within its store, the Reddy Companies will be responsible for paying the reasonable out of pocket costs of relocating the Ice Factory and will assist such customer with the relocation of such Ice Factory.

   **12.4**    **Consulting Services**.

      (a)    **General**.  The Reddy Companies agree to consult with the MWI Companies concerning the ordinary and usual business and operations of the Managed Ice Factories as reasonably requested by the MWI Companies and agrees to provide a remote access link to the Reddy Companies' national service center for purposes of providing data and other information regarding the operation and performance of the Managed Ice Factory machines.

26

(b)    **Status of Consultant.**  The Reddy Companies are independent contractors of the MWI Companies, and this Section 12.4 shall not be deemed to create any employment relationship. The Reddy Companies will not participate in any employee benefit plans administered by the MWI Companies nor receive any other fees beyond that stated herein. The parties are and shall be independent of one another, and this Section 12.4(b) does not create an agency, partnership or joint venture between the parties, and neither party has the authority to bind the other to any third party.

12.5    **Fiscal Arrangements.**

(a)    **Initial Term Payments.**

(1)    **Reddy Companies' Monthly Payment Amount.**  Within twenty days following the end of each month during the Initial Term, the MWI Companies shall deliver to the Reddy Companies an amount equal to $250,000, plus or minus one-half of the aggregate amount of all increases or decreases in Ice Factory Gross Revenues that result from price increases or decreases under the Ice Factory Contracts during the Initial Term and any Renewal Period (the "*Reddy Monthly Payment Amount*"); provided, however, that the Reddy Monthly Payment Amount may decrease below $250,000 only as a result of price decreases, if any, under the Ice Factory Contracts. During the Initial Term and any Renewal Period, all revenues generated from the management and operation of the Managed Ice Factories in excess of the Reddy Monthly Payment Amount shall be retained by the MWI Companies as its management fee.

(2)    **Additional Ice Factories under Ice Factory Contracts.**  For each Additional Ice Factory installed by the Reddy Companies under Section 12.3(f), the MWI Companies shall pay an additional amount equal to the total number of Ice Factories listed on Schedule 12.1(a), divided by the Reddy Monthly Payment Amount at the time the Additional Ice Factory is installed, multiplied by .75 during the remaining term of each Ice Factory Contract, which shall be due and payable at the same time as the Reddy Monthly Payment.

(3)    **Removal of Managed Ice Factories.**  If an Ice Factory is removed and the customer replaces its packaged ice procurement with traditionally manufactured ice purchased from or through any of the MWI Companies or their Affiliates, the Reddy Monthly Payment Amount will not be affected. If an Ice Factory is removed and the customer replaces its packaged ice procurement with an unrelated third party or if the customer manufactures its own packaged ice, the MWI Companies and the Reddy Companies agree that the Reddy Monthly Payment Amount shall be appropriately and equitably adjusted in a manner to be mutually and reasonably agreed upon by the MWI Companies and the Reddy Companies.

(b)    **Inventory Adjustment.**  Within fifteen days after the Closing, the parties shall determine the number of bags which have been sold but not yet used by customers of the Managed Ice Factories as of the Closing, and to the extent that there is more than one case of

27

unused bags located at a store (excluding bags already loaded in the Managed Ice Factories), the MWI Companies will be entitled to a credit against the Reddy Monthly Payment Amount equal to the sales price of the bags in excess of one case less the actual cost of the bags. Upon the termination of the MWI Companies as manager of the Managed Ice Factories pursuant to Section 12.1(b) or Section 12.6 hereof, the parties shall determine the number of bags which have been sold but not yet used by Ice Factory customers as of the termination date, and to the extent that there is more than one case of unused bags located at a store (excluding bags already loaded in the Managed Ice Factories), the MWI Companies will pay the Reddy Companies an amount equal to the sale price of the bags in excess of one case less the actual cost of the bags.

      (c)     **Recordkeeping and Reporting.**

          (1)     **Recordkeeping.**  The MWI Companies shall keep and maintain a comprehensive system of accounting and records relating to the business and operations of the Managed Ice Factories.

          (2)     **Sales Reports.**  Within twenty days following the end of each calendar quarter during the Initial Term and any Renewal Period, the MWI Companies shall provide the Reddy Companies with one or more sales reports in such form as may reasonably be requested by the Reddy Companies to deliver to customers of the Reddy Companies, which shall detail the amount of revenues received by the MWI Companies in connection with the business and operations of the Managed Ice Factories during such month, less (i) any federal, state, municipal or other retail sales, value added, retailer's excise taxes or other direct taxes imposed upon receipts collected from customers in connection with operation of the Managed Ice Factories and (ii) adjustments for net returns on salable goods and discounts allowed to customers on sales (the *"Ice Factory Gross Revenues"*).

**12.6**    **Termination of Management.**

      (a)     **Events of Termination.**  Notwithstanding the provisions of Article XIV hereof, the provisions of this Article XII may be terminated for any of the following reasons:

          (1)     By either party hereto, in the event (i) a petition or other pleading, voluntary or involuntary, is filed by or against the other party seeking reorganization, composition, arrangement or other relief from creditors is filed under any bankruptcy or insolvency law (provided that any such involuntary petition is not vacated within sixty days), (ii) the other party shall dissolve, make an assignment for the benefit of creditors, or shall fail to pay its debts in the ordinary course of business (if such failure reasonably appears to impair the operating integrity of such other party, or (iii) a receiver, trustee or liquidator for any significant portion of the other party's assets is appointed, voluntarily or involuntarily.

          (2)     By the MWI Companies, in the event of a material breach, default or noncompliance by the Reddy Companies with any covenant or agreement contained in

062723.0168 SAN ANTONIO 235878 v5

NB1:540590.8

this Article XII, followed by written notice from the MWI Companies to the Reddy Companies and failure of the Reddy Companies either to remedy or correct such material breach, default or non-compliance within thirty days after receipt of such notice, or such longer period of time as may be reasonably required to cure such material breach, default or non-compliance.

(3)     By the Reddy Companies, in the event of a material breach, default or noncompliance by the MWI Companies with any covenant or agreement contained in this Article XII, followed by written notice from the Reddy Companies to the MWI Companies and failure of the MWI Companies either to remedy or correct such material breach, default or non-compliance within thirty days after receipt of such notice, or such longer period of time as may be reasonably required to cure such material breach, default or non-compliance; provided, however, that unavailability of funds shall not be cause for extension of such thirty-day period.

(4)     By either party hereto if such party has received the prior written consent of the other party hereto.

(b)     **Effect of Termination.**   In the event of a termination of the provisions pursuant to this Section 12.6, all rights and obligations of the parties under this Article XII shall cease except:

(1)     The MWI Companies shall be entitled to payment or reimbursement in accordance with Section 12.5 for all amounts accrued and unpaid as of the termination date, if and to the extent such amounts are otherwise due and payable under Section 12.5 hereof;

(2)     The Reddy Companies shall be entitled to payment in accordance with Section 12.5 for all amounts accrued and unpaid as of the termination date, if and to the extent such amounts are otherwise due and payable under Section 12.5 hereof; and

(3)     The MWI Companies and the Reddy Companies shall be relieved of any further rights, obligations, duties or responsibilities hereunder with respect to the business and operations of the Managed Ice Factories; provided, however, that the rights, obligations, duties and responsibilities set forth in Section 12.3(c), Section 12.5 (relating to the payment of fees and the reimbursement of expenses), this Section 12.6 or Article XIII below shall survive the termination of the engagement of the MWI Companies pursuant to this Section 12.6.

062723.0168 SAN ANTONIO 235878 v5

NB1:540590.8

**12.7    Insurance**.

(a)    **Required Insurance of the MWI Companies.**  During the Initial Term and any Renewal Period, the MWI Companies shall obtain and maintain in full force and effect the following insurance:

(1)    Automobile liability and commercial general liability, including product liability and excess liability, all with such limits as are reasonably necessary to protect the Reddy Companies and the MWI Companies against loss or liability for damages for personal injury, death or property damage arising out of or in connection with the management and operation of the Managed Ice Factories; and

(2)    Such workmen's compensation and other similar insurance as may be required by law to manage and operate the Managed Ice Factories.

(b)    **Required Insurance of the Reddy Companies**.  During the Initial Term and any Renewal Period, the Reddy Companies shall obtain and maintain in full force and effect the following insurance:

(1)    Automobile liability and commercial general liability, including product liability and excess liability, all with such limits as are reasonably necessary to protect the Reddy Companies and the MWI Companies against loss or liability for damages for personal injury, death or property damage arising out of or in connection with the ownership, installation or removal of the Managed Ice Factories.

(c)    **Risk of Loss to Managed Ice Factories.**  The Reddy Companies shall carry the risk of loss associated with losses due to the destruction or damage to any Managed Ice Factory resulting from fire, theft, vandalism, or other perils typically insured under extended coverage insurance policies and is not the result of the willful misconduct or gross negligence of any MWI Company; provided, however, that the Reddy Companies shall not be liable to the MWI Companies for lost profits or lost revenues suffered by the MWI Companies as a result of such destruction or damage.

## ARTICLE XIII
## INDEMNIFICATION

**13.1    Indemnification of the MWI Companies by the Reddy Companies**.  The Reddy Companies, jointly and severally, agree to indemnify, defend and hold harmless the MWI Companies, their parent company, if any, any subsidiaries of the MWI Companies, and any employees, agents, heirs, legal representatives, and assigns of the MWI Companies from and against any and all claims, suits, losses, expenses (legal, accounting, investigation and otherwise), damages and liabilities (including, without limitation, tax liabilities) (collectively, "**Losses**"), arising out of or relating to (a) any liability or obligation of the Reddy Companies not expressly assumed by the MWI Companies pursuant to Section 2.1(d), (b) any liability, claim or obligation of the Reddy Companies in respect of the conduct of, or conditions existing with

30

respect to, the Reddy Business or the Reddy Assets arising prior to the Closing that are asserted prior to, on or after the Closing, (c) any material inaccuracy of any representation or warranty set forth in this Agreement or the breach or non-performance of any covenant or agreement made by the Reddy Companies in or pursuant to this Agreement, (d) any other matter as to which the Reddy Companies in other provisions of this Agreement have agreed to indemnify the MWI Companies, (e) any failure to have obtained all permits, consents or approvals required in connection with the execution and delivery of this Agreement by the Reddy Companies, the sale and transfer of the Reddy Assets and the Reddy Business as contemplated hereby, the operation of the Reddy Business prior to the Closing or the operation of the Managed Ice Factories pursuant to Article XII during the Initial Term or any Renewal Period, (f) any third party claims in respect of the MWI Customer Contracts that arise and are asserted following the Closing Date, (g) any liability, claim or obligation of the Reddy Companies in respect of the conduct of, or conditions existing with respect to, the MWI Business or the MWI Assets that arise and are asserted following the Closing Date, and (h) any liability, claim or obligation of the Reddy Companies in respect of the ownership of the Ice Factories, including, but not limited to, the damage or destruction of the Ice Factories, that arise and are asserted prior to, on or after the Closing to the extent that such liability, claim or obligation does not result from the gross negligence or willful misconduct of the MWI Companies.

13.2    **Indemnification of the Reddy Companies by the MWI Companies.**  The MWI Companies, jointly and severally, agree to indemnify, defend and hold harmless the Reddy Companies, their parent company, if any, any subsidiaries of the Reddy Companies, and the employees, agents, heirs, legal representatives, and assigns of the Reddy Companies, from and against any and all Losses arising out of or relating to (a) any liability or obligation of the MWI Companies not expressly assumed by the Reddy Companies pursuant to Section 2.2(d), (b) any liability, claim or obligation of the MWI Companies in respect of the conduct of, or conditions existing with respect to, the MWI Business or the MWI Assets arising prior to the Closing that are asserted prior to, on or after the Closing, (c) any material inaccuracy of any representation or warranty set forth in this Agreement or the breach or non-performance of any covenant or agreement made by the MWI Companies in or pursuant to this Agreement, (d) any other matter as to which the MWI Companies in other provisions of this Agreement have agreed to indemnify the Reddy Companies, (e) any failure to have obtained all permits, consents or approvals required in connection with the execution and delivery of this Agreement by the MWI Companies, the sale and transfer of the MWI Assets and the MWI Business as contemplated hereby or the operation of the MWI Business prior to the Closing, (f) any third party claims in respect of the Reddy Customer Contracts that arise and are asserted following the Closing Date, (g) any liability, claim or obligation of the MWI Companies in respect of the conduct of, or conditions existing with respect to, the Reddy Business or the Reddy Assets that arise and are asserted following the Closing Date, and (h) any liability, claim or obligation of the MWI Companies in respect of the operation or management of the Managed Ice Factories that arise and are asserted following the Closing Date to the extent that such liability, claim or obligation does not result from the gross negligence or willful misconduct of the Reddy Companies.

13.3    **Procedure.**

31

(a)  **Notice.** In the event any Person or entity not a party to this Agreement shall make a demand or claim or file or threaten to file or continue any lawsuit, which demand, claim or lawsuit may result in liability to an Indemnified Party in respect of matters embraced by the indemnity under this Agreement (a "*Third Party Claim*"), or in the event that a potential Loss comes to the attention of any party in respect of matters embraced by the indemnity under this Agreement, then the party receiving notice or becoming aware of such event shall promptly deliver notice (the "*Loss Notice*") to the other party or parties concerning such event. Such Loss Notice shall state (i) the circumstances giving rise to such event and (ii) a reasonable estimation of the Losses incurred by the Indemnified Party.  Failure to provide the Loss Notice shall not limit the rights of such party to indemnification, except to the extent that such Indemnified Party's failure has prejudiced the Indemnifying Party's rights or increased its liabilities and obligations hereunder.

(b)  **Defense.** Within fifteen days after delivery of a Loss Notice with respect to a Third Party Claim, the Indemnifying Party shall have the option, at its sole cost and expense, to retain counsel for the Indemnified Party to defend any such demand, claim or lawsuit, provided that counsel who will conduct the defense of such demand, claim or lawsuit will be approved by the Indemnified Party whose approval will not unreasonably be withheld, delayed, or conditioned.  The Indemnified Party shall have the right, at its own expense, to participate in the defense of any suit, action or proceeding brought against it with respect to which indemnification may be sought hereunder; provided, however, if (i) the named parties to any such proceeding (including any impleaded parties) include both the Indemnifying Party and the Indemnified Party and representation of both parties by the same counsel would be inappropriate due to actual or potential conflicts of interest between them, (ii) the employment of counsel by such Indemnified Party has been authorized in writing by the Indemnifying Party, or (iii) the Indemnifying Party has not in fact employed counsel to assume the defense of such action within a reasonable time; then, the Indemnified Party shall have the right to retain its own counsel at the sole reasonable cost and expense of the Indemnifying Party, which reasonable costs and expenses shall be paid by the Indemnifying Party on a current basis.  If any Indemnified Party is advised by counsel chosen by it that there may be one or more legal defenses available to such Indemnified Party which are different from or in addition to those which have been asserted by the Indemnifying Party, at the election of the Indemnified Party, the Indemnifying Party will not have the right to continue the defense of such demand, claim or lawsuit on behalf of such Indemnified Party and will reimburse such Indemnified Party and any Person controlling such Indemnified Party on a current basis for the reasonable fees and expenses of any counsel retained by the Indemnified Party to undertake the defense.  In the event that the Indemnifying Party shall fail to respond within fifteen days after receipt of the Loss Notice, the Indemnified Party may retain counsel and conduct the defense of such Third Party Claim, as it may in its sole discretion deem proper, at the sole reasonable cost and expense of the Indemnifying Party, which reasonable costs and expenses shall be paid by the Indemnifying Party on a current basis.

(c)  **Objections to Loss Notice.** In case the Indemnifying Party shall object to the indemnification of an Indemnified Party in respect of any claim or claims specified in any Loss Notice, the Indemnifying Party shall, within thirty days after the receipt by the

32

Indemnifying Party of such Loss Notice, deliver to the Indemnified Party a written notice to such effect. The Indemnifying Party and the Indemnified Party shall, within the thirty-day period beginning on the date of receipt by the Indemnified Party of such written objection, attempt in good faith to agree upon the rights of the respective parties with respect to each of such claims to which the Indemnifying Party shall have so objected. If the Indemnified Party and the Indemnifying Party succeed in reaching agreement on their respective rights with respect to any such claims, the Indemnified Party and the Indemnifying Party shall promptly prepare and sign a memorandum setting forth such agreement. Should the Indemnified Party and the Indemnifying Party be unable to agree as to any particular item or items or amount or amounts, then the Indemnified Party and the Indemnifying Party shall immediately submit such dispute to a court of competent jurisdiction.

> (d)     **Settlement**. Except as provided in Section 13.3(b), (i) the Indemnified Party shall make no settlement of any claim that would give rise to liability on the part of the Indemnifying Party under an indemnity contained in this Article XIII without the written consent of the Indemnifying Party, which consent shall not be unreasonably withheld and (ii) the Indemnifying Party can settle without the consent of the Indemnified Party only if the settlement involves only the payment of money for which the Indemnifying Party will be fully liable. No other settlement of any claim may be made without the consent of both the Indemnified Party and the Indemnifying Party, which consent shall not be unreasonably withheld.

**13.4     Not Exclusive Remedy**. This Article XIII shall not be deemed to preclude or otherwise limit in any way exercise of other rights or the pursuit of other remedies specified in this Agreement by any other party hereto.

**13.5     Deductible**. No Indemnifying Party shall have any obligation to indemnify any Indemnified Party unless and until the aggregate amount of Losses for which the Indemnified Party is otherwise entitled to indemnification pursuant to this Article XIII exceeds $100,000 and thereafter such Indemnified Party shall be entitled to indemnification for the entire amount of such Losses.

**13.6     Survival**. This Article XIII shall survive the Closing and remain in effect indefinitely. Notwithstanding the immediately preceding sentence, the representations or warranties contained in or made pursuant to this Agreement shall expire on the date that is three years after the Closing, except that (a) the representations and warranties stated in Section 3.1, Section 3.2, Section 3.6, Section 4.1, Section 4.2 and Section 4.6 shall survive the Closing and remain in full force and effect indefinitely, and (b) if a claim has been asserted by notice to the other party with respect to any representation or warranty prior to expiration of such representation or warranty under this Section 13.6, such representation or warranty shall continue indefinitely until such claim is finally resolved in accordance with this Article XIII.

**ARTICLE XIV**
**TERMINATION**

062723.0168 SAN ANTONIO 235878 v5

NBI:540590.8

**14.1**   <u>Termination Prior to the Closing Date</u>.  This Agreement and the transactions contemplated hereby may be terminated at any time prior to the Closing Date by any of the following:

(a)   By mutual written consent of the Reddy Companies and the MWI Companies;

(b)   By the Reddy Companies or the MWI Companies, if there has been a material misrepresentation or a material breach of a warranty or covenant herein or in any agreement required to be delivered pursuant hereto on the part of the other party hereto;

(c)   By the MWI Companies, if all of the conditions set forth in <u>Section 9.1</u> have not been satisfied or waived as provided in <u>Section 9.1</u> on or before the close of business on January 31, 2002 unless extended by mutual consent in writing by the MWI Companies and the Reddy Companies;

(d)   By the Reddy Companies if all of the conditions set forth in <u>Section 9.2</u> have not been satisfied or waived as provided in <u>Section 9.2</u> on or before the close of business on January 31, 2002 unless extended by mutual consent in writing by the MWI Companies and the Reddy Companies;

(e)   By the Reddy Companies or the MWI Companies, if consummation of the transactions contemplated hereby shall violate any nonappealable final order, decree or judgment of any court or governmental body having competent jurisdiction;

(f)   By the MWI Companies, if any event has occurred after the date hereof which is, or will result in a material adverse change in the condition (financial or otherwise), prospects or results of operations of the Reddy Business or the character or condition of the Reddy Assets; and

(g)   By the Reddy Companies, if any event has occurred after the date hereof which is, or will result in a material adverse change in the condition (financial or otherwise), prospects or results of operations of the MWI Business or the character or condition of the MWI Assets.

**14.2**   <u>Effect of Termination</u>.  If this Agreement is terminated pursuant to <u>Section 14.1</u>, all further obligations of the Reddy Companies and the MWI Companies under this Agreement shall terminate without further liability to the Reddy Companies or the MWI Companies; <u>provided</u>, <u>however</u>, that the obligations of the parties contained in <u>Section 7.5</u>, <u>Article XII</u> and <u>Article XIII</u> shall survive any such termination, and provided further that a termination under <u>Section 14.1</u> shall not relieve any party of any liability for a breach of, or for any misrepresentation under this Agreement, or be deemed to constitute a waiver of any available remedy for any such breach or misrepresentation.

34

If the Reddy Companies fail to consummate the transactions contemplated on their respective parts to occur on the scheduled Closing Date, in circumstances whereby all conditions of the Closing set forth in Section 9.2 have been satisfied in all material respects or waived, the sole remedy of the MWI Companies shall be to (i) to require the Reddy Companies to consummate and specifically perform the transactions contemplated hereby, in accordance with the terms of this Agreement, and to obtain from the Reddy Companies any attorney fees incurred in connection with procuring such specific performance or (ii) terminate this Agreement pursuant to Article XIV and obtain reimbursement of its out-of-pocket expenses incurred directly in connection with the negotiation, preparation and performance of this Agreement.

If the MWI Companies fail to consummate the transactions contemplated under this Agreement to occur on or by the Closing Date, in circumstances whereby all conditions of the Closing set forth in Section 9.1 have been satisfied in all respects or waived, the sole remedy of the Reddy Companies shall be to (i) require the MWI Companies to consummate and specifically perform the transactions contemplated hereby, in accordance with the terms of this Agreement, and to obtain from the MWI Companies any attorney fees incurred in connection with procuring such specific performance or (ii) terminate this Agreement pursuant to Article XIV and obtain reimbursement of its out-of-pocket expenses incurred directly in connection with the negotiation, preparation and performance of this Agreement.

14.3   **Right to Proceed**.  Notwithstanding anything in this Agreement to the contrary, if any condition specified in Sections 9.1 or 9.2 has not been satisfied, the Reddy Companies or the MWI Companies, as the case may be, in addition to any other rights which may be available to such party, shall have the right to waive any such condition that is for its benefit and to require the other party hereto to proceed with the Closing.

## ARTICLE XV
## MISCELLANEOUS

15.1   **Expenses**.  Legal, accounting and other costs and expenses incurred in connection with this transaction shall be paid by the party incurring such expenses.  Each party shall be responsible for all sales or use tax imposed on such party as a result of the sale and transfer by such party of the Reddy Assets or the MWI Assets, as the case may be, as contemplated hereby.

15.2   **Inurement; Assignment.**  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, legal representatives and, if properly assigned, assigns. This Agreement may not be assigned by any party without the written consent of the other parties hereto, except that such party may assign this Agreement to any Person that either owns or purchases all of the outstanding capital stock of such party or purchases substantially all of the assets of such party or to any subsidiary of such party.

15.3   **Entire Agreement; Amendment.**  This Agreement, the Schedules and Exhibits hereto, and the related agreements referred to herein embody the entire agreement of the parties

35

hereto, and supersede all prior agreements and understandings, with respect to the subject matter hereof. This Agreement and any Schedule or Exhibit may be amended only by agreement in writing of the parties. No waiver of any provision nor consent to any exception to the terms of this Agreement or any agreement contemplated hereby shall be effective unless in writing and signed by the party or parties to be bound and then only to the specific purpose, extent and instance so provided.

15.4    **Severability**. Any provision of this Agreement which is invalid, unenforceable or illegal in any jurisdiction shall, as to such jurisdiction, be ineffective only to the extent of such invalidity, unenforceability or illegality without affecting the remaining provisions hereof and without affecting the validity, enforceability or legality of such provision in any other jurisdiction.

15.5    **Incorporation of Exhibits and Schedules**. All Exhibits and Schedules referenced in this Agreement, and any statements contained therein or in any certificate or instrument delivered pursuant hereto, constitute an integral part of this Agreement and shall be deemed made in this Agreement as if set forth in full herein.

15.6    **Captions and Headings**. Captions and headings used herein are for convenience only, do not constitute a part of this Agreement, and shall not be considered in construing this Agreement. Unless the context otherwise requires, all article, section or subsection cross-references are to articles, sections and subsections within this Agreement.

15.7    **Governing Law; Venue**. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA WITHOUT REFERENCE TO CONFLICT OF LAW PROVISIONS.

15.8    **Notice**. All notices, consents, waivers and other communications under this Agreement must be in writing and will be deemed to have been duly given when: (a) delivered by hand (with written confirmation of receipt), (b) sent by facsimile (with written confirmation of receipt), provided that a copy is mailed by registered mail, return receipt requested, or (c) when received by the addressee, if sent by a nationally recognized overnight delivery service (receipt requested), in each case to the appropriate addresses and facsimile numbers set forth below (or to such other addresses and facsimile numbers as a party may designate by notice to other parties):

to the Reddy Companies:        Reddy Ice Corporation
                               3535 Travis Street, Suite 170
                               Dallas, Texas  75204
                               Attn: President

with a copy to:                Akin, Gump, Strauss, Hauer & Feld, L.L.P.

36

300 Convent St., Suite 1500
San Antonio, Texas 78205
Attn:  Alan Schoenbaum, Esq.
Fax: (210) 224-2935

To the MWI Companies:        Mountain Water Ice Company
17011 South Central Avenue
Carson, California 90746
Attn:  Steven C. Gabriel, President

with a copy to:        O'Melveny & Myers, LLP
610 Newport Center Drive, 17th Floor
Newport Beach, California  92660
Attn:  Gary Singer, Esq.
Fax: (949) 823-6994

or such other address or addresses as may be expressly designated by either party by notice given in accordance with the foregoing provision.

**15.9    Agents or Brokers.**  The Reddy Companies and the MWI Companies mutually represent and agree with each other that no agents or brokers have been utilized in the solicitation or negotiation of the sale of the Reddy Business and no fees, commissions or expenses of any type shall be due or payable out of the proceeds of the purchase price by either party to this Agreement.

**15.10   Time is of the Essence.**  Time is of the essence of this Agreement, and all time limitations shall be strictly construed and rigidly enforced. The failure or delay in the enforcement of any rights or interests granted herein shall not constitute a waiver of any such right or interest or be considered as a basis for estoppel.

**15.11   Force Majeure.**  Delay and/or failure to perform by the Reddy Companies or the MWI Companies shall be excused, and shall not constitute a breach or cause for termination of this Agreement, to the extent that (a) such delay and/or failure to perform is caused by any condition beyond such party's control, including, but not limited to, fires, floods, earthquakes, snow, tornadoes, disasters, other acts of God, accidents, riots, wars, operation of law, shortages of labor, fuel, power, materials, supplies or transportation, supplier delay, strikes or governmental actions or regulations, and (b) such delay or failure could not have been prevented by reasonable precautions by that party. Delays or failures that are excused as provided in this Section 15.11 shall result in automatic extensions of dates for performance for a period of time equal to the duration of the events excusing such delay or failure.  No such excused delay or failure shall constitute a default hereof, or, except to the extent a related performance obligation is incomplete or unperformed, be a basis for disputing or withholding amounts payable hereunder, provided that the party whose performance is delayed or suspended shall use all

37

efforts that are reasonable under the circumstances to resume performance of its obligations hereunder as soon as feasible.

      **15.12   Counterparts.**   This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same instrument.

      **15.13   Ambiguities.**   The language in this Agreement shall be construed in all cases in according to its fair meaning.  The parties acknowledge that each party and its counsel have reviewed this Agreement and that any rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

      **15.14   Parties in Interest.**   This Agreement will be binding upon and inure to the benefit of each party, and nothing in this Agreement, express or implied, is intended to confer upon any other Person any rights or remedies of any nature whatsoever under or by reason of this Agreement.  Nothing in this Agreement is intended to relieve or discharge the obligation of any third person to any party to this Agreement.

**[ASSET PURCHASE AGREEMENT SIGNATURE PAGE FOLLOWS]**

062723.0168  SAN ANTONIO  235878 v5

NB1:540590.8

**[SIGNATURE PAGE TO THE ASSET PURCHASE AGREEMENT]**

**THE REDDY COMPANIES:**

**REDDY ICE CORPORATION**

By: _William P. B_____

Print Name: _____William P. Brick_____

Print Title: _____Chief Executive Officer___

**PACKAGED ICE, INC.**

By: _William P. B_____

Print Name: _____William P. Brick_____

Print Title: _____Chief Executive Officer___

**THE MWI COMPANIES:**

**MOUNTAIN WATER ICE COMPANY**

By: _____

Print Name: _____

Print Title: _____

**DESERT MOUNTAIN ICE, LLC**

By: _____

Print Name: _____

Print Title: _____

**GLACIER VALLEY ICE COMPANY, L.P.**

By: _____

Print Name: _____

Print Title: _____

11/16/01                                                    2:07 PM

## [SIGNATURE PAGE TO THE ASSET PURCHASE AGREEMENT]

**THE REDDY COMPANIES:**

**REDDY ICE CORPORATION**

By: _____
Print Name: _____
Print Title: _____

**PACKAGED ICE, INC.**

By: _____
Print Name: _____
Print Title: _____

**THE MWI COMPANIES:**

**MOUNTAIN WATER ICE COMPANY**

By: _____
Print Name:   Steven C. Gabriel
Print Title:    PRESIDENT

**DESERT MOUNTAIN ICE, LLC**

By: _____
Print Name:   Steven C. Gabriel
Print Title:    MANAGER

**GLACIER VALLEY ICE COMPANY, L.P.**

By: _____
Print Name:   J. Alan Hines
Print Title:    PRESIDNET, GVIC, Inc. its
                       General Partner

11/16/01                              2:07 PM

## [SIGNATURE PAGE TO THE ASSET PURCHASE AGREEMENT]

**THE REDDY COMPANIES:**

**REDDY ICE CORPORATION**

By: _____
Print Name: _____
Print Title: _____

**PACKAGED ICE, INC.**

By: _____
Print Name: _____
Print Title: _____

**THE MWI COMPANIES:**

**MOUNTAIN WATER ICE COMPANY**

By: _____
Print Name:   Steven C. Gabriel
Print Title:   PRESIDENT

**DESERT MOUNTAIN ICE, LLC**

By: _____
Print Name:   Steven C. Gabriel
Print Title:   MANAGER

**GLACIER VALLEY ICE COMPANY, L.P.**

By: _____
Print Name:   J. Alan Hines
Print Title:   PRESIDNET, GVIC, Inc. its
General Partner

11/16/01                                   3:17 PM

**SOUTH BAY GLACIER, LLC**

By: _____

Print Name:    John T. Nicholson
Print Title:    MANAGER

**FOR PURPOSES OF <u>ARTICLE XI</u> ONLY:**

_____
Steven C. Gabriel

_____
Alan Hines

_____
John Nicholson

S-2

NOV-16-01 05:16 PM CRYSTAL ICE COMPANY 323 5049 P.02
Glacier & Carson Energy 003

11/16/01                                                                 2:10 PM

**SOUTH BAY GLACIER, LLC**

By: _____
Print Name:   John T. Nicholson
Print Title:     MANAGER

**FOR PURPOSES OF ARTICLE XI ONLY:**

_____
Steven C. Gabriel

_____
J. Alan Hines

_____
John T. Nicholson

062723 0:63 SAN ANTONIO 355575 v2

NB1:540590.3

11/16/01                                    2:10 PM

**SOUTH BAY GLACIER, LLC**

By: _____
    Print Name:   John T. Nicholson
    Print Title:   MANAGER

**FOR PURPOSES OF <u>ARTICLE XI</u> ONLY:**

_____
Steven C. Gabriel

_____
J. Alan Hines

_____
John T. Nicholson

S-2