**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| JOHN CHAMBERLAIN, Individually and On Behalf of All Others Similarly Situated, ) ) ) ) | |
| Plaintiff, ) ) | **CIVIL ACTION NO. 08-13451 (PDB)** |
| v. ) ) | **CLASS ACTION** |
| REDDY ICE HOLDINGS, INC., WILLIAM P. BRICK, STEVEN J. JANUSEK, JIMMY C. WEAVER, and RAYMOND D. BOOTH, ) ) ) ) | |
| Defendants. ) ) | <u>**JURY TRIAL DEMANDED**</u> |

**LEAD PLAINTIFFS' BRIEF IN OPPOSITION TO THE MOTION TO DISMISS
THE CONSOLIDATED CLASS ACTION COMPLAINT FILED BY
DEFENDANT RAYMOND BOOTH**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    STATEMENT OF FACTS.................................................................................. 1

II.    ARGUMENT AND AUTHORITIES ............................................................... 4

   A.    Plaintiffs Allege A Plausible Scheme Of Knowing And Reckless Conduct From Which The Court Can Infer A Strong Inference Of Scienter For Booth ..................................... 4

   B.    Plaintiffs May Rely on  the Group Pleading Doctrine to Adequately Allege Booth's Liability ............................................................................................ 7

   C.    Booth is Liable As A Control Person ........................................................ 8

III.    CONCLUSION................................................................................................ 8

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*In re Aetna Inc. Sec. Litig.,*
    34 F. Supp. 2d 935 (E.D. Pa. 1999) .................................................................. 5

*In re Cardinal Health Inc. Sec. Litig.,*
    426 F. Supp. 2d 688 (S.D. Ohio 2006) ....................................................... 4, 5, 7

*Fidel v. AK Steel Holding Corp.,*
    2002 U.S. Dist. LEXIS 18887 (S.D. Ohio Sept. 19, 2002) .................................. 6

*Fla. State Bd. of Admin. v. Green Tree Fin. Corp.,*
    270 F.3d 645, 661 (8th Cir. 2001) .................................................................. 6

*In re First Energy Corp. Sec. Litig.,*
    316 F. Supp. 2d 581 (S.D. Ohio 2004), 316 F. Supp. 2d .................................... 6

*In re Lason Sec. Litig.,*
    143 F. Supp. 2d 855 ........................................................................................ 6

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding
    Corp.,*
    320 F. 3d 920 .................................................................................................. 6

*PR Diamonds, Inc. v. Chandler,*
    364 F.3d 671 (6th Cir. 2004) .......................................................................... 4

*Rothman v. Gregor,*
    220 F.3d 81, 94 (2d Cir. 2000) ...................................................................... 5

*Sanders Confectionary Prods. v. Heller Fin., Inc.,*
    973 F.2d 474 (6th Cir. 1992) .......................................................................... 8

*In re SmarTalk Sec. Litig.,*
    124 F. Supp. 2d 527 (S.D. Ohio 2000) ............................................................ 8

**RULES**

Rule 10b-5 ............................................................................................................ 1, 8

**OTHER AUTHORITIES**

§ 10(b) of the Securities and Exchange Act of 1934 ............................................. 1, 8

§ 20(a) of the Securities and Exchange Act of 1934 ............................................. 1, 8

Lead Plaintiffs, Lawrence Diamond and Southeastern Pennsylvania Transportation Authority ("Plaintiffs") respectfully submit this Brief in Opposition to the Motion to Dismiss the Consolidated Class Action Complaint (the "Complaint") and supporting brief filed by Defendant Raymond Booth ("Booth Mem."), [Dkt. No. 39], and in further support of Plaintiffs' opposition to the Brief in Support of the Motions to Dismiss filed by Defendants Reddy Ice Holdings, Inc. ("Reddy Ice"), William Brick, Steven Janusek and Jimmy Weaver [Dkt. Nos. 41, 42, 43].

Defendant Booth seeks to dismiss Plaintiffs' claims for violation of Section 10(b) and Rule 10b-5 and Section 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"). Booth primarily challenges Plaintiffs' scienter allegations as somehow deficient under the pleading standards imposed by the Private Securities Litigation Reform Act ("PSLRA"). (Booth Mem. at 2-3). In support of his arguments, Booth adopts the arguments of Defendants Reddy Ice, Brick and Janusek in their motion to dismiss the Complaint and supporting brief. As set forth in Plaintiffs' brief in opposition to the motion to dismiss the Complaint filed by Defendants Reddy Ice, Brick and Janusek, which is filed contemporaneously herewith and incorporated herein by reference, Plaintiffs' Complaint more than adequately alleges Booth's and all of the other Defendants' liability for serious violations of the Exchange Act during the Class Period.

## I.    <u>STATEMENT OF FACTS</u>

Reddy Ice, the nation's largest packaged ice manufacturer, is a target of numerous federal investigations and civil lawsuits arising out of an illegal conspiracy to allocate territories and customers to raise, fix, maintain or stabilize packaged ice prices. ¶¶ 6, 44, 61.[1] Beginning in July 2003, defendant Booth became Reddy Ice's Senior Vice President – Mid-Atlantic Region. Declaration of Lauren Wagner Pederson, Ex. 3, Reddy Ice Prospectus dated May 24, 2006, p. 66. After several years with the Company, Booth became the Company's Chief Operating Officer during 2007, until he resigned from that position on January 2, 2008. ¶ 32. Throughout the Class Period, Defendant Booth was a high-ranking executive within Reddy Ice that profited from

---

[1]    All references to "¶" refer to the Consolidated Class Action Complaint (the Complaint). [Dkt. No. 37.]

the Company's purported ability to successfully gain market share and compete in the "highly competitive" packaged ice industry (*see, e.g.*, ¶¶ 172, 176).

While touting Reddy Ice as a dominant player in the U.S. that was minimally impacted by competing packaged ice companies in its primary geographic territories, defendant Booth and the other Defendants[2] knowingly and recklessly omitted material information regarding unlawful deceptive agreements that the Company entered into in violation of U.S. antitrust laws. ¶¶ 5, 42, 166. This unlawful agreement to allocate markets and fix prices was at the heart of Reddy Ice's business. ¶¶ 42-43.

Indeed, unbeknownst to investors, prior to and continuing throughout the Class Period, Reddy Ice was involved in an unlawful anti-competitive conspiracy involving two of its largest competitors, Arctic Glacier, Inc., based in Winnipeg, Canada ("Arctic Glacier"), and Home City Ice Co., based in Cincinnati Ohio ("Home City"). ¶¶ 6, 43. Together, Reddy Ice, Arctic Glacier and Home City formed a cartel to suppress and eliminate competition by allocating the U.S. market for packaged ice and entering into secret agreements not to compete among themselves in certain geographic markets. *Id.* Notwithstanding this fact, Booth authorized the disclosure of numerous false and misleading statements throughout the Class Period pertaining to Reddy Ice's ability to compete effectively in the packaged ice industry. *See, e.g.*, ¶¶ 166.

Booth was able to profit handsomely by conducting business in accord with the unlawful market allocation agreement. In the May 2006 Secondary Offering, Booth sold 5,000 shares of the Company's common stock to investors. ¶ 96. Further, throughout the Class Period, Booth sold over 22,000 shares of Company stock, or 25% of his total holdings, for gross proceeds totaling over $464,000. ¶ 170. It also bears mentioning that Defendants Booth and Weaver,

---

[2] "Defendants" collectively refers to Reddy Ice Holdings, Inc., William P. Brick ("Brick"), the Company's President, Chief Executive Officer ("CEO"), and Executive Chairman of the Board of Directors; Steven J. Janusek the Company's Chief Financial Officer ("CFO") and an Executive Vice President; Jimmy C. Weaver ("Weaver"), the Company's President and, at times, COO and CEO from the start of the Class Period until December 2007; and Defendant Raymond D. Booth ("Booth") the Company's Chief Operating Officer ("COO") during all relevant times until January 2008. ¶¶ 29-32.

Reddy Ice's President and, at various times during the Class Period, its Chief Operating Officer or Chief Executive Officer, each sold shares of Reddy Ice stock on the same day on two separate occasions. ¶ 170.

Together with these stock sales, defendant Booth was rewarded with a lucrative executive compensation package based upon the Company's success that was achieved in large part as a result of Booth's knowing participation in an illegal collusive market allocation agreement with other packaged ice distributors. Indeed, Booth nearly doubled his base salary and cash bonus of $496,478 through the award of "incentive stock awards" totaling $357,948, bringing Booth's total compensation for fiscal years 2006 through 2008 to $854,426. ¶¶ 172-173.

Further, during July 2007, Booth and the other Defendants actively pursued a merger with GSO Capital Partners, L.P. ("GSO"), a hedge fund through which the Company was to be taken private in a transaction that paid shareholders $31.25 per share, which was a premium of approximately 9.6% over the Company's closing share price of $28.52 on June 29, 2007. ¶ 8, 9, 175. Booth and the other Defendants stood to reap a total of $6.375 million for their Reddy Ice holdings, including restricted stock, which vested immediately if the merger was closed. Although the transaction was expected to close in the fourth quarter of 2007, on January 31, 2008, the Company announced that the merger had been abandoned. Thus, Booth was unable to reap an additional $562,500 from the immediate vesting of his Restricted Share Units. ¶ 176.

Booth's career at Reddy Ice came to a close on January 2, 2008, when the Company abruptly announced that Booth resigned from his post just days after the announcement of Weaver's resignation. ¶ 122. Then, in March 2008, the Company disclosed that it had been raided by the FBI in connection with an investigation by the Antitrust Division of the United States Department of Justice (the "DOJ") in March 2008. ¶¶ 126-128. Indeed, after months of denying awareness of any illegal anticompetitive conduct; Reddy Ice subsequently admitted in September 2008 that its Executive Vice President of Sales & Marketing had been terminated for violating Company policies in connection with the matters under investigation by the DOJ. ¶¶ 14, 151. As expected, the market punished Reddy Ice's shares, closing after the end of the Class

3

Period on September 15, 2008 at $6.75 and continuing to tumble during the following days to $3.43, which was but a fraction of its IPO price. ¶¶ 19, 152.

II.    **ARGUMENT AND AUTHORITIES**

    A.    **Plaintiffs Allege A Plausible Scheme Of Knowing And Reckless Conduct From Which The Court Can Infer A Strong Inference Of Scienter For Booth**

Plaintiffs allege specific facts and circumstances that suggest Booth has knowledge of or was at a minimum reckless in not knowing of Reddy Ice's unlawful market allocation agreements. Indeed, the Complaint more than adequately alleges facts from which the Court can infer a strong inference that Booth acted with scienter. Throughout the Class Period, Booth was a high-ranking executive with Reddy Ice that: (i) was in charge of Reddy Ice's operations that were conducted pursuant to an illegal market allocation agreement, (ii) benefitted from numerous stock sales, (iii) received an incentive based compensation package that allowed Booth to nearly double his total compensation for the fiscal years 2006-2008, and (iv) aggressively pursued a merger GSO to ensure the vesting of his RSU units. ¶¶ 32, 96, 170-175.

As an initial matter, Booth's scienter may be inferred from the fact that Booth was the Company's Senior Vice President – Mid-Atlantic Region and, during 2007, was the Company's COO. Given his status as high-ranking executive, Booth's knowledge of the unlawful market allocation agreement may be inferred. *In re Cardinal Health Inc. Sec. Litig.*, 426 F. Supp. 2d 688, 724 (S.D. Ohio 2006) ("Courts may presume that high-level executives are aware of matters related to their business' operation where the misrepresentations or omissions pertain to 'central, day-to-day operational matters.'").[3] Indeed, Booth was in a position to know about Reddy Ice's

---

[3]    Booths' reliance on *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671 (6th Cir. 2004) for the contention that Plaintiffs are solely alleging Booth's liability due to his position in Reddy Ice and his access to information is misplaced. Booth Mem. at 2. Indeed, the *PR Diamonds* court found scienter lacking, where, *inter alia*, the alleged misrepresentations or omissions failed to pertain to central, day-to-day operational matters – which is not the case here. In the present action, Plaintiffs allege that Booth and the other Defendant issued numerous false and misleading statements regarding the unlawful anticompetitive market allocation agreement that was at the very core of Reddy Ice's business. ¶¶ 5-6, 42-43. Thus, this Court may infer Booth's knowledge

anticompetitive agreements, which were intrinsic in the Company's day-to-day operations and main source of revenue. It is not plausible that an executive like Booth, a vice president of one of the regions alleged to be involved in the carved up markets (¶43), and also the Company's COO during 2007, was not aware of a nationwide market allocation agreement between Reddy Ice and its two main competitors. Facts critical to a business' core operations or important transactions generally are so apparent to a company's executives that their knowledge may be reasonably attributed to the company and its key officers. *See In re Aetna Inc. Sec. Litig.*, 34 F. Supp. 2d 935, 953 (E.D. Pa. 1999) (imputing strong inference of scienter to CEO and CFO because of their positions in management, the fraud related to core business and the problems were widespread). Plaintiffs thus have pled facts that create a strong inference that Defendant Booth acted with scienter.

Second, the Court may also infer Booth's scienter from Booth's numerous stock sales throughout the Class Period. Courts have classified stock sales as unusual or suspicious based on a variety of factors, which include the amount of profit from sales, the portion of stockholdings sold, the change in volume of insider sales, and the number of insiders selling. *Cardinal Health*, 426 F. Supp. 2d at 728 (citing *Rothman v. Gregor*, 220 F.3d 81, 94 (2d Cir. 2000)). During the Class Period, Booth sold almost 25% of his total holding, and at times, those sales were on the same day as sales by defendant Weaver and Ben Key, the Reddy Ice executive that was terminated from Reddy Ice for his association with matters connected with the DOJ antitrust investigation. ¶ 170. During the Class Period, Booth received over $464,000 in gross proceeds from these sales. *Id*. Thus, Booth's suspicious stock sales support an inference of scienter.

Third, the Court may also infer Booth's scienter based upon the fact that Booth was eligible for and received incentive based compensation that was tied to the Company's financial performance. Indeed, scienter may be inferred where a plaintiff alleges "specific facts tying the Individual Defendants' compensation to company performance." *Cardinal Health*, 426 F. Supp.

---

of the unlawful agreement based upon his status as a high-ranking executive in the Company.

2d at 737 (citing *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 661 (8th Cir. 2001); s*ee also No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F. 3d 920, 944 (strong inference of scienter because defendants' eligibility for stock options and executive bonuses were based principally on company's financial performance). Booth also received an additional $357,948 in incentive stock awards during fiscal years 2006-2008 pursuant to Booth's "pay for performance" compensation package. ¶¶ 171-172. Further, Booth and the other Defendants aggressively pursued a merger with GSO, which if consummated, would have entitled Booth to the immediate vesting of 18,000 RSUs, or an additional $562,500 in compensation. ¶¶ 174-175. Accordingly, Booth's incentive based compensation package may be relied upon by the Court to infer Booth's scienter.

Fourth, Booth (together with the other Defendants) initiated the May 2006 Secondary Offering to raise capital for the Company, and sold 5,000 of his Reddy Ice shares in the Secondary Offering. ¶¶ 96, 170. These facts may also be used by the Court to infer Booth's scienter. *In re Lason Sec. Litig.,* 143 F. Supp. 2d 855, 858-59 (E.D. Mich. 2001 (holding that scienter adequately pled where the allegations demonstarted that defendants had motive and opportunity – and proceeded to act on that opportunity); *Fidel v. AK Steel Holding Corp.*, 2002 U.S. Dist. LEXIS 18887, at *65 (S.D. Ohio Sept. 19, 2002) (in combination with other indicia, "allegations that Defendants were motivated to artificially inflate AK Steel's stock price in order to complete [a] merger, is sufficient to create a strong inference of [scienter]"); *In re First Energy Corp. Sec. Litig.*, 316 F. Supp. 2d 581, 599 (S.D. Ohio 2004), 316 F. Supp. 2d at 599 (motivation to complete a merger "additionally raise[s] a strong inference of scienter"). Thus, Booth's sales of Reddy Ice stock in the Secondary Offering may be utilized by the Court to find that Plaintiffs adequately scietner with respect to Booth.

Accordingly, Plainitffs allege facts sufficient for the Court to infer scienter with respect to defendant Booth, where, as here, Plaitffs allege that Booth (i) was a high-ranking executive of the Company, (ii) with responsibility for a region that has been implicated in illegal condut, (iii) sold a large portion of his Reddy Ice shares during the Class Period, (iv) received a "pay for

performance" based compensation package and pursued a merger to ensure the immediate vesting of his RSUs, and (v) sold shares of Reddy Ice in a Secondary Offering designed to raise capital for the Company and over one-hundred thousands dollars for himself.

### B.    Plaintiffs May Rely on  the Group Pleading Doctrine to Adequately Allege Booth's Liability

As detailed above, Plaintiffs allege numerous specific facts related to materially false and misleading statements and omissions by Booth and other Defendants during the Class Period, which were intended to and did mislead investors.  However, Booth (while simply ignoring these highly-detailed allegations) points to one paragraph in the Complaint (¶ 33) and boldly states that Plaintiffs are solely relying on the group pleading doctrine (purportedly rejected by the Sixth Circuit) to establish Booth's liability.

The Sixth Circuit has neither expressly embraced nor rejected the group pleading doctrine subsequent to the passage of the PSLRA, although the Court has declined to overturn a district court's application of the doctrine.  *See Cardinal Health*, 426 F. Sup.2d at 743-744 and n.67 (finding that the specificity required by the PSLRA is not eviscerated by the group published doctrine) (citing *Century Bus. Servs. Sec. Litig.*, 2002 U.S. Dist. LEXIS 26964, at *46 (N.D. Ohio June 27, 2002)).  In *Cardinal Health*, the court held that plaintiffs were entitled to the group pleading presumption to attribute corporate misstatements to high-level executives responsible for day-to-day operations and issues related to financial performance and who signed corporate disclosure statements or participated in conference calls with analysts.  *Id.* at 744.

Likewise, Plaintiffs here are entitled to the group pleading presumption to attribute Reddy Ice's misstatements and omissions to Booth, a high-level executive who was responsible for the Company's operations and reported results.  ¶¶166-167.

C.      **Booth is Liable As A Control Person**

Moreover, regardless of whether Booth is liable for a violation of Section 10(b) and Rule 10b-5, Booth is liable as a control person of Reddy Ice under Section 20(a).   Whether a defendant is a "controlling person" under §20(a) is normally a question of fact that cannot be determined at the pleading stage.  *Sanders Confectionary Prods. v. Heller Fin., Inc.*, 973 F.2d 474, 485 (6th Cir. 1992); *SmarTalk*, 124 F. Supp. 2d 527, 549 (S.D. Ohio 2000) (citing *Sanders*, 973 F.2d at 484)).  Thus, because the Complaint alleges that Defendants possessed and exercised the power to control the activity upon which the allegations are based, the §20(a) claims must not be dismissed.


III.    **CONCLUSION**

For the reasons set forth herein, Plaintiffs respectfully submit that Defendant Booth's Motion to Dismiss should be denied in its entirety.[4]

DATED:  January 18, 2010

Respectfully submitted,

**BARROWAY TOPAZ KESSLER**
**MELTZER & CHECK, LLP**

*/s/ Gregory M. Castaldo*
GREGORY M. CASTALDO
LAUREN WAGNER PEDERSON
MARK S. DANEK
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
(610) 667-7056 (fax)
gcastaldo@btkmc.com
lpederson@btkmc.com
mdanek@btkmc.com

*Lead Counsel for Lead Plaintiffs and the Class*

---

[4]      If the Court finds any of Plaintiffs' claims to be deficient, Plaintiffs request leave to replead.  *See* Fed. R. Civ. P. 15(a) (noting that leave to replead should be "freely given").

**COUGHLIN STOIA GELLER**
  **RUDMAN & ROBBINS LLP**
DEBRA J. WYMAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
debraw@csgrr.com

*Counsel for Plaintiff Lawrence Diamond*


**ZAUSMER, KAUFMAN, AUGUST,**
  **CALDWELL & TAYLOR, P.C.**
MARK. J ZAUSMER (P31721)
KARYN A. THWAITES (P66985)
31700 Middlebelt Road, Suite 150
Farmington Hills, MI 48334
Telephone:  248/851-4111
248/851-0100 (fax)
mzausmer@zkact.com
kthwaites@zkact.com

*Liaison Counsel for Plaintiffs and the Class*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that January 18, 2010, I electronically filed the Lead Plaintiffs' Brief In Opposition To The Motion To Dismiss The Consolidated Class Action Complaint Filed By Defendant Raymond Booth with the Clerk of the Court using the ECF system which will send notification of such filing to:  David A. Ettinger, James R. Nelson, Raymond W. Henney, and Samuel B. Isaacson.

<u>/s/ Gregory M. Castaldo</u>