**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| JOHN CHAMBERLAIN, Individually and On Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>REDDY ICE HOLDINGS, INC., WILLIAM P. BRICK, STEVEN J. JANUSEK, JIMMY C. WEAVER, and RAYMOND D. BOOTH, )<br><br>Defendants. ) | **CIVIL ACTION NO. 08-13451 (PDB)**<br><br>**CLASS ACTION**<br><br><br><br>**JURY TRIAL DEMANDED** |

**LEAD PLAINTIFFS' BRIEF IN OPPOSITION TO THE MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT FILED BY DEFENDANTS REDDY ICE, BRICK AND JANUSEK**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................iii

I.   STATEMENT OF FACTS.................................................................................1

   A.   Defendants Made Numerous False and Misleading Statements
        Without Disclosing That Reddy Ice's Financial Performance
        Was Highly Dependent on Illegal, Anti-Competitive Conduct ...................2

   B.   Defendants' Collusive Anti-Competitive Scheme Begins
        To Unravel ....................................................................................................3

   C.   The Class Period Closes as Reddy Ice More Fully
        Discloses the Truth.......................................................................................4

II.  ARGUMENT AND AUTHORITIES.................................................................4

   A.   Standard of Review Under Fed. R. Civ. P. 12(b)(6)
        And the PSLRA.............................................................................................4

   B.   Plaintiffs Adequately Allege That Defendants' Class Period
        Statements Were Materially False and Misleading.....................................6

        1.   Defendants' Statements Pertaining to Competition
             And Market Share Were Materially False and
             Misleading ...........................................................................................6

        2.   Defendants Had A Duty to Disclose The Unlawful
             Agreement ............................................................................................8

        3.   Defendants' Statements Regarding Reddy Ice's
             Financial Performance Were Materially False ................................9

        4.   Defendants' Statements Regarding Compliance With
             The Company's Publically-Disclosed Ethics Code Were
             Materially False ................................................................................10

   C.   Plaintiffs Allege A Plausible Scheme of Knowing and Reckless
        Illegal Conduct From Which The Court Can Infer A Strong
        Inference of Scienter...................................................................................12

        1.   Defendants Engaged in Deliberate Illegal Conduct.........................13

2.    Defendants Knew or Recklessly Disregarded That The
      Market Allocation Agreement Was Unlawful..................................15

3.    The Existence of the DOJ Investigation Supports a
      Finding that Defendants Acted with Scienter..................................17

4.    Defendants' Public Disclosures Regarding Lawful
      Compliance with Antitrust Laws Diverged From Their Internal
      Conduct ........................................................................................18

5.    Defendants' Insider Trading and Lucrative Compensation
      Packages Support Plaintiffs' Scienter Allegations ..........................19

III.    CONCLUSION....................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*In re Accredo Health, Inc. Sec. Litig.*,
   2005 U.S. Dist. LEXIS 46923 (W.D. Tenn. Apr. 11, 2005)............................................ 7, 17

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
   324 F. Supp.2d 474 (S.D.N.Y. 2004) .............................................................. 10

*Burman v. Phoenix Worldwide Indus.*,
   2006 U.S. Dist. LEXIS 46071 (D.D.C. July 7, 2006) ........................................ 14

*In re Cardinal Health, Inc. Sec. Litig.*,
   426 F. Supp. 2d 688 (S.D. Ohio 2006) .......................................................passim

*City of Monroe Emples Ret. Sys. v. Bridgestone, Corp.*,
   399 F.3d 651 (6th Cir. 2005)........................................................................ 8, 9

*City of Philadelphia v. Fleming Cos.*,
   264 F.3d 1245 (10th Cir. Okla. 2001)........................................................... 14

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)..................................................................................... 5

*Eastwood Enters., LLC v. Farha*,
   2009 U.S. Dist. LEXIS 88945 (M.D. Fla. Sept. 28, 2009)............................17, 18

*In re Fleming Cos. Secs. & Derivative Litig.*,
   2004 U.S. Dist. LEXIS 26488 (E.D. Tex. June 10, 2004)................................. 14

*Frank v. Dana Corp.*,
   547 F.3d 564 (6th Cir. 2008)........................................................................ 13

*Helwig v.Vencor, Inc.*,
   251 F.3d 549 (6th Cir.) (en banc), *cert. denied,* 536 U.S. 935 (2002) ...........passim

*Ind. State Dist. Council of Laborers et al. v. Omnicare, Inc.*,
   583 F.3d 935 (6th Cir. 2009)........................................................................ 9

*In re Intelligroup Sec. Litig.*,
   527 F. Supp. 2d 262 (D.N.J. 2007)............................................................... 14

*Kahn v. Ran,*
   2009 U.S. Dist. LEXIS 35474 (E.D. Mich. Apr. 27, 2009)............................ 5, 16

*Kushner v. Beverly Enters.*,
    317 F.3d 820 (8th Cir. Ark. 2003) ................................................................. 14

*In re Lernout & Hauspie Sec. Litig.*,
    230 F. Supp. 2d 152 (D. Mass. 2002) .......................................................... 18

*In re Marsh & McLennan Cos. Sec. Litig.*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006) ................................................6, 7, 8, 17

*Mayer v. Mylod*,
    988 F.2d 635 (6th Cir. 1993) ........................................................................ 5

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) ......................................................... 7

*Menkes v. Stolt-Nielsen S.A.*,
    2006 U.S. Dist. LEXIS 42644 (D. Conn. June 19, 2006) ........................6, 12, 16

*MJK Family LLC v. Corporate Eagle Mgmt. Servs.*,
    2009 U.S. Dist. LEXIS 111000 (E.D. Mich. Nov. 30, 2009) ................................ 8

*In re Micron Techs., Inc. Sec. Litig.*,
    2007 U.S. Dist. LEXIS 12446 (D. Idaho, Feb. 21, 2007) .................................. 10

*In re Motorola Secs. Litig.*,
    2004 U.S. Dist. LEXIS 18250 (N.D. Ill. Sept. 9, 2004) .................................... 14

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000) ........................................................................ 13

*In re Par Pharm. Sec. Litig.*,
    733 F. Supp. 668 (S.D.N.Y. 1990) ................................................................ 9

*Pittiglio v. Michigan Nat'l Corp.*,
    906 F. Supp. 1145 (E.D. Mich. 1995) ......................................................... 8, 10

*In re Providian Fin. Corp. Sec. Litig.*,
    152 F. Supp. 2d 814 (E.D. Pa. 2001) ............................................................ 10

*In re Qwest Commc'ns Int'l Sec. Litig.*,
    396 F. Supp. 2d 1178 (D. Colo. 2004) .......................................................... 20

*Rubin v. Schottenstein, Zox & Dunn*,
    143 F.3d 263 (6th Cir. 1998) (en banc) ......................................................... 9

*In re Sotheby's Holdings, Inc. Sec. Litig.*,
    2000 WL 1234601 (S.D.N.Y. Aug. 30, 2000) ......................................6, 12, 13

*In re St. Paul Travelers Sec. Litig.,*
    2006 WL 2735221 (D. Minn. Sept. 25, 2006) ..................................................8, 10, 14, 16

*In re Telxon Corp. Sec. Litig.,*
    133 F. Supp. 2d 1010 (N.D. Ohio 2000)........................................................... 19

*In re UnumProvident Corp. Sec. Litig.,*
    396 F. Supp. 2d 858 (E.D. Tenn. 2005) .............................................................. 8

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.,*
    531 F.3d 190 (2d Cir. 2008) .............................................................................. 16

*Tellabs v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007).....................................................................................12, 13

*Zaluski v. United Am. Healthcare Corp.,*
    527 F.3d 564 (6th Cir. 2008) .............................................................................. 9

## FEDERAL STATUTES

15 U.S.C. § 78u-4(b)(1) ............................................................................................. 6

15 U.S.C. § 78u-4(b)(2) ........................................................................................... 12

## RULES

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 4

Fed. R. Civ. P. 15(a) ............................................................................................... 20

Rule 9(b) ................................................................................................................. 10

Rule 12(b) ................................................................................................................. 8

<u>Statement of Issues Presented</u>

1.    Do Plaintiffs' particularized allegations setting forth Defendants' numerous materially false statements and omissions regarding nationwide illegal market allocation agreements entered into by Defendants and ongoing between and among Reddy Ice and its two main competitors during the Class Period sufficiently plead Section 10(b) and Rule 10b-5 violations?

2.    Do the allegations demonstrating pervasive illegal anticompetitive activity within Reddy Ice and that Defendants knowingly and recklessly deceived the investing public by stating that Reddy Ice's success and dominant market position was achieved in a lawful competitive environment, when in fact it was not, when viewed holistically with statements from corroborating witnesses and an admission by Reddy Ice that one of its executives engaged in antitrust violations plead a strong inference of scienter?

3.    Do Plaintiffs' loss causation allegations demonstrating significant stock price declines and how Plaintiffs' and other investors' stock losses were the direct result of disclosures about Defendants' antitrust investigations and violations meet the simple test for pleading loss causation?

<u>Most Significant Authorities</u>

1.  *Helwig v. Vencor, Inc.*, 251 F.3d 549, 550 (6th Cir.) (en banc)

2.  *In re Cardinal Health Inc. Sec. Litig.*, 426 F. Supp. 2d 688 (S.D. Ohio 2006)

3.  *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 302 (2007)

4.  *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005)

5.  *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000)

6.  *Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV409, 2006 U.S. Dist. LEXIS 42644, *11-12 (D. Conn. Jun. 19, 2006)

7.  *In re Sotheby's Holdings, Inc. Sec. Litig.*, No. 00 Civ. 1041, 2000 U.S. Dist. LEXIS 12504, *11-13 (S.D.N.Y. Aug. 31, 2000)

Lead Plaintiffs, Lawrence Diamond and Southeastern Pennsylvania Transportation Authority ("Plaintiffs") respectfully submit this Brief in Opposition to the Motion to Dismiss the Consolidated Class Action Complaint (the "Complaint") filed by Defendants Reddy Ice Holdings, Inc. ("Reddy Ice" or the "Company"), William P. Brick and Steven J. Janusek.

## I.    STATEMENT OF FACTS

Reddy Ice, the nation's largest packaged ice manufacturer, is a target of numerous federal investigations and civil lawsuits arising out of an illegal conspiracy to allocate territories and customers to raise, fix, maintain or stabilize packaged ice prices. ¶¶6, 44, 61.[1]  Reddy Ice manufactures, distributes and sells packaged ice and has locations in 31 states. ¶¶2, 34. Beginning with its initial public offering ("IPO") on August 10, 2005, which also is the start of the Class Period, Reddy Ice issued a Registration Statement and Prospectus touting its dominant market position and competitive advantages, without disclosing any anticompetitive practices or agreements. ¶¶66-72.  Public trading on the New York Stock Exchange of Reddy Ice's shares, cleverly under the ticker symbol "FRZ", was well received by the investing public, causing the Company's stock price to rise from its IPO price of $18.50 to close at $19.31 on the first day of trading. ¶37.  Nine months later, in a Secondary Public Offering in May 2006 (the "Secondary Offering"), Reddy Ice and its controlling shareholders sold an additional 4.59 million shares of the Company's common stock to investors at $21.55 per share, generating $98.9 million in proceeds.  ¶38.

After reaching a Class Period high $31.18 per share during the Class Period, Reddy Ice's stock price plummeted in March 2008 upon disclosure that the Company had been raided by the FBI in connection with an investigation by the Antitrust Division of the United States Department of Justice (the "DOJ").  After months of denying awareness of any illegal anticompetitive conduct, Reddy Ice subsequently admitted in September 2008 that its Executive Vice President of Sales & Marketing, Ben Key, had been terminated for violating Company

---

[1] All references to "¶" refer to the Consolidated Class Action Complaint (the "Complaint"). [Dkt. No. 37.]

policies in connection with the matters under investigation by the DOJ.  ¶¶14, 64, 126-27, 129, 151.  As expected, the market punished Reddy Ice's shares, closing at the end of the Class Period on September 15, 2008 at $6.75 and continuing to tumble during the following days to $3.43, which was but a fraction of its IPO price. ¶¶19, 152.

> **A.    Defendants Made Numerous False and Misleading Statements Without Disclosing That Reddy Ice's Financial Performance was Highly Dependent on Illegal, Anti-Competitive Conduct**

While touting Reddy Ice as a dominant player in the U.S. that was minimally impacted by competition in its primary geographic territories, Reddy Ice and the other Defendants[2] knowingly and recklessly omitted material information regarding unlawful deceptive agreements that the Company entered into in violation of U.S. antitrust laws. ¶¶5, 42.  Indeed, unbeknownst to investors, prior to and continuing throughout the Class Period, Reddy Ice was involved in an unlawful anti-competitive conspiracy involving two of its largest competitors, Arctic Glacier, Inc. ("Arctic Glacier"), and Home City Ice Co. ("Home City"). ¶¶6, 43.  Together, Reddy Ice, Arctic Glacier and Home City formed a cartel to suppress and eliminate competition by allocating the U.S. market for packaged ice and entering into secret agreements not to compete among themselves in certain geographic markets. *Id*.

During the Class Period, Reddy Ice and the Individual Defendants issued to the public numerous materially false and misleading statements regarding Reddy Ice's business operations and competitive positioning in the packaged ice market. *See e.g.*, ¶5, 66-72.  For example, on March 16, 2006, Reddy Ice publicly disclosed that it complied with its Code of Business Conduct (the "Ethics Code"), as well as U.S. antitrust laws.  ¶86.  The Ethics Code, which Defendants publicly disclosed, expressly stated that the Company's employees, officers and

---

[2] The Individual Defendants are William P. Brick ("Brick"), the Company's President, Chief Executive Officer ("CEO"), and Executive Chairman of the Board of Directors; Steven J. Janusek ("Janusek") the Company's Chief Financial Officer ("CFO") and an Executive Vice President; Jimmy C. Weaver ("Weaver"), the Company's President and CEO; and Defendant Raymond D. Booth ("Booth") the Company's Chief Operating Officer ("COO") during all relevant times until January 2008. ¶¶29-32.

directors must comply with all antitrust laws.  ¶87.  Defendants made these statements with actual knowledge or were seriously reckless in not knowing that Reddy Ice's collusive agreements with Arctic Glacier and Home City breached Company policy and U.S. antitrust laws.  In fact, Defendants' knowledge and reckless disregard of violations of the Ethics Code and U.S. antitrust laws were confirmed by several confidential witnesses with firsthand knowledge of the conduct complained of in the Complaint.  ¶¶47-57.

In connection with its IPO, Reddy Ice filed with the SEC a Prospectus that contained several detailed disclosures regarding Reddy Ice's competition, business strategy and risks related to the Company's business.  ¶¶66-70.  In the Prospectus, Reddy Ice touted that its competitive strengths were its unique multistate presence, leading market position and stable and predictable cash-flow generation. ¶68.  However, unbeknownst to investors, Reddy Ice was able to make these statements about the Company's business and operations only as a result of engaging in illicit business practices with Arctic Glacier and Home City to allocate territories and customers in the U.S. packaged-ice market.  ¶72.

**B.    Defendants' Collusive Anti-Competitive Scheme Begins to Unravel**

Notwithstanding the numerous instances in which Reddy Ice primed the market for its continued financial success in the face of the purported "highly competitive" packaged ice industry, on March 6, 2008, Reddy Ice announced that the FBI had executed a search warrant at the Company's corporate headquarters in Dallas, Texas the day before. ¶¶10, 126.  The next day, on March 7, 2008, Reddy Ice issued another press release that sought to clarify its prior disclosure and reported that the DOJ directed the execution of the search warrant in connection with its investigation of the anti-competitive conduct in the packaged ice industry.  ¶127.  The revelation of this news proved disastrous for Reddy Ice's shareholders as the Company's stock price immediately from approximately $23.57 per share to $15.38, for a one-day market capitalization loss of $180 million.  ¶¶11, 128.

Although Reddy Ice's unlawful conduct was exposed, the Company denied any improprieties notwithstanding numerous news articles and scores of lawsuits by Reddy Ice's retail customers under the anti-trust laws.  ¶¶12, 130-142; ¶129 ("Senior Management is not aware that the Company has engaged in anticompetitive behavior, or other activities, which would violate the antitrust laws.").  On June 17, 2008, co-conspirator Home City pled guilty to conspiring with arctic Glacier to allocate customers and territories.  ¶143.  Then, on August 7, 2008, the *Wall Street Journal* published an article that detailed an in-depth interview with Martin McNulty, a former vice-president of sales at a subsidiary of Arctic Glacier. ¶13.  During that interview, McNulty disclosed that packaged-ice industry executives were caught by FBI wiretaps discussing the alleged unlawful conspiracy.  *Id*.  The disclosure of this news caused Reddy Ice's share price to fall an additional $2.40 per share and close on August 7, 2008 at $10.99 per share. *Id*.

### C.    The Class Period Closes as Reddy Ice More Fully Discloses the Truth

On September 15, 2008, Reddy Ice announced that it had suspended Ben Key.  ¶¶14, 151.  Key's suspension came on the heels of an investigation by a Special Committee of the Company's Board of Directors, which was formed immediately as result of the FBI raid and DOJ investigation.  *Id*.  In response, the Company's stock price fell $1.09 per share from $7.84 to $6.75, on September 15, 34.8 percent, or $2.35 per share on September 16, 2008 to close at $4.40 per share.  *Id*.  The stock price has never recovered.

### II.    ARGUMENT AND AUTHORITIES

### A.    Standard of Review Under Fed. R. Civ. P. 12(b)(6) and the PSLRA

A motion to dismiss for failure to state a claim merely tests the sufficiency of a complaint; it does not require a court to decide the merits of a case.  *See In re Cardinal Health, Inc. Sec. Litig.*, 426 F. Supp. 2d 688, 711 (S.D. Ohio 2006) (the issue is "not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support its claim").  To survive a Rule 12(b)(6) motion, Plaintiffs need only allege facts sufficient to state a

claim that is plausible on its face.  *See Kahn v. Ran,* 2009 U.S. Dist. LEXIS 35474, at *9 (E.D. Mich. Apr. 27, 2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (allegations must show right to relief is beyond speculative).  The Court must accept all factual allegations in the Complaint as true and draw all reasonable inferences in Plaintiffs' favor.  *See id.* (citing *Twombly*, 127 S. Ct. at 1964-65).  Whether a statement is true or false is not an issue to be decided on a motion to dismiss. *Mayer v. Mylod*, 988 F.2d 635, 639 (6th Cir. 1993).

In accordance with the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Plaintiffs have alleged with particularity Defendants' misrepresentations and omissions of material facts; that Defendants acted with scienter; and that their fraud proximately caused losses suffered by Plaintiffs.[3]  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005); *Helwig v.Vencor, Inc.*, 251 F.3d 549, 554 (6th Cir.) (en banc), *cert. denied,* 536 U.S. 935 (2002). As demonstrated by the well-pleaded allegations in the Complaint, Plaintiffs' claims should be deemed more than plausible.[4] *See, e.g.,* ¶¶10, 14, 61, 64, 127, 151, 163.  Defendants' motions to dismiss must therefore be denied in their entirety.

---

[3] Plaintiffs have identified the economic loss suffered by them and Reddy Ice investors as well as pled how those damages were proximately caused by defendants' fraudulent conduct.  Plaintiffs have detailed the stock decline subsequent to each disclosure and identified precisely how that stock loss was the direct result of disclosures about Defendants' fraudulent conduct. ¶¶126-155, 159-165.  Plaintiffs further incorporate by reference the loss causation analysis in their brief in opposition to Defendant Weaver's motion to dismiss.

[4] Plaintiffs also adequately state a claim for control person liability under Section 20(a) of the Exchange Act against all Defendants because Plaintiffs have sufficiently pleaded a primary violation of Section 10(b) and because Plaintiffs allege that these Defendants had the power to control or influence the primary violator and exercised the same.  ¶¶207-210.

**B.  Plaintiffs Adequately Allege That Defendants' Class Period Statements Were Materially False and Misleading**

Plaintiffs allege in detail numerous materially false statements and omissions relating to: (i) the nature of the Company's market share and competition, (ii) the Company's financial results, and (iii) the Company's compliance with its Ethics Code contained in multiple Class Period SEC filings.  Moreover, Plaintiffs stated with particularity the reasons those statements are false and misleading, and the facts on which the allegations are based.  15 U.S.C. §78u-4(b)(1).  Finally, Plaintiffs more than adequately allege pervasive anticompetitive activity within Reddy Ice and that Reddy Ice deceived the investing public by stating that its success and dominant market position was achieved in a lawful competitive environment, when in fact it was not. *See*, *e.g.*, ¶¶68-72, 75, 77-78, 81-84, 86-88, 106.  These allegations more than sufficiently plead actionable securities fraud claims.[5]

**1.    Defendants' Statements Pertaining to Competition and Market Share Were Materially False and Misleading**

Plaintiffs allege Defendants' knowing involvement in an unlawful anti-competitive market allocation agreement which rendered their statements about market share and the Company's ability to compete in the packaged ice industry false and misleading.  ¶¶68-69, 75, 83.  For example, Reddy Ice disclosed that: (i) the packaged ice industry is highly competitive; (ii) competition is based primarily on service, quality and price; and (ii) that Arctic Glacier and Home City generally did not compete in Reddy Ice's home market.  ¶¶70, 75, 83.  However, Reddy Ice did not disclose that the Company entered into an illegal market allocation agreement

---

[5] *See Menkes v. Stolt-Nielsen S.A.*, 2006 U.S. Dist. LEXIS 42644, at *11-12 (D. Conn. June 19, 2006) (plaintiffs' complaint met the applicable standard for pleading securities fraud by alleging four-year pervasive anti-competitive conduct and that defendants attempted to deceive investors by stating that business success was achieved in a competitive environment); *In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 468-69 (S.D.N.Y. 2006) (finding actionable securities fraud based upon defendants' nondisclosure of material information regarding company's use of improper business practices to generate substantial earnings); *In re Sotheby's Holdings, Inc. Sec. Litig.*, 2000 WL 1234601 at *3-5 (S.D.N.Y. Aug. 30, 2000) (denying motion to dismiss securities fraud action based upon anti-competitive agreement with primary competitor).

with Arctic Glacier and Home City to ensure that Reddy Ice was impervious to the normal effects of competition within the packaged ice industry. ¶72.

Defendants assert that the Court should discredit Plaintiffs' allegations attributed to several confidential sources. Defs. Br. at 6. Defendants are wrong.[6] Plaintiffs' allegations are supported by several corroborating witnesses with firsthand knowledge of the events alleged in the Complaint. For example, during CW1's tenure at Reddy Ice, CW1 stated that the Company and Arctic Glacier entered into an agreement to divide the California and Arizona markets, and that this agreement was discussed among various employees at the Company's Dallas headquarters. ¶46. Likewise, during the execution of CW2's auditor/area controller duties, CW2 was personally told of the unlawful agreement by defendant Weaver in front of defendant Janusek (who expressed knowledge and understanding of the on-going unlawful agreement) while in attendance at a manager's meeting in Dallas during the Class Period. ¶¶48-53, 59-60. Thus, the Complaint's allegations are supported by statements from several corroborating confidential witnesses who held positions at Reddy Ice that made them privy to the information they assert. *See In re Accredo Health, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 46923, at *46-47 (W.D. Tenn. Apr. 11, 2005) (holding that confidential witness statements may be considered where plaintiffs allege that the sources were in specific positions at the company to have access to the information relayed to plaintiffs); *see also Marsh*, 501 F. Supp. 2d at 482 (finding that plaintiffs adequately alleged a securities violation, in part, where confidential sources stated that employees "openly discussed" anticompetitive conduct during the course of their employment).

Next, Defendants' contention that allegations from the McNulty whistleblower action cannot be utilized by the Court in evaluating the Complaint is misplaced. First, courts routinely consider allegations from other lawsuits when determining the sufficiency of the securities fraud

---

[6] Defendant's argument that statements by confidential witnesses should be disregarded as hearsay fails because the plain language of the PSLRA and Federal Rules of Civil Procedure do not require the submission of admissible evidence at the pleading stage. *See, e.g., In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1272 (N.D. Cal. 2000) ("Even under the [PSLRA], plaintiffs are only required to plead facts, not to produce admissible evidence").

allegations. *See, e.g.*, *Marsh,* 501 F. Supp. 2d at 490 (referencing allegations of improper business conduct contained in a New York Attorney General's complaint when analyzing the sufficiency of plaintiffs' securities fraud allegations). Second, Mr. McNulty's allegations are based upon first-hand knowledge of the illegal conduct. ¶¶13, 44, 45, 65, 144. Indeed, Mr. McNulty was told by a high-ranking Arctic Glacier executive of the unlawful market allocation agreement with Reddy Ice.[7] *See* ¶45; *see also* Declaration of Lauren Wagner Pederson, Ex. 1, McNulty Complaint. ¶¶34-38. Accordingly, Plaintiffs have sufficiently alleged that Defendants' statements pertaining to market share and competition were false when made.

### 2.    Defendants Had a Duty to Disclose the Unlawful Agreement

Defendants' numerous Class Period statements regarding the competitiveness of the packaged ice industry and the Company's ability to compete effectively give rise to Defendants' duty to disclose the illegal market allocation agreement. A duty to disclose an illegal market allocation agreement is triggered when a defendant issues material public statements related to competition within the defendants' industry. *See MJK Family LLC v. Corporate Eagle Mgmt. Servs.*, 2009 U.S. Dist. LEXIS 111000, at *17, 27-28 (E.D. Mich. Nov. 30, 2009) (holding that a defendant undertook a duty to disclose that it would be in direct competition with a newly-formed business entity when it chose to disclose two other specific conflicts of interest).[8]

---

[7] Additionally, Defendants assert that the Court should dismiss the Complaint because Defendants disclosed a pre-Class Period transaction with Mountain Water Ice in 2001. Defs. Br. at 4, 9-10. Defendants' contention misses its mark. The Complaint is not predicated on any 2001 sales transaction. Rather, the foundation for the Complaint is the undisclosed illegal market allocation agreements between and among Reddy Ice, Arctic Glacier and Home City that was ongoing throughout the Class Period. The Court must disregard Defendants' attempt to interject their own version of the facts at this stage of the litigation. *City of Monroe Emples Ret. Sys. v. Bridgestone, Corp.*, 399 F.3d 651, 672-673 (6th Cir. 2005) (holding that factual issues are not properly resolved on a Rule 12(b) motion to dismiss); *Pittiglio v. Michigan Nat'l Corp.,* 906 F. Supp. 1145, 1153 (E.D. Mich. 1995) (same).

[8] *See also In re St. Paul Travelers Sec. Litig.*, 2006 WL 2735221, at *4 (D. Minn. Sept. 25, 2006) (failure to disclose illegal bid-rigging and other activities as true cause of companies growth, revenues and renewal rates was actionable); *In re UnumProvident Corp. Sec. Litig.*, 396 F. Supp. 2d 858, 885-86 (E.D. Tenn. 2005) (denying motion to dismiss securities fraud claims alleging that defendants conceived, instituted, and oversaw a claims handling strategy which

Although a defendant is generally under no duty to disclose "soft information," a defendant "assumes a duty to provide complete and non-misleading information" when a defendant chooses to speak on a particular subject. *Rubin v. Schottenstein, Zox & Dunn*, 143 F.3d 263, 268 (6th Cir. 1998) (en banc) (holding that a defendants' liability "flows" from their decision to speak); *see also Helwig*, 251 F.3d at 560-61.[9]

As noted above, Defendants made multiple public statements throughout the Class Period related to Reddy Ice's market share and ability to compete in the "highly competitive" packaged ice industry. *See, e.g.*, ¶¶75, 83. Thus, Defendants' reliance on *Omnicare* and *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564 (6th Cir. 2008) to support their contention that they had no duty to disclose uncertain legal consequences of conduct is misplaced. Defendants' disclosures regarding market share and competition give rise to their duty to disclose the illegal market allocation agreement. Accordingly, Defendants had a duty to disclose the illegal anticompetitive agreement with Arctic Glacier and Reddy Ice, as there is a direct nexus between the illegal conduct and Defendants' materially false and misleading statements and omissions.

### 3. Defendants' Statements Regarding Reddy Ice's Financial Performance Were Materially False

Plaintiffs allege particularized facts relating to the knowingly false and misleading results of operations publicly disseminated to shareholders in Defendants' quarterly and annual SEC filings. ¶¶73-135. Moreover, Plaintiffs set forth facts demonstrating that Reddy Ice's financial

---

was, at best, unethical and then failed to credit this conduct as the cause of the company's success and knowingly failed to reflect the resulting potential liabilities); *In re Par Pharm. Sec. Litig.*, 733 F. Supp. 668, 677-78 (S.D.N.Y. 1990) (denying motion to dismiss securities fraud claims based upon omission of bribery scheme for expedited approval of new drug applications because defendants' statements conveyed the impression that the company had particular expertise and success could be compared to other companies).

[9] Defendants rely on *Ind. State Dist. Council of Laborers et al. v. Omnicare, Inc.*, 583 F.3d 935 (6th Cir. 2009), for the proposition that statements of legal compliance are "soft information" that are not actionable; however, as the Sixth Circuit explained in *Helwig*, 251 F.3d 540 (6th Cir. 2001), "selective disclosure of information known exclusively to defendants and essential to complete a picture they had only partially revealed" can substantiate a claim for securities fraud; *see also Bridgestone*, 399 F.3d at 675.

performance was highly dependent on the illegal market allocation agreement with Arctic Glacier and Home City. ¶¶42-65. Thus, Plaintiffs sufficiently allege a securities violation predicated on these statements. *In re Micron Techs., Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 12446, at *24 (D. Idaho, Feb. 21, 2007) (holding that falsity was sufficiently pled where allegations demonstrate that defendants attributed their financial results to market factors rather than price fixing).

In an attempt to discount Plaintiffs' sufficiently pled allegations, Defendants erroneously contend that allegations related to Reddy Ice's financial performance cannot support a securities claim, unless Plaintiffs specify the exact financial impact of "Reddy Ice's actual revenues." Defs. Br. at 11. Contrary to Defendants' assertion, Plaintiffs need not "precisely quantify the amount by which financial statements were overstated" in order to satisfy the PSLRA pleading requirements. *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp.2d 474, 488 (S.D.N.Y. 2004). Also, where, as here, financial matters are "peculiarly within the knowledge of defendants," the stringent pleading standards of Rule 9(b) are "relaxed." *Pittiglio,* 906 F. Supp. at 1152. In any event, Plaintiffs are not required to plead the amount by which Reddy Ice's revenues were overstated as a result of their fraudulent activities to demonstrate actionable material omissions. *See St. Paul*, 2006 WL 2735221, *3 ("Investors need the complete picture to ensure that optimistic statements about a company's financial condition do not mislead investors); *In re Providian Fin. Corp. Sec. Litig.*, 152 F. Supp. 2d 814, 823-24 (E.D. Pa. 2001) (detailed allegations of fraudulent practices that inflated company's revenue put into play defendants' statement that its performance was results were the result of a "customer-focused approach").

### 4.    Defendants' Statements Regarding Compliance with The Company's Publicly-Disclosed Ethics Code Were Materially False

Not surprisingly, Defendants deny their participation in an illegal market allocation agreement with Arctic Glacier and Home City. Defs. Br. at 5-10. In fact, Defendants fail to

even acknowledge that they terminated a Company executive, Ben Key, for engaging in conduct that violated the Company's policies associated with the DOJ investigation. ¶151.

Plaintiffs allege in detail that all of the Defendants knowingly engaged in illegal anticompetitive activities, while affirmatively misrepresenting to shareholders that the Company had in place an Ethics Code which disavowed the Company's participation in such activities.[10] Specifically, Defendants made extremely specific disclosures regarding compliance with certain antitrust laws and ethical policies (*see e.g.*, ¶86), and what the Company considers to be the "most serious" anticompetitive conduct: "agreements to fix prices or to divide customers, territories or markets." ¶87. Plaintiffs' allegations are buttressed by various confidential witnesses; a federal investigation into the illegal, anticompetitive operations of Arctic Glacier, Home City and the Company; guilty pleas for antitrust violations by executives of Artic Glacier and Home City; numerous civil antitrust lawsuits against Reddy Ice; and a whistleblower case filed by a former employee of a predecessor of Arctic Glacier with first-hand knowledge of the unlawful market allocation agreement alleged in the Complaint. ¶¶10-19, 42-65. Plaintiffs' allegations also implicate Brick and Janusek for knowing and reckless participation in the illegal market allocation agreement, which rendered Defendants' Class Period statements false and misleading. *See, e.g.*, ¶¶51-52. Accordingly, Plaintiffs sufficiently allege that Defendants issued false and misleading statements relating to an undisclosed illegal anticompetitive agreement.

---

[10] The Sixth Circuit has neither expressly embraced nor rejected the group pleading doctrine subsequent to the passage of the PSLRA, although the Court has declined to overturn a district court's application of the doctrine. *See Cardinal Health*, 426 F. Sup.2d at 743-744 and n.67 (finding that the specificity required by the PSLRA is not eviscerated by the group published doctrine) (citing *In re Century Bus. Servs. Sec. Litig.*, 2002 U.S. Dist. LEXIS 26964, at *46 (N.D. Ohio June 27, 2002)). In *Cardinal Health*, the court held that plaintiffs were entitled to the group pleading presumption to attribute corporate misstatements to high-level executives responsible for day-to-day operations and issues related to financial performance and who signed corporate disclosure statements or participated in conference calls with analysts. *Id.* at 744. Likewise, Plaintiffs here are entitled to the group pleading presumption to attribute Reddy Ice's misstatements and omissions to the Individual Defendants, all of whom were high-level executives and were responsible for the Company's operations and reported results, and signed and certified corporate documents and/or participated in earnings conference calls. ¶¶29, 30, 31, 32, 33.

*Sotheby's*, 2000 WL 1234601, at *5-4 (holding that plaintiffs sufficiently alleged a securities violation with respect to statements that would lead the reasonable investor to believe that a defendant was not engaging in illegal anticompetitive conduct).

Further, Plaintiffs do not allege that the mere existence of the Ethics Code rendered Defendants' compliance statements false and misleading as Defendants' assert. Defs. Br. at 10 n.3. Rather, Plaintiffs allege that statements within the Company's SEC Filings were rendered false and misleading by Defendants' knowing engagement in an on-going unlawful anti-competitive conspiracy with Arctic Glacier and Home City. At issue are the materially false and misleading statements and omissions made by Defendants, not whether the Defendants were ultimately charged with a crime. *Menkes*, 2006 U.S. Dist. LEXIS 42644, at *18 (holding that plaintiffs sufficiently alleged a securities violation for anticompetitive conduct, even in the absence of a formal indictment or conviction).

### C. Plaintiffs Allege A Plausible Scheme of Knowing and Reckless Illegal Conduct From Which The Court Can Infer A Strong Inference of Scienter

The PSLRA provides that a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); *see also Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (noting that scienter is defined as "a mental state embracing intent to deceive, manipulate or defraud"). Allegations evidencing Defendants' knowledge of the falsity of their statements or recklessness may effectively plead scienter. *Cardinal Health*, 426 F. Supp. 2d at 718. In addition, courts look to other circumstantial evidence inferring scienter, including a defendant's motive and opportunity to commit the fraud. *Helwig*, 251 F.3d at 550-51.[11]

---

[11] In *Helwig*, the Sixth Circuit identified a number of other non-exhaustive factors usually relevant to scienter, including insider trading at a suspicious time or in an unusual amount, divergence between internal reports and external statements on the same subject, the disregard of current information, the self-interested motivation of defendants to save their salaries or jobs, and the closeness in time between defendants' misstatements and the disclosure of the fraud. 251 F.3d at 552.

In *Tellabs*, the U.S. Supreme Court reiterated that district courts faced with a Rule 12(b)(6) motion to dismiss a securities fraud claim must accept all factual allegations in the complaint as true and also stated that scienter allegations *must* be considered collectively and holistically. *Tellabs*, 551 U.S. 308 at 321 (emphasis in original). Prior to *Tellabs*, the Sixth Circuit had concluded that the "'strong inference' requirement means that plaintiffs are only entitled to the most plausible of competing inferences." *Helwig*, 251 F.3d at 553. *Tellabs* replaced this standard with a less onerous requirement, holding that Plaintiffs adequately plead scienter so long as "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." 551 U.S. 308 at 323. Thus, if two explanations – one culpable and the other nonculpable – are *equally* compelling, the scienter requirement has been satisfied and "the complaint should be permitted to move forward." *See Frank v. Dana Corp.*, 547 F.3d 564, 571 (6th Cir. 2008).

Plaintiffs' Complaint alleges in specific detail facts raising a strong inference that defendants acted with scienter. Plaintiffs plead that Defendants engaged in deliberate illegal conduct and knew or were seriously reckless in not knowing that their public disclosures contained false statements and omissions of material fact. Plaintiffs also allege that Defendants materially benefited from the illegal market allocation through insider sales and had motive and opportunity to conceal their illegal scheme. *See, e.g.*, ¶¶42, 166, 168, 171, 177. Such facts viewed holistically, with all reasonable inferences, raise a strong inference of scienter, and Defendants' motions to dismiss should be denied.

1.  **Defendants Engaged in Deliberate Illegal Conduct**

Allegations that a defendant engaged in "deliberately illegal behavior" can give rise to a strong inference of scienter. *See Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000). Indeed, in *Novak*, the Second Circuit, like other Circuits, developed certain non-exhaustive factors to demonstrate scienter and held that plaintiffs may sufficiently plead conscious misbehavior through allegations of deliberate illegal conduct. *Id. See also Sotheby's*, 2000 WL 1234601 *3

(same) (citing *Novak*); *accord St. Paul Travelers*, 2006 WL 2735221, at **7-8, *12 (pervasive illegal kickback scheme supported a strong inference of scienter).  Courts from numerous Circuits have followed the Second Circuit's *Novak* decision in holding that a strong inference of scienter arises if the defendant engaged in deliberately illegal misconduct.[12] Similarly, here, this Court should hold that Defendants' deliberate illegal behavior demonstrates scienter.

The Sixth Circuit has endorsed a fact-sensitive approach to pleading scienter, stating "recklessness in securities fraud is an untidy, case-by-case concept" and "[w]e decide cases on facts, not labels." *Helwig*, 251 F.3d at 551. Thus, while compiling a list of helpful factors, which did not include deliberate illegal behavior, the Court refused to disregard "any set of facts as insufficient as a matter of law" to produce a strong inference of scienter.  *Id.* at 552.  Here, Plaintiffs have alleged compelling facts demonstrating that Reddy Ice engaged in deliberate illegal conduct in violation of U.S. antitrust laws.  ¶¶42-65.  In addition to disclosing a raid at Reddy Ice by the FBI pursuant to a search warrant in connection with the DOJ's investigation into illegal collusive practices in the packaged ice industry, Reddy Ice terminated Ben Key for his association "with matters that were under investigation" by the DOJ. ¶151.  Reddy Ice had previously admitted that the DOJ was investigating anti-competitive conduct in the packaged ice industry. ¶127.  McNulty and Plaintiffs' confidential witnesses also confirm Reddy Ice's illegal participation in illegal anti-competitive behavior. ¶¶44-60.

Defendants suggest that Reddy Ice was engaged in nothing more than lawful competition pursuant to a non-compete agreement.  Def. Mem. at 5.[13]  To the extent that Reddy Ice and its

---

[12] Courts in the: 1) Third Circuit, *see, e.g., In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 284 (D.N.J. 2007); 2) the Fifth Circuit, *see, e.g., In re Fleming Cos. Secs. & Derivative Litig.*, 2004 U.S. Dist. LEXIS 26488, at *33 (E.D. Tex. June 10, 2004); 3) the Seventh Circuit, *see, e.g., In re Motorola Secs. Litig.*, 2004 U.S. Dist. LEXIS 18250, at *89 (N.D. Ill. Sept. 9, 2004); 4) the Eighth circuit, *see, e.g., Kushner v. Beverly Enters.*, 317 F.3d 820, 827 (8th Cir. Ark. 2003); 5) the Tenth Circuit, *see, e.g., City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1260 (10th Cir. Okla. 2001); and 6) the D.C. Circuit, *see, e.g., Burman v. Phoenix Worldwide Indus.*, 2006 U.S. Dist. LEXIS 46071, at *16 (D.D.C. July 7, 2006); all hold that deliberate illegal behavior can demonstrate a strong inference of scienter.

[13] In support of this claim, Defendants rely on an asset purchase agreement entered into by Reddy Ice's non-public predecessor in 2001 (prior to Arctic Glacier's purchase of the California ice

predecessors used any lawful non-compete agreement in an unlawful way to launch an illegal market allocation conspiracy, such agreement is not exculpating as Defendants suggest. Moreover, it is simply not plausible that the FBI and DOJ would issue subpoenas, conduct wiretaps and raid Reddy Ice for lawful conduct, or that numerous state Attorneys Generals would launch multi-state investigations, and Ben Key would have been terminated if a written contract could easily demonstrate that Reddy Ice's competitive conduct was lawful. In contrast, Plaintiffs' alleged facts viewed holistically demonstrate Defendants' deliberate illegal behavior and compel a strong inference of scienter.

### 2. Defendants Knew or Recklessly Disregarded that the Market Allocation Agreement Was Unlawful

Plaintiffs make specific allegations regarding all of the Individual Defendants to show that they had actual knowledge of or recklessly disregarded the illegality of Reddy Ice's anti-competitive market allocation agreements. ¶¶177-79. Specifically, the Complaint states that defendant Brick used a connection with someone he knew at Arctic Glacier to approach Arctic Glacier's CEO to unlawfully allocate territories and to "divvy up" the California and Arizona markets and certain Midwest states in which Reddy Ice operated. ¶¶49-52. Brick also brokered the straw-man agreement, through which Reddy Ice unlawfully agreed to allocate territories with Arctic Glacier after it purchased Reddy Ice's manufacturing and distribution facilities in California. ¶53, 181. Brick also attended a meeting in 2006 with Ben Key and others executives from Reddy Ice and Arctic Glacier in 2006 to discuss final execution of Reddy Ice's and Arctic Glacier's agreement to allocate the California and Arizona packaged ice markets. ¶56. These facts more than sufficiently demonstrate that Brick knew or recklessly disregarded the obvious dangers of Reddy Ice's unlawful market allocation agreements

---

consortium and 4 years prior to Reddy Ice's IPO in 2005) and which expired years before the FBI raided Reddy Ice's headquarters and Ben Key was terminated. Def. Mem. at 2-3 (citing Exhs. D, F to Janusek Decl.). Also, the purported non-compete agreement was limited to a specific area in California, and Plaintiffs' have alleged a nationwide illegal allocation of sales territories and customers. *See* ¶¶43-45, 62; McNulty Compl. ¶36.

With respect to Janusek, the Complaint alleges that he attended a presentation during the annual plant managers' meeting in which Weaver spoke about the non-compete agreement, and also at which attendees expressed an understanding of the terms of the ongoing *unlawful* agreement. ¶51. Janusek also attended the meeting in 2006 with Ben Key, Brick and other executives from Reddy Ice and from Arctic Glacier to discuss execution of Arctic Glacier's agreement to unlawfully allocate packaged ice markets. ¶56.    Therefore, the Complaint adequately alleges that Janusek had knowledge of or recklessly disregarded the obvious dangers of Reddy Ice's unlawful market allocation agreements.

When the defendant is a corporate entity, like Reddy Ice, allegations in the complaint create a strong inference when someone whose intent can be imputed to the corporation acted with the requisite scienter. *See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 197 (2d Cir. 2008); s*ee also Kahn*, 2009 U.S. Dist. LEXIS 35474, * 27 ("[I]t is a matter of settled law that the scienter of corporate executives may be imputed to corporate entities.").   All of the Individual Defendants' scienter, as well as Ben Key's scienter, are imputed to Reddy Ice.  ¶¶48, 49, 51, 168.

The facts and statements (and related material omissions) alleged in this case for Reddy Ice and the Individual Defendants are "of present or historical fact;" thus recklessness suffices to establish Defendants' scienter. *Helwig*, 251 F.3d at 552 (the standard "in [the Sixth Circuit] is recklessness for statements of present or historical fact and actual knowledge in the case of forward-looking statements.").   The Sixth Circuit defines recklessness as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *Id.* at 550.  *See also Cardinal Health*, 426 F. Supp. 2d at 718 ("While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it.").

Defendants' conscious disregard of obvious dangers of violating antitrust laws is sufficient indicia of recklessness to demonstrate scienter.  *See St. Paul*, 2006 WL 2735221, at *4 (obvious disregard of specific acts of anticompetitive conduct is sufficient to raise a strong inference of scienter); *Menkes*, 2006 U.S. Dist. LEXIS 42644, at *4-5 (scienter alleged where

16

employees were or should have been aware of anticompetitive conduct to allocate customers and "carved up the world"); *Marsh*, 501 F. Supp. 2d at 483 (awareness, reckless disregard and complicity in improper business practices by particular corporate employees is sufficient to plead scienter); Moreover, it is not plausible that executives like Brick (CEO) and Janusek (CFO and Executive Vice President) were not aware of a nationwide market allocation agreement between Reddy Ice and its two main competitors, as Defendants are presumed to know about the matters central to the Company's operations. *See Cardinal Health,* 426 F. Supp. 2d at 724 ("Courts may presume that high-level executives are aware of matters related to their business' operation where the misrepresentations or omissions pertain to 'central, day-to-day operational matters.'"). Plaintiffs thus have pled facts that create a strong inference that Defendants Brick, Janusek and Reddy Ice acted with scienter. ¶¶48, 51, 53.[14]

### 3. The Existence of the DOJ Investigation Supports a Finding that Defendants Acted With Scienter

The DOJ's investigation of the packaged ice industry and related FBI raid of Reddy Ice serves to bolster a strong inference of scienter. *See Eastwood Enters., LLC v. Farha*, 2009 U.S. Dist. LEXIS 88945, *13 (M.D. Fla. Sept. 28, 2009) (investigations by various government agencies serves to bolster the inference of scienter). Indeed, a government investigation is not altogether irrelevant to the scienter analysis as Defendants suggest. To the contrary, courts commonly hold that pending government investigations are relevant and provide notice of

---

[14] Moreover, the allegations demonstrating scienter based on the Confidential Witnesses' personal knowledge of the Defendants' misconduct should not be discounted as Defendants argue. Def. Mem. at 13 (citing *Omnicare*). Defendants seek to discount the specific facts provided by former Reddy Ice employees who have first-hand knowledge of Defendants' illegal anti-competitive conduct. The facts provided by Plaintiffs' confidential witnesses stand in stark contrast to the general allegations rejected in *Omnicare*. 583 F.3d at 946. In *Omnicare*, the court discounted a confidential witness's accusations particularly because the plaintiffs had not provided *any* details regarding that witness besides the title of his position. The Reddy Ice Confidential Witnesses are described in detail, and all occupied positions at the Company that provided them with personal knowledge of Defendants' misconduct. ¶¶46, 47, 54, 57. Altogether, the number of confidential witnesses, the level of detail of their allegations, and the positions held by them compel a strong inference Defendants acted with scienter. *Accredo Health*, 2005 U.S. Dist. LEXIS at *47.

possible fraud. *Eastwood Enterprises,* 2009 U.S. Dist. LEXIS 88945, *14 (citing *In re Hamilton Bankcorp, Inc.*, 194 F. Supp. 2d 1353, 1359 n. 4 (S.D. Fla. 2002); *see also In re Lernout & Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 165, 168 (D. Mass. 2002) (finding that an ongoing SEC investigation was a red flag indicative of misconduct).

The internal investigation at Reddy Ice, which was triggered by the DOJ's investigation and FBI raid of Company headquarters, confirmed that at least one executive at Reddy Ice (Ben Key) was participating in illegal antitrust activities. ¶¶10, 61. Nevertheless, Defendants continued to materially mislead investors through false statements and omissions following disclosure of the DOJ investigation. ¶¶129, 138, 145, 147. Specifically, the Company's 2007 Form 10-K stated that "Senior Management is not aware that the Company has engaged in anticompetitive behavior, or other activities, which violate the antitrust laws." ¶129. Both the DOJ's investigation of the packaged ice industry and the Company's related internal investigation resulting in the termination of Ben Key support a strong inference scienter.[15]

### 4. Defendants' Public Disclosures Regarding Lawful Compliance With Antitrust Laws Diverged From Their Internal Conduct

Defendants' knowing and reckless violations of the Company's published Ethics Code further supports the scienter requirement. *See Helwig,* 251 F.3d at 551. The Complaint alleges facts indicating that Defendants were at least reckless by consciously disregarding the obvious illegality of the anti-competitive market allocation agreement. Under *Helwig,* 251 F.3d at 552, the closeness in time of Defendants' alleged false statements and omissions regarding strict, ethical adherence to a code prohibiting antitrust violations (*e.g.,* ¶133), and the Company's denial of any violations (¶129), followed by Ben Key's subsequent termination 6 months later (¶151) compel an inference of scienter. Also, because Defendant Brick stated that he signed the Ethics Code and read it carefully (¶182), and the Ethics Code also was published in Reddy Ice's SEC filings, which were signed by Defendants Brick, Janusek and Weaver. ¶¶80, 86-86, 107,

---

[15] The timing of the resignations of Defendants Weaver and Booth in December 2007 and January 2008, respectively, also supports a strong inference of scienter. ¶¶122, 184.

109, 133, Defendants' specific written confirmation of compliance with antitrust laws went well beyond an assertion of general legal compliance. Thus, the *Omincare* decision upon which Defendants heavily rely is inapposite. *Omnicare*, 583 F.3d at 945 (liability "can attach to a company's general assertion of legal compliance" only where a complaint alleges that defendants knew such statements "were untruthful"). Plaintiffs' allegations, viewed holistically as this Court must, sufficiently demonstrate that Brick and Janusek had actual knowledge or were seriously reckless in disregarding and disavowing any antitrust violations.

**5.    Defendants' Insider Trading and Lucrative Compensation Packages Support Plaintiffs' Scienter Allegations**

Plaintiffs' allegations of motive and opportunity, considered in conjunction with the remainder of their allegations, on the whole raise an inference of recklessness and knowing disregard. *See Cardinal Health*, 426 F. Supp. 2d at 726; *In re Telxon Corp. Sec. Litig.*, 133 F. Supp. 2d 1010, 1028 (N.D. Ohio 2000). Motive and opportunity can be catalysts to fraud and so serve as "external markers to the required state of mind." *Id.* There is little doubt that Defendants had the opportunity to allocate markets. ¶14 (Key attended trade association meetings relating to the packaged ice industry); ¶56 (Brick and Janusek attended a meeting with Arctic Glacier executives). To demonstrate motive, a plaintiff must show "concrete benefits that could be realized by one or more of the false statements and wrongful disclosures alleged." *Cardinal Health*, 426 F. Supp. 2d at 726.Plaintiffs here have alleged specific motives for Defendants to perpetrate fraud. Specifically, "insider trading at a suspicious time or in an unusual amount comprises one of the 'fixed constellations of facts that courts have found probative of securities fraud.'" *Helwig*, 251 F.3d at 552. There is no bright line test as to the amount of percentage of stock that must be sold to constitute a "suspicious amount." *Id.* Ultimately, the determination of whether insider sales were "suspicious" is highly context-specific and depends on the other allegations offered in the Complaint.

Taking advantage of the artificial inflation in Reddy Ice's stock price caused by their illegal anticompetitive conduct, Reddy Ice controlling shareholders and insiders, including

Defendants Janusek and Brick, collectively sold more than 7.2 million shares of the Company's stock during the Class Period for gross proceeds of $148.3 million. ¶¶ 168-70. In total, during the Class Period, Brick receive gross proceeds of more than $2 million and Janusek received gross proceeds of more than $1.1 million from their Reddy Ice sales. Defendants' insider trading allowed them to reap substantial profits from their illegal conduct. *See In re Qwest Commc'ns Int'l Sec. Litig.*, 396 F. Supp. 2d 1178, 1196 (D. Colo. 2004) (holding that even insider trading proceeds of "$410,000 is a substantial sum, and reasonably can be seen as a significant gain from the alleged deception").

In addition to their insider trading, the Individual Defendants were motivated to conceal their illegal anti-competitive scheme to protect their lucrative compensation packages. During the Class Period, Brick and Janusek almost doubled their compensation with incentive compensation ($3.5 million and $1.6 million total, respectively). ¶ 172. Indeed, Plaintiffs do more than just present "bare allegations." *See Cardinal Health*, 426 F. Supp. 2d at 737-38 When viewed in conjunction with other facts, the Individual Defendants' self-interested motivation to save and enhance their salaries and pay-for-performance compensation present a strong inference of scienter.

Plaintiffs' sufficient allegations of a number of *Helwig* factors, combined with allegations of a deliberate illegal behavior, cumulatively raise cogent and compelling inference that Defendants acted "intentionally, consciously, or, at the very least, recklessly, in violation of the securities laws." *Cardinal Health*, 426 F. Supp. 2d at 741.

## III.  CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully submit that Defendants' Motion to Dismiss should be denied in its entirety.[16]

DATED:  January 18, 2010

---

[16] If the Court finds any of Plaintiffs' claims to be deficient, Plaintiffs request leave to replead. *See* Fed. R. Civ. P. 15(a) (noting that leave to replead should be "freely given").

Respectfully submitted,

**BARROWAY TOPAZ KESSLER**
**MELTZER & CHECK, LLP**

*/s/ Gregory M. Castaldo*
GREGORY M. CASTALDO
LAUREN WAGNER PEDERSON
MARK S. DANEK
280 King of Prussia Road
Radnor, PA 19087
(610) 667-7706
(610) 667-7056 (fax)
gcastaldo@btkmc.com
lpederson@btkmc.com
mdanek@btkmc.com

*Lead Counsel for Lead Plaintiffs and the Class*

**COUGHLIN STOIA GELLER**
**RUDMAN & ROBBINS LLP**
DEBRA J. WYMAN
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
debraw@csgrr.com

*Counsel for Plaintiff Lawrence Diamond*

**ZAUSMER, KAUFMAN, AUGUST,**
**CALDWELL & TAYLOR, P.C.**
MARK. J ZAUSMER (P31721)
KARYN A. THWAITES (P66985)
31700 Middlebelt Road, Suite 150
Farmington Hills, MI 48334
Telephone:  248/851-4111
248/851-0100 (fax)
mzausmer@zkact.com
kthwaites@zkact.com

*Liaison Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that January 18, 2010, I electronically filed Lead Plaintiffs' Brief In Opposition To The Motion To Dismiss The Consolidated Class Action Complaint Filed By Defendants Reddy Ice, Brick And Janusek with the Clerk of the Court using the ECF system which will send notification of such filing to:  David A. Ettinger, James R. Nelson, Raymond W. Henney, and Samuel B. Isaacson.

*/s/ Gregory M. Castaldo*