UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
DETROIT DIVISION

| | |
|---|---|
| JOHN CHAMBERLAIN, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br> vs.<br><br>REDDY ICE HOLDINGS, INC., *et al.*,<br><br>      Defendants. | Civil Action No. 2:08-cv-13451-PDB-SDP<br><br>CLASS ACTION |

**DEFENDANT RAYMOND BOOTH'S REPLY TO LEAD PLAINTIFFS'
BRIEF IN OPPOSITION TO THE MOTION TO DISMISS THE
CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF AUTHORITIES

**Cases**

*Cardinal Health*, 426 F. Supp. 2d at 724. ............................................................................... 1, 3, 4

*Huffy Corp. Securities Litigation*, 577 F.Supp.2d 968, 986 (S.D. Ohio 2008) ............................... 2

*Konkol v. Diebold, Inc.*, 590 F.3d 390, 397 (6th Cir. 2009 ........................................................ 1, 3, 5

*PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 688 (6th Cir. 2004) ........................................ 1, 4, 5

i

Individual Defendant Raymond Booth respectfully submits the following reply to Lead Plaintiffs' Brief in Opposition to the Motion to Dismiss the Consolidated Class Complaint Filed by Defendant Raymond Booth.

## I. PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED SCIENTER AGAINST MR. BOOTH.

### A. Mere Allegations Regarding Mr. Booth's Status As A "High-Ranking Executive" Are Insufficient To Support An Inference Of Scienter.

Plaintiffs suggest that this Court may infer scienter from the mere fact that Mr. Booth was a "high-ranking executive with Reddy Ice." But the Sixth Circuit has repeatedly recognized that "fraudulent intent cannot be inferred merely from the Individual Defendants' positions in the Company and alleged access to information." *Konkol v. Diebold, Inc.*, 590 F.3d 390, 397 (6th Cir. 2009 (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 688 (6th Cir. 2004)  Even in *Cardinal Health*, the case on which Plaintiffs rely for this dubious proposition, the court did not infer scienter based on allegations of "high ranking" corporate status. There, the court explained "[t]he Plaintiff's Complaint itself must allege specific facts or circumstances reflecting the Individual Defendant's knowledge." *In re Cardinal Health*, 426 F. Supp. 2d at 724. In concluding that the plaintiffs fell short of that standard, the *Cardinal Health* court noted deficiencies that are equally present in the case at bar:

> In this case, Plaintiffs allegations lump all the Individual Defendants together, stating that their positions as high-level executives show that they must have misled investors as to Cardinal's financial health. Plaintiffs' efforts to cite particular Cardinal press releases and statements that *support* these conclusory allegations still do not raise their allegations to the heightened level of specificity required by the PSLRA.

(*Id.* at 725) (emphasis in original)

Plaintiff's Amended Consolidated Complaint has virtually no specific allegations relating to Mr. Booth, beyond simply noting the positions he held with Reddy Ice, and therefore does not

1

even approach the heightened pleading threshold necessary to state a claim against Mr. Booth under the PSLRA. Plaintiffs insist that this defect does not doom their claim against Mr. Booth, however, because they can stick Mr. Booth with a number of allegedly misleading statements and omissions made in various Reddy Ice disclosure documents under the so-called "group pleading" or "group published information doctrine." As noted in Mr. Booth's initial brief on this issue, courts in this circuit have rejected this approach as "antithetical to the pleading requirement for scienter set forth in § 21D(b) of the PSLRA." I*n re Huffy Corp. Securities Litigation*, 577 F.Supp.2d 968, 986 (S.D. Ohio 2008).

Plaintiffs ignore the court's ruling in *In re Huffy Corp.*, and instead suggest this Court should follow *Cardinal Health*, a ruling issued by the same federal district court two years before the *Huffy* decision. Plaintiffs note that the *Cardinal Health* court "held that plaintiffs were entitled to the group pleading presumption to attribute corporate misstatements to high-level executives responsible for day-to-day operations and issues related to financial performance and ***who signed corporate disclosure statements or participated in conference calls with analysts***." (Pl. Resp. Brief, dkt 46, p. 7) (emphasis added) While that may accurately state the result in *Cardinal Health*, it has nothing to do with the claim alleged against Mr. Booth. Nowhere do Plaintiffs allege that Mr. Booth signed any of the "corporate disclosure statements" (including forms 10-Q, 10-K or quarterly earnings releases) upon which Plaintiffs base their claim. Nor is there any allegation that Mr. Booth participated in any conference calls with analysts, or engaged in any public communications of any sort with regard to Reddy Ice.

One of the individual defendants in *Cardinal Health* – Gary Jensen -- was situated precisely like Mr. Booth in this regard. Analyzing the claims against Mr. Jensen, the court observed:

2

> Although Plaintiffs have alleged facts showing that Defendant Jensen was a high-level executive, they have not shown that he had any involvement in certifying corporate documents to the extent of the other Individual Defendants.  Also, Plaintiffs have not pled facts showing that Jensen ever participated in conference calls with analysts and investors."

(*Cardinal Health*, 426 F. Supp. 2d at 744)  Based, at least in part, on this analysis, the Court concluded that the *Cardinal Health* plaintiffs had not adequately pleaded scienter against Mr. Jensen and dismissed him from the case.  That same result should apply to Mr. Booth here.

> B.  <u>Mr. Booth's Sales of Reddy Ice Stock Do Not Create The Requisite "Strong Inference" of Scienter, Particularly Where Plaintiffs Have Failed To Plead Any Facts Suggesting That Mr. Booth's Trading Pattern Was Unusual or Suspicious.</u>

Plaintiffs next allege that this Court may infer scienter from the mere fact that Mr. Booth sold Reddy Ice stock during the Class Period.  As a very recent Sixth Circuit case makes clear, however, Plaintiffs have not pleaded facts adequate to support a finding of scienter based on Mr. Booth's stock sales.  In *Konkok v. Diebold, Inc.*, 590 F.3d 390, 399-400 (6th Cir. 2009) the Court held that "for individual defendants' stock sales to raise an inference of scienter, plaintiffs must provide a meaningful trading history for purposes of comparison to the stock sales within the class period."  The Court further clarified that:

> A 'meaningful trading history' requires information on non-Class Period sales, the amount of stock retained by the Defendants or, as the Defendants allege, whether the amount of stock owned by the Defendants actually increased during the class period.  Absent key background information confirming their suspicious nature, the stock sales in February 2005 do not by themselves raise a strong inference of scienter.

As in *Konkol*, the Plaintiffs in the present case have failed to allege a "meaningful trading history" sufficient to provide a basis for comparison between Mr. Booth's trading history before, during and after the Class Period.  Absent that, under controlling Sixth Circuit precedent, there can be no inference of scienter based on Mr. Booth's stock sales.

3

     C.    <u>Mr. Booth's Incentive Compensation Arrangement Does Not Provide A Basis For A Strong Inference of Scienter.</u>

The Sixth Circuit has made clear that bare allegations that corporate officers are entitled to incentive-based compensation are insufficient to raise a strong inference of scienter. As the Court has noted, "All corporate managers share a desire for their companies to appear successful. That desire does not comprise a motive for fraud. . . . Neither does an executive's desire to protect his position within a company or increase his compensation." *PR Diamonds*, 364 F.3d at 690 (internal citations omitted). Plaintiffs have not alleged specific facts that would support a finding of scienter, beyond merely noting the unremarkable fact that – like most executives – Mr. Booth's compensation was related, in part, to Reddy Ice's overall financial success. Under controlling Sixth Circuit precedent, this is not enough to support a "strong inference" of scienter.[1]

     D.    <u>The Circumstances Surrounding The May 2006 Secondary Offering Do Not Provide A Basis For A "Strong Inference Of Scienter" Against Mr. Booth.</u>

Plaintiffs finally suggest that the May 2006 Secondary Offering somehow provides a basis for a "strong inference of scienter" against Mr. Booth. This claim relies on a combination of two of the failed bases for scienter discussed above. First, Plaintiffs allege that the Secondary Offering Registration Statement and Prospectus were misleading, and that provides a basis for inferring scienter. But, as previously noted, those disclosure documents were only signed by Messrs. Brick, Weaver and Janusek. Mr. Booth did not sign these documents, nor did he sign

---

[1] Plaintiffs rely on the district court's analysis of this issue in *Cardinal Health*, which appears to depart without explanation from the controlling precedent established by the Sixth Circuit Court of Appeals in *PR Diamonds*. In any event, even the *Cardinal Health* court recognized that, although "the Court may consider Plaintiffs' motivation to keep Cardinal's stock price high in order to profit from their executive compensation packages," the existence of an incentive compensation plan "does not amount to a *strong* inference of scienter." *In re Cardinal Health*, 426 F. Supp. 2d at 738 (emphasis in original).

4

any of the other disclosure documents that supposedly provide a basis for scienter under the "group pleading doctrine."

Second, Plaintiffs note that Mr. Booth, along with other individual defendants, sold some Reddy Ice stock in connection with this offering. As noted in Section B of this Reply Brief, however, the Sixth Circuit recently has clarified that mere allegations of stock sales without also pleading facts sufficient to identify a "meaningful trading history" for Mr. Booth are insufficient to base any inference of scienter, much less the "strong inference" required under the PSLRA.

II. **BECAUSE PLAINTIFFS CANNOT PLEAD FACTS SUFFICIENT TO STATE A CLAIM AGAINST MR. BOOTH UNDER SECTION 10(b) AND RULE 10b-5, PLAINTIFFS CANNOT STATE A CLAIM FOR CONTROL PERSON LIABILITY UNDER SECTION 20(a).**

Plaintiffs incorrectly state that "regardless of whether Booth is liable for a violation of Section 10(b) and Rule 10b-5, Booth is liable as a control person or Reddy Ice under Section 20(a). To the contrary, the Sixth Circuit has made clear that "[s]uch a control-liability claim is contingent upon the investors' ability to establish an 'underlying' violation of Section 10(b) and Rule 10b-5." *Konkol v. Diebold, Inc.*, 590 F.3d at 396; *PR Diamonds, Inc. v. Chandler,* 364 F.3d 671, 696 (6th Cir. 2004). Because Plaintiffs have not alleged facts sufficient to raise the strong inference of scienter necessary to support their underlying securities fraud claims, their control person liability claim against Mr. Booth is doomed as well.

Dated: February 17, 2010
      /s/ Brian J. Masternak
Dean F. Pacific (P57086)
Brian J. Masternak (P57372)
Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon NW
Grand Rapids, Michigan 49503
Telephone: (616) 752-2205
Email: dpacific@wnj.com
      bmasternak@wnj.com
Counsel for Defendant Raymond Booth

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 17, 2010, I electronically filed Defendant Raymond Booth's Reply to Lead Plaintiffs' Brief in Opposition to the Motion to Dismiss the Consolidated Class Action Complaint and Proof of Service with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel, registered electronically.

Dated: February 17, 2010

        /s/ Dean F. Pacific
Dean F. Pacific (P57086)
Brian J. Masternak (P57372)
Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon NW
Grand Rapids, Michigan 49503
Telephone: (616) 752-2205
Email: dpacific@wnj.com
      bmasternak@wnj.com
Counsel for Defendant Raymond Booth

1758367-1