**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| JOHN CHAMBERLAIN, Individually and on Behalf of All Others Similarly Situated, )<br>)<br>) | Civil Action No. 2:08-cv-13451-PDB-SDP |
| )<br>Plaintiff, )<br>vs. )<br>) | CLASS ACTION |
| REDDY ICE HOLDINGS, INC., *et al.*, )<br>) | |
| Defendants. )<br>) | Honorable Paul D. Borman<br>Magistrate Judge R. Steven Whalen |

**DEFENDANTS' OBJECTION PURSUANT TO RULE 72(a)**
**OF THE FEDERAL RULES OF CIVIL PROCEDURE**
**REGARDING THE COURT'S FEBRUARY 18, 2010 ORDER**

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, Defendants Reddy Ice

Holdings, Inc., William Brick, and Steven Janusek ("Defendants"), by their undersigned

attorneys, hereby respectfully submit this objection to the Order of the Honorable Steven Whalen

dated February 18, 2010. Specifically, Defendants request that this Court set aside the portion of

the February 18, 2010 Order that strikes Exhibits D, F, and G to Defendants' Motion to Dismiss.

## I.    FACTS AND PROCEDURAL HISTORY

On December 17, 2009, Defendants filed their 12(b)(6) Motion to Dismiss. On

January 19, 2010, Plaintiffs filed their Motion to Strike, seeking to exclude six exhibits attached

to Defendants' Motion to Dismiss. The Court thereafter referred the Motion to Strike to

Magistrate Judge Whalen for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A).

Defendants subsequently filed their response to the Motion to Strike on February 2, 2010 and

Plaintiffs replied on February 9, 2010. Following hearing, the magistrate judge issued an order

dated February 18, 2010 granting Plaintiffs' Motion to Strike "[f]or the reasons and under the terms stated on the record on February 18, 2010."

Magistrate Judge Whalen's ruling appears to rest on two bases. First, according to Judge Whalen, the disputed exhibits "go to disputed questions of fact that are more properly reserved for summary judgment." Hearing Transcript at 31 (attached hereto as Exhibit A). Second, the Asset Purchase Agreement ("APA," attached to Defendants' Motion to Dismiss as Exhibit F), which Judge Whalen referred to as "the first domino in the bunch," is not the only agreement referenced in the Complaint. Ex. A at 31–32. In particular, Judge Whalen noted the APA is "certainly a — something that's relevant to this case . . . I'll even say that it's probably integral, but it's not necessarily the only agreement." Ex. A at 31.

Defendants now object to the portion of Magistrate Judge Whalen's Order that strikes Exhibits D, F, and G as clearly erroneous.

## II.    STANDARD OF REVIEW

An order by a magistrate judge determining any non-dispositive pretrial matter referred to the magistrate under 28 U.S.C. § 636(b)(1)(A) must be reconsidered by a district court judge if the magistrate judge's order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a). A decision is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). Under Eastern District of Michigan Local Rule 72.1, a party objecting to a magistrate judge's decision must "specify the part of the order . . . to which the party objects" and "state the basis for the objection." E.D. MICH. LOCAL R. 72.1(d)(1)(A)–(B).

III.    **ARGUMENT:    EXHIBITS D, F, AND G ARE CENTRAL TO PLAINTIFFS'
CLAIMS AND SHOULD BE CONSIDERED IN DECIDING DEFENDANTS'
MOTION TO DISMISS.**

Because a plaintiff is under no obligation to attach to his complaint documents upon
which his action is based, "a defendant may introduce certain pertinent documents if the plaintiff
fails to do so." *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).  Otherwise, a
plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to
attach a dispositive document upon which it relied.  *Id.*  The need to consider pertinent
documents from *both* sides is underscored by the fact this case is governed by the PSLRA, which
requires Plaintiffs to offer facts sufficient to support a "strong inference" of scienter.  *Tellabs v.
Makor Issues & Rights, LTD*, 551 U.S. 308, 323 (2007).  While a court evaluating a motion to
dismiss must generally accept all of a plaintiff's allegations as true, when determining whether
there is a strong inference of scienter, all reasonable inferences—favorable or unfavorable to the
plaintiff—must be considered.  *See id.* ("[I]n determining whether the pleaded facts give rise to a
'strong' inference of scienter, the Court must take into account plausible opposing inferences.").
Accordingly, "to advance the purpose of the PSLRA, the Court should not adopt Plaintiffs' view
of the facts without also considering the merits of [] Defendants' assertions." *Cardinal Health*,
426 F. Supp. 2d at 714–15.  *See also Tellabs*, 551 U.S. at 323 ("The strength of an inference . . .
is inherently comparative.").

In general, "[d]ocuments that a defendant attaches to a motion to dismiss are considered
part of the pleadings if they are referred to in the plaintiff's complaint and are central to her
claim." *Weiner*, 108 F.3d at 89.  In addition, consideration of documents attached to a
defendant's motion to dismiss, which "fill[] in the contours and details" of the plaintiff's
complaint or "flesh[] out the allegations in the complaint" is appropriate and does not convert the

motion into one for summary judgment.  *See Yeary v. Goodwill Industries-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (noting consideration of materials that "simply filled in the contours and details of the plaintiff's complaint, and added nothing new" did not convert motion to dismiss into motion for summary judgment); *Rogers v. Detroit Police Dep't*, 595 F. Supp.2d 757, 766 (E.D. Mich. 2009) (noting that plaintiff's deposition, which was attached by defendant to motion to dismiss, "may be considered as fleshing out the allegations in the complaint and may therefore be referred to without converting the motion to a summary judgment motion"). Courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.  *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999).  Finally, courts "may consider the full text of the SEC filings, prospectus, analysts' reports and statements 'integral to the complaint,' even if not attached, without converting the motion into one for summary judgment under Fed. R. Civ. P. 56."  *Bovee v. Coopers & Lybrand, C.P.A.*, 272 F.3d 356, 360–61 (6th Cir. 2001).

Defendants object to the portion of Magistrate Judge Whalen's Order that strikes Exhibits D, F, and G as clearly erroneous.

**Exhibit F**

The APA (Exhibit F) is both referenced in the Complaint and integral to Plaintiffs' claims.  Throughout the Complaint, Plaintiffs allege that Reddy Ice sold its assets in California and agreed not to compete in California, as part of an illegal, market allocation scheme.  In particular, Plaintiffs allege that a consortium of companies acquired Reddy Ice's assets as a discrete transaction that was part of a broader conspiracy.  In eight separate paragraphs, Plaintiffs refer expressly to this California transaction, which features centrally in the Complaint's alleged conspiracy.  *See* Complaint at ¶¶ 15 ("Reddy Ice agreed not to compete . . . in the State of

WEST\21887496.3

California"), 43, 46 ("Reddy Ice had agreed to not compete against Arctic Glacier in California, and [] Arctic Glacier in exchange [] for the exclusive right to service California had agreed to 'stay out' of Arizona."),  49 ("Reddy Ice agreed to stay out of California . . . the unlawful agreement was entered into . . . around the same time that Reddy Ice sold most of its California ice plants"), 50 ("Reddy Ice agreed to sell its California manufacturing operations (except for a facility in Brawley, California that was near the border of Arizona) to a consortium of companies located in California"), 53 ("the consortium of companies that acquired Reddy Ice's manufacturing and distribution facilities in California was in fact a straw man set up by . . . Reddy Ice and Arctic Glacier"), 55 ("Reddy Ice and the consortium of companies entered into a 'written covenant not to compete'"), and 57 (noting "[t]he collusive agreement to allocate exclusive markets for packaged ice distribution and sale in California").  (For context, it may also be useful to recall that Arctic Glacier, after execution of the APA, acquired the consortium of California companies.  Exhibit H.).

Exhibit F is indeed the transaction referenced above: it is an APA that involves the acquisition (by a consortium of California companies) of Reddy Ice's assets in California; the timing is correct (*i.e.*, the APA was executed prior to the confidential witnesses' employment with Reddy Ice); and the APA involves a covenant by Reddy Ice not to compete in California and a covenant by the California companies (which were later acquired by Arctic Glacier) not to compete in Arizona.  But the fact which possibly most corroborates the APA as an agreement referenced by Plaintiffs is that it includes the same, very specific carve-out (assets located in Brawley, a city in Imperial County, California) alleged by Plaintiffs.  *See* Exhibit F at 3 (Section 2.4: "Right of First Refusal for the Reddy Assets in Imperial County"); Complaint at ¶¶ 50, 55 (alleging the Brawley carve-out).

Even the Magistrate Judge's comments at the hearing confirm the centrality of Exhibit F to the Complaint.  In particular, Magistrate Judge Whalen appeared to acknowledge the APA is an agreement to which Plaintiffs expressly and repeatedly refer.  Ex. A at 31 ("It's certainly a — something that's relevant to this case . . . I'll even say that it's probably integral, but it's not necessarily the only agreement.").  He emphasized, however, that the APA was merely one of several agreements alleged in the Complaint.  *Id.*  Defendants are aware of no legal precedent that would support exclusion of a document that is both integral and pertinent to the Complaint simply because it is not the only agreement alleged by Plaintiffs.

Finally, the PSLRA's stringent pleading burdens were established "to curb perceived abuses of the § 10(b) private action" such as "nuisance filings, targeting of deep-pocket Defendants, vexatious discovery requests and manipulation by class action lawyers." *Tellabs*, 551 U.S. at 320.  Yet alleging a securities fraud case that survives a motion to dismiss would be a facile accomplishment if the plaintiff could hand-pick supportive documents, while omitting pertinent documents that permit competing (and negative) inferences.  *See id.* at 323, 324 (noting the strength of an inference is "inherently comparative" and requiring courts' consideration of "opposing inferences") (noting inference of scienter "must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations"). Indeed, cherry-picking documents is not allowed.  *See Weiner*, 108 F.3d at 89 (noting a defendant may introduce pertinent documents); *Cardinal Health*, 426 F. Supp. 2d at 714–15 (noting the court should consider the defendants' side when resolving a motion to dismiss).  The APA is, for the reasons stated above, and as apparently recognized by Magistrate Judge Whalen, at the core of Plaintiffs' allegations and thus is proper for consideration in determining whether

WEST\21887496.3

Plaintiffs' securities fraud claims survive. In sum, it was clearly erroneous to strike Exhibit F from the Motion to Dismiss.

**Exhibit D**

If, as Judge Whalen noted, the APA is the "first domino," Exhibits D and G are stacked directly behind. Exhibit D, a press release issued by Easterly Investor Relations on behalf of Packaged Ice, Inc. on November 30, 2001 (the "Packaged Ice Press Release"), is a public document and discloses the Asset Purchase Agreement, which includes the "written covenant not to compete" that Reddy Ice entered into with the Mountain Water Ice Companies in 2001. Pursuant to *Weiner*, *Yeary*, and *Rogers*, documents that are central to the subject matter in the complaint and flesh out or fill in the contours and details of the plaintiff's complaint should be considered. Additionally, Plaintiffs appear to repeatedly allege the APA as one of several agreements that were secretively entered into, concealed from the public, and part of a collusive effort. *See* Complaint at ¶¶ 15, 20, 57, 72, 85, 91, 113, 114, 117, 121, 134, 139, 141, 142, 148, 149, and 179. Exhibit D thus helpfully provides discussion of the APA and illuminates a transaction that features centrally in Plaintiffs' allegations. Exhibit D is not being proffered to dispute facts about the APA, but simply to provide a full picture, and further indication, of the APA's execution. Accordingly, it was clearly erroneous to strike Exhibit D.

**Exhibit G**

It was also clearly erroneous to strike Exhibit G, excerpted pages from Reddy's Annual Report for the fiscal year ended December 31, 2001, which Packaged Ice, Inc. filed on Form 10-K with the SEC on March 8, 2002 (the "2001 10-K"). The Court may consider the full text of SEC filings regardless of whether they are attached to the Complaint so long as they are integral to statements within the Complaint. *Cardinal Health*, 426 F. Supp. 2d at 712; *Bovee*, 272 F.3d

- 7 -

at 360–61.  The 2001 10-K discusses the APA (Exhibit G at 5) and Reddy Ice's practices with regard to business transactions—in particular, that Reddy Ice enters into covenants not to compete in "substantially all acquisitions."  Exhibit G at 6.  Again, Exhibit G does not contradict any of Plaintiffs' allegations regarding the APA—nor is it being offered for that purpose.  It was clear error to strike Exhibit G.

## IV.    <u>CONCLUSION</u>

Plaintiffs' Complaint alleges, in substance, that Reddy Ice's public statements were incomplete and misleading to investors.  Allowing documents referenced in or integral to the Complaint to be attached to the Motion to Dismiss will enable the Court to consider all public statements that are pertinent, rather than just those documents hand-picked by Plaintiffs, when determining whether the Complaint should survive the pleading stage.  Exhibits D, F, and G are central to Plaintiffs' claims and thus should be considered in deciding Defendants' Motion to Dismiss.

For the foregoing reasons, Defendants respectfully request that this Court set aside the portion of the February 18, 2010 Order that strikes Exhibits D, F, and G.

Dated:  March 4, 2010.

Respectfully Submitted,

RAYMOND W. HENNEY
Michigan State Bar No. P35860
**HONIGMAN MILLER SCHWARTZ AND COHN LLP**
660 Woodward Avenue
2290 First National Building
Detroit, MI 48226
Telephone: (313) 465-7410
Fax: (313) 465-7411
rhenney@honigman.com

/s/ James R. Nelson
JAMES R. NELSON
Texas State Bar No. 14899800
**DLA PIPER LLP (US)**
1717 Main Street, Suite 4600
Dallas, TX 75201
Telephone: (214) 743-4500
Fax: (214) 743-4545
jr.nelson@dlapiper.com

SAMUEL B. ISAACSON
Illinois State Bar No. 06184323
**DLA PIPER LLP (US)**
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
Telephone: (312) 368-4000
Fax: (312) 236-7516
samuel.isaacson@dlapiper.com

*Counsel for Defendants Reddy Ice Holdings, Inc., William P. Brick and Steven J. Janusek*

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of "Defendants' Objection Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure Regarding the Court's February 18, 2010 Order" have been served on all parties of record via the Court's electronic case filing (ECF) system on this 4th day of March, 2010.

/s/ James R. Nelson
JAMES R. NELSON
**DLA PIPER LLP (US)**
1717 Main Street, Suite 4600
Dallas, TX 75201
Telephone: (214) 743-4500
Fax: (214) 743-4545
jr.nelson@dlapiper.com

WEST\21887496.3

EXHIBIT "A"

1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
2                          SOUTHERN DIVISION

3

      JOHN CHAMBERLAIN, Individually,
4     and on behalf of all others
      similarly situated,
5
                             Plaintiffs,
6
           -v-                      Case No. 08-13451
7
      REDDY ICE HOLDINGS, INC., WILLIAM
8     P. BRICK, STEVEN J. JANUSEK, JIMMY
      C. WEAVER and RAYMOND D. BOOTH,
9
                             Defendants./
10
                **PLAINTIFFS' MOTION TO STRIKE EXHIBITS**
11          **BEFORE HON. MAGISTRATE JUDGE R. STEVEN WHALEN**
                   United States Magistrate Judge
12                       673 U.S. Courthouse
                         231 West Lafayette
13                    Detroit, Michigan 48226

14                 **(Thursday, February 18, 2010)**

15    APPEARANCES:        LAUREN WAGNER PEDERSON, ESQUIRE
                          MARK S. DANEK, ESQUIRE
16                        KARYN THWAITES, ESQUIRE
                          Appearing on behalf of the
17                        Plaintiffs.

18                        JAMES R. NELSON, ESQUIRE
                          DOUGLAS C. SALZENSTEIN, ESQUIRE
19                        Appearing on behalf of Defendants
                          Reddy Ice, Brick and Janusek.
20
      COURT RECORDER:     NOT IDENTIFIED
21
      TRANSCRIBED BY:     MARIE METCALF, CVR, CM
22                        Official Court Reporter
                          257 U.S. Courthouse
23                        231 W. Lafayette
                          Detroit, Michigan 48226
24                        metcalf_court@msn.com

25

1       *(TRANSCRIPT PRODUCED FROM DIGITAL VOICE RECORDING;*
        *TRANSCRIBER NOT PRESENT AT PROCEEDINGS)*

2

3                           **TABLE OF CONTENTS**

4

5       Proceedings – Wednesday, February 18, 2010      PAGE:

6       **Mark S. Dankek sworn............................. 4**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

```
 1                         Detroit, Michigan

 2                         Thursday, February 18, 2010

 3                         At about 2:34 p.m.

 4                         *       *       *

 5              DEPUTY COURT CLERK:  All rise.

 6              The United States District Court for the

 7  Eastern District of Michigan is now in session, the

 8  Honorable R. Steven Whalen, United States Magistrate

 9  Judge presiding.  You may be seated.

10              The Court calls case number 08-13451,

11  Chamberlain vs. Reddy Ice.

12              THE COURT:  Good morning.  Could I have

13  counsels' appearances for the record, please?

14              MS. PEDERSON:  Lauren Wagner Pederson for

15  plaintiffs, Your Honor.

16              MR. DANEK:  Mark Danek, Barroway Topaz,

17  for plaintiffs.

18              MS. THWAITES:  Karyn Thwaites, from

19  Zausmer, Kaufman for plaintiffs.

20              MR. NELSON:  James Nelson, DLA Piper for

21  Defendants Reddy Ice, Brick and Janusek.

22              MR. SALZENSTEIN:  Douglas Salzenstein of

23  Honigman Miller for the same defendants, Your Honor.

24              THE COURT:  Okay, good.  Now, first,

25  before we get started, I understand there's an attorney
```

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

```
1        to be sworn in; is that correct?
2                        MR. DANEK:  Yes, Your Honor.
3                        THE COURT:  Please step up to the lectern.
4                        Who's being sworn in?
5                        MR. DANEK:  I am.
6                        THE COURT:  Oh, you're being sworn in?
7                        MR. DANEK:  Yes.
8                        THE COURT:  Okay.  Do we have somebody
9        moving for your admission?
10                       MS. THWAITES:  I am.
11                       THE COURT:  Why don't you step up also?
12                       MS. THWAITES:  Yes.
13                       THE COURT:  And could I have a card, if
14       you could give that to my clerk?
15                       MR. DANEK:  Yes.
16                       THE COURT:  Thank you.
17                       Go ahead, make your motion.
18                       MS. THWAITES:  I'm Karyn Thwaites.  I'm an
19       attorney in this district, and I'm moving for the
20       admission of Mark Danek.
21                       THE COURT:  Okay, very good.
22                       Okay, Mr. Danek, could you raise your
23       right hand, please?
24                       Do you solemnly swear under penalty of
25       perjury that you will conduct yourself as an attorney and
```

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1      counselor of this Court with integrity and respect for

2      the law, that you have read and will abide by the

3      civility principles approved by this Court and that you

4      will support and defend the Constitution and laws of the

5      United States?

6                      MR. DANEK:  I do.

7                      THE COURT:  Very good.  I'll sign the

8      card.  And welcome to Detroit.

9                      MR. DANEK:  Thank you.

10                     THE COURT:  All right.  We have before us

11     the plaintiffs' motion to strike certain exhibits from

12     the defendants' motion to dismiss.

13                     So who's going to argue on behalf of the

14     --

15                     MR. DANEK:  I am, Your Honor.

16                     THE COURT:  All right, Mr. Danek.  Step

17     right up to the lectern.

18                     MR. DANEK:  Good morning, Your Honor.  The

19     issue before the Court is whether documents outside the

20     pleadings attached to defendants' motion to dismiss

21     should be stricken from the record.

22                     To start, I would like to give Your Honor

23     a little background to the case.  This is a securities

24     class action based upon public statements issued by

25     defendants.

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1                    Plaintiffs allege that defendants

2       knowingly and recklessly omitted material information

3       regarding nationwide illegal agreements between Reddy Ice

4       and two of its key competitors in violation of U.S.

5       antitrust laws.

6                    The unlawful agreements alleged in the

7       complaint sparked a slew of civil lawsuits pending before

8       this court and resulted in an FBI raid of Reddy Ice's

9       Dallas, Texas headquarters in connection with the United

10      States Department of Justice antitrust investigation into

11      Reddy Ice and its two key competitors.

12                   In support of their motion to dismiss,

13      defendant submitted a sworn affidavit from a named

14      defendant that attempts to introduce authenticated

15      evidence as if in support of a motion for summary

16      judgment.  The evidence submitted by defendants' attempts

17      to prematurely raise a fact-based defense to the

18      complaint.  This is wholly improper.

19                   THE COURT:  It might be helpful -- I think

20      there are six exhibits, I believe?

21                   MR. DANEK:  Yes, Your Honor.

22                   THE COURT:  Okay.  It might be helpful --

23      and I understand the -- your overarching argument, and

24      correct me if I'm wrong, is that this material is not

25      objectively verifiable, it's not appropriate for judicial

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1    notice and would be more appropriate for a summary

2    judgment motion than for a 12(b)(6) motion.

3                    MR. DANEK:  Yes, Your Honor.

4                    THE COURT:  Does that pretty much sum it

5    up?

6                    At this point in your litigation has any

7    discovery taken place?

8                    MR. DANEK:  No, Your Honor.  Under the

9    Private Securities Litigation Reform Act, upon the filing

10   of a motion to dismiss, there's an automatic stay of all

11   discovery.

12                   THE COURT:  Okay.

13                   MR. DANEK:  So we haven't had the

14   opportunity to properly refute the documents.

15                   THE COURT:  Okay.  It would probably be

16   helpful to just go through them.  And let's start with, I

17   guess, Exhibit D, the first one.  Which is a press

18   release?

19                   MR. DANEK:  Yes, Your Honor.  Exhibit D is

20   a press release from November 2001.  It was issued by

21   Packaged Ice, which apparently was the defendant, Reddy

22   Ice's predecessor company.

23                   This document is not referenced anywhere

24   in the complaint, nor is it integral to the conduct

25   alleged by plaintiffs that occurred during 2005 through

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1    2008.

2                        This press release was issued in 2001 and

3    the purpose for which it's being submitted is to raise a

4    factual dispute with plaintiffs' allegations.  So

5    therefore, plaintiffs request that this document should

6    be stricken from the record.

7                        Exhibit E, Your Honor --

8                        THE COURT:  Go ahead, yeah.

9                        MR. DANEK:  -- is a May 2001 Packaged Ice

10   press -- conference call transcript.  Like Exhibit D,

11   this document is also not referenced in the complaint.

12   And it's also a private document.  It's not objectively

13   verifiable.  And it also raises a factual challenge to

14   plaintiffs' complaint.  So therefore, plaintiffs request

15   this document also be stricken from the record.

16                        Exhibit F, Your Honor, is an asset

17   purchase agreement between Packaged Ice and several other

18   companies.  This document is not specifically referenced

19   in the complaint.

20                        THE COURT:  I think defendants' point was

21   that -- and I'll let defense counsel speak to this, is

22   that it was -- an agreement was woven into the --

23   allegations of an agreement were woven into the

24   complaint.

25                        MR. DANEK:  Right.

8

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1              Your Honor, what defendants essentially

2      allege in their motion to dismiss is that Exhibit F is

3      the entire illegal market allocation agreements that

4      plaintiff allege in the complaint.

5              That is not the case.  Exhibit F relates

6      to --

7              THE COURT:  So in your complaint, in your

8      complaint, just so I'm clear on this, was this asset

9      purchase agreement, Exhibit F, specifically referenced in

10     your complaint?

11             MR. DANEK:  No, it wasn't, Your Honor.  We

12     do acknowledge that plaintiffs do reference an asset

13     purchase agreement as well as a written covenant not to

14     compete in a handful of allegations.

15             But the way plaintiffs' allegations are

16     set up is that that asset purchase agreement that was

17     supplied to us by our confidential witnesses was executed

18     in furtherance of the overall illegal nationwide market

19     allocation agreement.

20             We like this document, Your Honor.  It

21     appears to buttress the information provided to us by our

22     confidential witnesses.  However, without the benefit of

23     discovery, we have no way of knowing at this time whether

24     or not Exhibit F is, in fact, what our confidential

25     witnesses are referring to.

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1              So therefore, it's just not properly

2      before the Court at this stage of the litigation and we

3      request that it be stricken.

4              THE COURT:  Okay.  G is portions of

5      Reddy's annual report.

6              MR. DANEK:  Yes, Your Honor.  It's from a

7      -- well, actually, it's from Packaged Ice's 2001 10-K.

8      This is issued by Reddy Ice defendant's predecessor.

9              And just -- I'm not sure if you know this,

10     Your Honor, but Packaged Ice was a public company until

11     about 2003.  It was then taken private.  And then in

12     2005, it was taken public again and is now the -- the

13     Reddy Ice Holdings that went public in 2005.

14             THE COURT:  So this exhibit is for the

15     year ending December 2001?

16             MR. DANEK:  Correct.

17             THE COURT:  When Packaged Ice was a

18     publicly traded company, correct?

19             MR. DANEK:  Correct.  But it's not the

20     current defendant in this case.  It's -- it relates to a

21     prior company.  It's just not integral to conduct the

22     plaintiffs allege that occurred between 2005 through

23     2008.

24             THE COURT:  It is a public document?

25             MR. DANEK:  It is, Your Honor.  But

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1    defendants are requesting that it be judicially noticed

2    in furtherance of their fact-based defense.

3                    Under *Cardinal Health,* it's not properly

4    the subject of judicial notice if they request the Court

5    to adopt a disputed fact as true.  And that's why

6    plaintiffs are asking that the Court strike this

7    document.

8                    THE COURT:  Exhibit H, e-mail?

9                    MR. DANEK:  Yes, Your Honor.  Exhibit H is

10    a private e-mail received by Defendant Janusek.

11                    As Your Honor is aware, an e-mail is

12    inherently a private document.  It's not objectively

13    verifiable.  It's not generally now within the territory

14    of the Court.  And also it's being submitted in

15    furtherance of defendants' fact -- premature fact-based

16    defense to plaintiffs' allegations.  So therefore, we

17    would request that it be stricken from the record.

18                    THE COURT:  And the last one is Exhibit K.

19                    MR. DANEK:  Yes.  Exhibit K, Your Honor,

20    is also a Packaged Ice 10-K from 1997.

21                    As with Exhibit G, this is also from Reddy

22    Ice's predecessor.  It's not cited anywhere in the

23    complaint.  It's not integral to the parties' dispute.

24                    And also, the purpose for which it's being

25    submitted is to improperly raise a factual dispute with

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1    plaintiffs' allegations.  So therefore, plaintiffs

2    request that the document be stricken from the record.

3                THE COURT:  Okay.  All right.  Let me hear

4    from the defendant and I'll give you a chance to respond,

5    Mr. Danek.

6                THE COURT:  Good morning.

7                MR. NELSON:  Good morning, Your Honor.

8                Did you want me to present or do you have

9    specific questions?

10              THE COURT:  Why don't you go ahead -- I

11    mean, just as a general principle and just sort of coming

12    out of the gate, these exhibits do appear to be either

13    outside of the complaint or supportive of fact-based

14    arguments.

15              So are you asking that the Court take

16    judicial notice of these exhibits?

17              MR. NELSON:  We are not necessarily asking

18    the Court to take judicial notice of these, Your Honor,

19    because we don't think that's the only criteria by which

20    the Court can consider additional documents in a motion

21    to dismiss.

22              There are multiple criteria that allow the

23    courts to consider documents in connection with a motion

24    to dismiss.

25              And I would be remiss, Your Honor, if I

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1    didn't raise the issue of the timeliness of the filing of

2    the motion.  I presume the Court has --

3              THE COURT:  I have read that argument and

4    the response.  Apparently, the response to your motion

5    was filed before the motion to strike.  The response was

6    filed, I think, on a federal holiday.

7              MR. NELSON:  Yes, Your Honor.

8              THE COURT:  So I'm aware of that argument.

9    I'm going to take that under advisement.

10             But I think your time would be better

11   spent really getting to the substance of the issue.

12             MR. NELSON:  I assumed that to be the

13   case, but didn't want to not mention the argument.

14             THE COURT:  I appreciate that.

15             MR. NELSON:  Your Honor, the law allows a

16   court to consider in a 12(b)(6) motion a number of

17   different types of documents, including documents that

18   are referred to in plaintiffs' complaint and are central

19   to the claims being made, including documents that fill

20   in the contours and details of plaintiffs' complaint,

21   including documents that are public records.

22             As a matter of fact, the *Cardinal Health*

23   case, which plaintiffs cite, states specifically that SEC

24   filings, prospectuses, analysts' reports can be included

25   whether or not they are attached to the complaint.

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1              A judicial notice is one means of allowing

2      the Court to consider documents, but not the only means.

3      We would suggest to the Court and urge the Court to

4      consider some facts with regard to these particular

5      documents.

6              I would first point the Court to the

7      *Weiner* case out of the Sixth Circuit, which said a

8      defendant may introduce certain pertinent documents if

9      the plaintiff fails to do so, the purpose being so that a

10     plaintiff with a legally deficient claim can not survive

11     a motion to dismiss simply by failing to attach a

12     dispositive document on which it relied.

13              So --

14              THE COURT:  On which it relied?

15              MR. NELSON:  Where I would like the Court

16     to start --

17              THE COURT:  Well, let's start with that

18     proposition.  Defendant -- or excuse me, the plaintiff

19     fails to attach a document on which it relied.

20              Let's talk about the asset purchase

21     agreement.

22              MR. NELSON:  Yes, sir.

23              THE COURT:  Because Mr. Danek indicated,

24     "Well, okay, that exists.  There was this purchase

25     agreement, but that's not necessarily the full agreement

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1    that was contemplated in the complaint, that there's a

2    question of fact."

3                So how would you respond to his argument

4    as to that asset purchase agreement?

5                MR. NELSON:  The mere fact that it's not

6    the only potential agreement referred to does not mean

7    it's not central to their complaint, and does not mean

8    it's not something that this Court should consider.

9                THE COURT:  But how does that play into a

10   12(b)(6) motion which tests the sufficiency of the

11   pleading?

12               MR. NELSON:  The crux of their --

13               THE COURT:  In other words, if you're --

14   and your motion to dismiss hasn't been referred to me.

15   That will -- that's in front of Judge Borman.  But if

16   your argument is that this -- this exhibit defeats the

17   claim in the complaint under 12(b)(6), isn't that a

18   factual question?

19               MR. NELSON:  I would submit it's not, Your

20   Honor.  I would submit it is being sure.  Integral, as

21   the Court is aware, is defined as necessary to

22   completeness of the whole, or of pertaining to, or

23   belonging as part of the whole.

24               The purpose of allowing documents integral

25   to the complaint to be considered is so the Court has a

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1    full picture, whether it's this Court or Judge Borman,

2    has a full picture of the case.

3                    This asset purchase agreement is, without

4    question, if you look at the allegations in the

5    complaint, one of the central agreements referred to in

6    the complaint.

7                    The plaintiffs alleged that this agreement

8    existed based on a confidential witness and that it was

9    not disclosed.  And part of the argument on the fraud is

10    it was not disclosed, it should have been disclosed.

11    They referred to it as "unlawful," they referred to it as

12    "secret," they referred to it as "illicit."

13                    THE COURT:  So you're saying that it's

14    really beyond dispute that this exhibit, this particular

15    agreement, is the agreement that's being referenced in

16    the complaint?

17                    MR. NELSON:  I think that if you look at

18    the pleadings, and I can reference the Court to the

19    paragraphs, if the Court would like.  We've done some of

20    that in our filings.

21                    But it is without dispute that that's what

22    they're referring to, because they talk about an

23    agreement entered into prior to the time the confidential

24    witnesses came on board.  They talk about the agreement.

25                    If I may refer to the complaint, at

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1    paragraph 15, Reddy Ice agreed not to compete with Artic

2    Glacier in the State of California.  And Arctic Glacier

3    secretly agreed not to compete with Reddy Ice in the

4    State of Arizona.  That is precisely the noncompete

5    that's in that agreement.

6              If we turn further to paragraph 46, had

7    agreed not to compete against Artic Glacier in

8    California, and Artic Glacier, in exchange, had the

9    exclusive right to service California and had agreed to

10   stay out of Arizona.

11             The -- 48, agreement between Reddy Ice and

12   Artic Glacier to allocate territories.

13             Now, there is one point of, I think,

14   confusion here, Your Honor, and that is, one, Packaged

15   Ice was a predecessor of Reddy Ice.  It owned Reddy Ice

16   at the time of these agreements, Reddy Ice, Corp., having

17   purchased Reddy Ice Corp. in 1998.

18             The agreement, that is, the asset purchase

19   agreement, admittedly is with the Mountain Water Ice

20   Companies, but the plaintiffs also addressed that.  If we

21   turn to paragraph 50, Reddy Ice agreed to sell its

22   California manufacturing operations, except for a

23   facility in Brawley, California that was near the border

24   of Arizona, to a consortium of companies located in

25   California.

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1              That is precisely the asset purchase

2       agreement.  It seems to be more than a coincidence, Your

3       Honor, that this alleged agreement that they say is a

4       different agreement is -- has the same mutual noncompetes

5       in it, has the same carved out in it for Brawley,

6       California, took place before any of these confidential

7       witnesses were part of or associated with Reddy Ice, and

8       involves a consortium of California -- a consortium of

9       companies in California.

10             That is that agreement.  And therefore,

11      they're alleging that Reddy Ice failed -- or Packaged Ice

12      at that time, failed to disclose the agreement.

13             But the most important part is, Your

14      Honor, the noncompete is ancillary to that agreement.

15      They allege it to be unlawful, they allege it to be

16      illicit, they allege it to be undisclosed.

17             In order for the Court, whether this Court

18      or Judge Borman has the full picture of the complaint and

19      the facts surrounding the complaint, it's just like

20      referring to any other document in a complaint.  We have

21      the right to present the document.

22             As the *Weiner* court said, we don't want to

23      be in a situation where a plaintiff with a legally

24      deficient claim can survive a motion to dismiss by

25      failing to attach a document on which it relied.

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1            I think the remainder of the exhibits go

2      to fill in the contours of the complaint and --

3            THE COURT:  Let me ask this.  And I know

4      I'm jumping around a little bit, but --

5            MR. NELSON:  Yes, sir.

6            THE COURT:  Specifically with Exhibit G,

7      which are portions of the annual report from 2001, and

8      then Exhibit K, which are portions of the annual report,

9      I think it's 1997, what is the significance of those two

10     years relative to the complaint?

11           MR. NELSON:  The Exhibit G, Your Honor,

12     the significance is that it states, it discloses, again,

13     the fact of this agreement.

14           If you look at, as filed, page seven of

15     eleven of Exhibit G, under "dispositions," it

16     specifically describes this asset purchase agreement,

17     going to the allegation that it was not disclosed.  We

18     have a public document filed with the SEC that confirms

19     it was disclosed.  Again, trying to fill in the whole

20     picture for the Court.

21           I would also point to the next page of

22     Exhibit G, which references the fact that in

23     substantially all acquisitions, we required the seller or

24     its principal shareholders to enter into a covenant not

25     to compete.

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1              Which also goes to fill in the contours
2    and flesh out the complaint, to use the words of the
3    Sixth Circuit.
4              With regard to Exhibit H -- excuse me,
5    Exhibit K, Your Honor, was that the other one you asked
6    about?
7              THE COURT:  Yes.
8              MR. NELSON:  Exhibit K?
9              The point of that, if we turn to page
10   eight of ten, as filed in the top paragraph, one of the
11   allegations in the complaint was that the California
12   consortium was a straw man.
13             Here is a public filing that lists
14   competitors consisting of, including Mountain Water Ice,
15   and serious competitors in the market, again putting --
16   filling in contours, putting flesh on the allegations,
17   being sure the Court has the full picture of what was
18   filed and what was disclosed, rather than the plaintiffs
19   being allowed to pick and choose what goes into the
20   complaint.
21             THE COURT:  Exhibit H is an e-mail.
22             MR. NELSON:  The purpose of Exhibit H,
23   Your Honor, although it's attached to an e-mail, is the
24   press release.  It's attached to the e-mail, which is a
25   public document.  It begins on page three of that exhibit

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1    as filed.

2                    And we are offering that just to show that

3    it was announced that Arctic Glacier actually purchased

4    the California assets from -- and the California Ice

5    companies, which is comprised of six companies and

6    represents one of the leading independent manufacturers

7    and distributors of packaged ice in California and one of

8    the largest package ice companies in the U.S., calling it

9    a market leader.

10                    Again, offering it for the fact that this

11   was, in fact, out there, truthful or not.  I'm not

12   offering it for the truth of the matter, but the fact

13   that this statement was made in a public document, so

14   that the Court again has the full picture.  So the focus

15   there is not on the e-mail; it's on the press release.

16                    THE COURT:  Okay.  Then we had Exhibit E,

17   which is the -- apparently the transcript of a conference

18   call?

19                    MR. NELSON:  Yes, sir, Exhibit E.

20                    I will point the Court first to page six

21   of 35, and also to subsequent pages, page 20 and pages 24

22   and 26.  One of the allegations in the complaint is that,

23   as I said a moment ago, that the California Ice Companies

24   were the straw man, and this was a deal to allocate

25   territories and allocate customers.

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1           This is a public document, because it's an

2      earnings conference call, and it states the fact that

3      Reddy Ice was losing money, was not making the money it

4      thought it would in California, and provides again

5      background or contours for the reasons for the sale that

6      ought to be considered when deciding whether the

7      allegation of a straw man is a sufficient allegation to

8      get past a motion to dismiss.

9           THE COURT:  Okay, thank you.

10          MR. NELSON:  Thank you, Your Honor.

11          THE COURT:  Mr. Danek, do you have any

12     brief response?

13          MR. DANEK:  Yes, Your Honor.

14          Your Honor, I'd first like to start with

15     the standard for judicial notice.  We're not saying that

16     the SEC filings, press releases, anything objectively

17     verifiable can not be properly judicially noticed.

18          However, under *Cardinal Health,* one of the

19     qualitative factors to the judicial notice is whether or

20     not the document requesting to be judicially noticed

21     asked the Court to adopt a disputed fact as true.

22          As we explained in the briefing

23     thoroughly, each of these six documents is asking the

24     Court to adopt a disputed fact as true.  That's the

25     standard under *Cardinal Health.*

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1                    With respect to defendants' contours and

2      details argument, defendants refly on three non-PSLRA

3      cases, in which the Court did consider matters outside

4      the pleadings.

5                    THE COURT:  I'm sorry, could you speak

6      into the microphone there, so we can pick up your voice?

7                    MR. DANEK:  I'm sorry, Your Honor.  It was

8      the background.  I don't know if you hear it up there,

9      but it's kind of like an echo back here.

10                   THE COURT:  Oh, okay.  We'll have to get

11     our sound engineer in here.

12                   MR. DANEK:  Sorry about that.

13                   THE COURT:  Sue, we'll have you take care

14     of that later.

15                   Go ahead.

16                   MR. DANEK:  Well, the three cases that

17     defendants have put forth as allowing them to have carte

18     blanche with whatever they get to add to the plaintiff's

19     complaints, the one case, *Yeary v. Goodwill Industries,*

20     in that case, the parties simply supplied affidavits to

21     the motion to dismiss, which simply verified the case,

22     simply verified the complaint and did not add anything

23     outside the pleadings.

24                   THE COURT:  Well, let me just interrupt

25     you for a minute, because you -- I think at the top of

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1    the row of dominoes here maybe is this asset purchase

2    agreement, the Exhibit F.

3                    MR. DANEK:  Yes, Your Honor.

4                    THE COURT:  And defense counsel argues

5    that while this agreement has to be the agreement that

6    you're referencing in your complaint, how do you respond

7    to that?

8                    MR. DANEK:  Well, how I respond to that,

9    Your Honor, is that defendants are making a fact-based

10   argument, they're claiming that Exhibit F defeats the

11   pleadings.  That's a factual inquiry, say, for a motion

12   for summary judgment.  You know, we asked the Court to

13   open this case up for discovery so that we can --

14                   THE COURT:  Is Exhibit F, and I'm not

15   asking you to try the case this morning or argue a

16   summary judgment motion, but is Exhibit F subject to

17   construction, factual construction, competing factual

18   constructions?

19                   MR. DANEK:  I think it clearly raises the

20   -- well, actually, the document is silent as to the

21   territories where the assets are being sold.  That's why

22   defendants have to rely on all these other documents to

23   construct their affirmative factual defense.

24                   Also, Mountain Water Ice is not referenced

25   anywhere in the complaint, and we're not sure whether the

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1    -- we're not sure whether the companies listed in the

2    asset purchase agreement are, in fact, what the other

3    documents seem to refer to.

4                There's -- this document is just --

5    there's so many factual inquiries that we need to uncover

6    in discovery that we would request the Court to convert

7    the motion to summary judgment.

8                Just -- the document clearly raises -- for

9    the purposes in which defendants are requesting judicial

10   notice.  It clearly asks the Court to adopt a disputed

11   fact.

12               THE COURT:  In your complaint, you did, I

13   believe, refer to some 10-K forms; is that correct?

14               MR. DANEK:  Yes.  The public filings

15   referenced in the complaint are the statements issued by

16   Defendant Ready Ice between 2005 and 2008, that

17   plaintiffs allege to be false and misleading.

18               The 10-Ks the defendants are requesting

19   judicial notice of, the defendants are asking the Court

20   to adopt a disputed fact as true, with -- in their SEC

21   filings.

22               And I wanted to point the Court to the

23   *Hennessy* case, which is cited by plaintiffs.  In that

24   case, the Court did not judicially notice a 10-K, because

25   the fact in question in which the parties were seeking

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1    judicial notice of, was reasonably in dispute, so

2    therefore, the Court did not grant judicial notice to

3    that 10-K filing.

4              THE COURT:  Okay.  Anything else?  You

5    have about 45 seconds.

6              MR. DANEK:  Well, lastly, Your Honor, H&E,

7    these are both private documents.  They're not

8    objectively verifiable.  The facts for which defendants

9    are submitting them clearly are submitted to raise a

10   factual dispute with plaintiffs' complaint.  We think

11   they're better served for a summary judgment -- and also,

12   I wanted to add, the plaintiff's motion is to strike not

13   only the exhibits, but also relevant portions from

14   defendants' motion and brief.

15             And if Your Honor permits, I'd like to

16   approach the bench and give Your Honor a proposed motion

17   and brief that has the relevant parts stricken.

18             THE COURT:  You can hand that to my clerk.

19   And it appears that the defendants just received a copy

20   as well; is that right?

21             MR. NELSON:  Yes, Your Honor.

22             THE COURT:  Okay.  Thank you, Mr. Danek.

23             MR. DANEK:  Thank you, Your Honor.

24             MR. NELSON:  May I respond briefly, Your

25   Honor?

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1              THE COURT:  I'll give you 45 seconds.

2              MR. NELSON:  Forty-five seconds will do.

3              THE COURT:  Will that do it?

4              MR. NELSON:  That will do it.

5              Counsel referred to *Cardinal Health,* Your

6     Honor.  I will point out two passages.  In particular --

7     well, two passages.

8              One, on page -- well, on my copy it's page

9     26, but that's not correct.  The *Cardinal* court said,

10                     "The Courts may consider the full

11                     text of SEC filings, prospectuses and

12                     analysts' reports regardless of

13                     whether they attach to the

14                     plaintiffs' complaint, as long as

15                     they are integral to the complaint."

16    Probably more importantly, if you look at --

17             THE COURT:  Well, "integral to the

18    complaint," he's saying -- Mr. Danek says, "Well, the

19    10-Ks that we are alleging that were false, weren't

20    these.  They were from 2005 to 2008."

21             MR. NELSON:  But the bases they're

22    suggesting they were false is this agreement from 2001.

23             THE COURT:  I understand.

24             MR. NELSON:  And the other point out of

25    the *Cardinal* case, Your Honor, is on pages 714 to 715.

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1    And it says,

2

3                                "In referring to striking an argument

4                                asserting that a witness had

5                                voluntarily resigned from Cardinal,

6                                the plaintiffs alleged that a source

7                                informed them that Jensen was forced

8                                to resign from Cardinal as a result

9                                of his involvement in the accounting

10                               fraud.  Both sides present plausible

11                               arguments as to the reason Jensen

12                               left Cardinal.

13                                    Therefore, to advance the

14                               purpose of the PSLRA, the Court

15                               should not adopt plaintiffs' view of

16                               the facts that also, considering the

17                               merits of Cardinal defendants'

18                               assertions, therefore, without

19                               adopting either side's assessment of

20                               why Jensen left Cardinal, the Court

21                               denies plaintiffs' motion to strike

22                               the arguments relating to that

23                               issue."

24    Therefore, again going back to the definition of

25    integral, the information we submit in these exhibits is

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1    integral because it makes part of the complete picture.

2                    And as the *Cardinal* court itself held,

3    that those should be considered because the Court should

4    not adopt plaintiffs' view of the facts, without also

5    considering the defendants' view of the facts.

6                    THE COURT:  Okay, thank you.

7                    MR. NELSON:  Thank you, Your Honor.

8                    THE COURT:  And I'm in a real indulgent

9    mood today, and it is your motion, Mr. Danek, so you get

10   the last word.  But I'm going to give you 30 seconds.

11                   MR. DANEK:  Yes, Your Honor.

12                   Briefly, Your Honor, at pages 714 in that

13   case, the Court did grant plaintiffs' motion to strike a

14   Newsweek -- Business Week on-line article, because it did

15   raise that factual disputes of the courts would not

16   judicially notice that document.

17                   And regarding the PSLRA, in that case, the

18   court did strike the other documents, so therefore, all

19   the other documents were properly before the Court and

20   therefore the documents were within the pleadings.

21                   THE COURT:  Thank you.

22                   Well, defendants filed a motion to dismiss

23   under 12(b)(6).  We're all familiar with the purpose and

24   the standards of the 12(b)(6) motion.  It tests the

25   sufficiency of the allegations in the complaint.

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1          And of course recently the Supreme Court

2     has issued two decisions that more completely set out the

3     standards under 12(b)(6), that's *Bell Atlantic v.*

4     *Twombly,* 550 U.S. at 544, and more recently, last year,

5     *Ashcroft v. Iqbal,* 129 Supreme Court 1937.

6          But the difference between a 12(b)(6)

7     motion and a Rule 56 motion for summary judgment is

8     pretty simply looking at the complaints, and I recognize

9     also looking at any factual material or exhibits that are

10    referenced in the complaint, we determine whether it

11    states a claim and which relief can be granted under

12    summary judgment, which is -- occurs generally following

13    discovery.  You test the factual sufficiency of the

14    complaint, as opposed to the legal sufficiency.

15         And I understand that there's some degree

16    of overlap between those two considerations, but

17    generally speaking, if there are disputed questions of

18    fact, then I'm not -- I want to make it very clear this

19    morning that I'm not ruling on the motion to dismiss.

20    That's reserved to Judge Borman, of if he choses, to

21    refer it to me.  And I'm not prejudging it and I'm not

22    ruling on that.  I'm simply ruling on whether these six

23    exhibits should be stricken or properly considered with

24    the 12(b)(6) motion.

25         I've read the pleadings, I've listened to

30

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1      the argument of counsel and I retain the opinion that

2      what is being proffered in these exhibits does go to

3      disputed questions of fact that are more properly

4      reserved for summary judgment.

5              Let's start with the asset purchase

6      agreement.  Well, okay, that agreement is not

7      specifically referenced in the complaint.  It's out

8      there.  It's certainly a -- something that's relevant to

9      this case, but it's also something that -- and I'll even

10     say that it's probably integral, but it's not necessarily

11     the only agreement.  It's not necessarily an agreement

12     that is beyond factual construction or beyond factual

13     dispute.  No discovery has taken place in this case yet.

14              And to consider that factual material,

15     that document in the context of a 12(b)(6) motion that

16     tests sufficiency of the complaint, would be, in fact,

17     and to quote, 12(b)(6), it would be a matter outside the

18     pleadings that would cause this to be treated as a motion

19     for summary judgment.

20              Given what I consider the factual

21     questions surrounding the asset purchase agreement that

22     necessarily impacts the admissibility of some of the

23     other exhibits, specifically G and K, and those are the

24     pages from the annual report for the year ending 2001 and

25     the year ending 1997.

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1           Those are obviously outside the specific

2      allegations in this complaint as to what reports are

3      false and misleading.  It was alleged the Reddy Ice's

4      2005 to 2008 reports were false and misleading.

5           But counsel indicated that the 2001 and

6      the 1997 annual reports would go to the plaintiffs'

7      allegation as to whether the asset purchase agreement was

8      disclosed.  Well, even assuming that these supported --

9      these exhibits supported a finding that Exhibit F, the

10     asset purchase agreement, was disclosed, as I've

11     indicated, there are factual issues surrounding Exhibit

12     F.  That's why I referred to it as the first domino in

13     the bunch.

14          So again, as with those exhibits, we're

15     looking at, I think, testing the factual sufficiency as

16     opposed to the legal sufficiency.

17          The other exhibits, the e-mail, the

18     transcript, likewise are more appropriately reserved for

19     a summary motion.  All of these exhibits, I think, would

20     support fact-based defenses, but permitting these in the

21     12(b)(6)motion, without the opportunity for further

22     discovery, for further amplification of what these

23     exhibits mean and how they fit into the complaint, are

24     factual questions.

25          So for that reason, I will grant the

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1          plaintiffs' motion to strike Exhibits D, E, F, G, H and K

2          of the defendants' pending motion for summary judgment,

3          as well as references and arguments in the motion and

4          brief itself that rely on those exhibits.

5                    There's one thing I did neglect to

6          mention, and that was defendants' argument concerning the

7          timeliness of this motion.  As I indicated, the motion to

8          strike was filed a day later than the response to the

9          motion.  Apparently plaintiff had some confusion as to

10         whether the Presidents' Day holiday was counted in the

11         time in terms of the scheduling order.

12                   It's not a jurisdictional issue.  It's

13         entrusted under the Federal Rules to the discretion of

14         the Court to waive time.  So I'm going to waive any time

15         limits to the extent that they were violated.  I'm a

16         strong believer in really getting to the merits of a

17         motion.

18                   And in any event, under a motion to

19         strike, I could actually consider that sua sponte.  I

20         could raise that on the Court's own motion as well.  So

21         I'll grant the motion, notwithstanding the apparent one

22         day late filing of the motion to strike.

23                   With that, I'll issue a written order

24         today incorporating my comments on the record.

25                   And I was just handed a redacted version

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1    of the motion to dismiss.  What I will do is, based on my

2    ruling, and I haven't had a chance obviously to look at

3    this, and I don't know if defendants' counsel has had a

4    chance to really look at this either, but what you can do

5    -- have you?

6                    MR. NELSON:  We have not, Your Honor.

7                    THE COURT:  You have not, okay.

8                    So rather than just accept this without

9    looking at it, I'll ask both counsel to go over this in

10   light of my ruling and -- I'm actually not sure if it's

11   even necessary to do that, because my ruling is that the

12   exhibits are gone and arguments based on the exhibits are

13   gone.  And I think Judge Borman can sift through that.

14                   But I'll certainly permit counsel to

15   submit a redacted copy.  But I'm going to leave it to

16   counsel to review this, agree that it's properly

17   redacted.  And if you can do so, you can file that.

18                   Certainly, if either party wants to

19   contest my ruling today, you have 14 days from today to

20   file objections in front of Judge Borman.

21                   Okay, I'll issue a written order.  Thank

22   you, very much.

23                   MR. DANEK:  Thank you, Your Honor.

24                   MR. NELSON:  Thank you, Your Honor.

25                   DEPUTY COURT CLERK:  Court is in recess.

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1                          (Court in recess at 10:49 a.m.)

2                            *       *       *

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Chamberlain, et al. v. Reddy Ice Holdings, et al.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18                          **C E R T I F I C A T I O N**

19            I certify that the foregoing is a correct

20      transcript from the digital sound recording of the

21      proceedings in the above-entitled matter and has been

22      prepared by me or under my direction.

23

24      \s\Marie J. Metcalf                      03/02/10

25      Marie J. Metcalf, CVR, CM                    (Date)